Receipt # 062409

ORIGINAL

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAR 1 2005
U.S. COURT OF FEDERAL CLAIMS

**HARPER/NIELSEN-DILLINGHAM BUILDERS, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

**Case No. 05- 269C**

## COMPLAINT

COMES NOW, Plaintiff, Harper/Nielsen-Dillingham Builders, Inc. ("Harper/Nielsen"), by and through its undersigned counsel of record, and for its Complaint against the United States of America ("USA"), states and alleges as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. At all relevant times, Harper/Nielsen was a registered joint venture, authorized to do business in the State of California.

2. This action concerns a contract that Harper/Nielsen entered into with the USA and, specifically, the Department of the Air Force, Vandenberg Air Force Base, Santa Barbara County, California.

3. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1491, in that the USA is a party to the contract that is the subject of this action.

## THE CLAIM

4. On June 21, 1996, the Department of the Air Force, Vandenberg Air Force Base ("Air Force") advertised Solicitation No. F04684-96-B-0005, which was known as "Replacing Capehart Multi-Family Housing - Phase III" (the "Project").

5. The Project was awarded to Harper/Nielsen on August 27, 1996, with an initial contract value of $17,714,714.00 ("the Prime Contract")

6. On or about April 2, 1997, Harper/Nielsen entered into a subcontract with Karleskint-Crum, Inc. ("KCI") to provide landscaping work on the Project, including irrigation, soil preparation, lawns and grasses, planting and landscape maintenance. *A true and correct copy of the Subcontract is attached hereto and incorporated herein as Exhibit 1* (the "Subcontract"). The fixed amount of the Subcontract was $720,500.00. After two change orders, the total Subcontract amount was $687,000.00.

7. F.A.R. 52.249-10(b) was incorporated into the Prime Contract and Subcontract and provides "The Contractor's right to proceed shall not be terminated nor the contractor charged with damages under this clause, if:

> (1) The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include:
>
> > (i) Acts of God . . .
> >
> > (ii) Acts of the Government in either its sovereign or contractual capacity,
> >
> > (iii) Acts of another Contractor in the performance of a contract with the Government, . . .
> >
> > (x) Unusually severe weather, or
> >
> > (xi) Delays of subcontractors or suppliers at any tier arising from unforeseeable causes beyond the control and without the fault or

negligence of both the Contractor and the subcontractors or suppliers.

8. Harper/Nielsen and KCI experienced delays in completing the landscaping work on the Project as a result of unforeseeable causes beyond the control and without the fault or negligence of Harper/Nielsen and KCI.

**A. PROJECT DELAYS DUE TO REMOVAL OF UNDERGROUND STORAGE TANKS**

9. The original project schedule provided that landscaping fieldwork under KCI's Subcontract was to start on or around July 28, 1997 and be completed by January 4, 1998, for a total of 161 calendar days.

10. KCI began its scheduled work on July 28, 1997. However, substantial completion was not established until August 15, 1998, for a total of 384 calendar days.

11. The Project was delayed by Defendant and other contractors working for and under the control of Defendant. Specifically, Jacobs Engineering ("Jacobs") and its subcontractor VPS, Inc. ("VPS") took more time than called for to remove underground storage tanks ("USTs") and contaminated soils at the Project site. The removal of the USTs and contaminated soil was originally to have been completed prior to January 16, 1997. However, it was not actually completed until April 15, 1997, resulting in almost a three-month delay.

12. KCI was not aware of the delay in the removal of the USTs at the time it entered into its Subcontract with Harper/Nielsen, nor was KCI aware of the delay when it began working on the Project.

13. The Project specifications required specific sequencing of the work performed by Harper/Nielsen, KCI and other subcontractors.

14. In the Air Force's initial Call For Bids, the project was to be completed in the following order:

a. Razing the existing development, single family houses containing asbestos materials, suspected underground storage tanks, concrete foundations pads, sidewalks, landscaping and some street work;

b. Site preparation, underground utilities. Reconfiguration of existing street system and sidewalks;

c. Construction of 143 new housing units (performed in 25 unit increments), fences, recreational facilities, installation of street signs, lighting, etc.;

d. Landscaping of yards and common areas, including installation of sprinkler systems in common areas.

15. Due to the delays caused by Jacobs and VPS, Harper/Nielsen, KCI and other subcontractors were forced to work out of sequence.

16. Neither Harper/Nielsen nor KCI had control over the work performed by Jacobs and VPS.

17. The delays and out of sequence work incurred as a result of the USTs was unforeseeable by Harper/Nielsen and KCI and was beyond their control and not a result of any fault or negligence of Harper/Nielsen or KCI.

18. In addition to working out of sequence, KCI's work was damaged by work being performed by other subcontractors. KCI was required to repair these affected areas.

**B. WEATHER-RELATED DELAYS**

19. The delay caused by the removal of the USTs had a domino effect by pushing the Project into the rainy season, further exacerbating damage to Harper/Nielsen and KCI. As a result, KCI had to perform landscaping work in conditions that were not anticipated.

20. Harper/Nielsen and KCI were severely impacted by the record-breaking rains from November 1997 through February 1998.

21. The large amount of rain delayed the completion of the Project. Additionally, the heavy winds and continuous rain caused damage to plantings, soil erosion, damaged the hydroseeding, damaged trees and washed out portions of the landscaping. All of this damage had to be repaired or replaced by KCI.

22. Harper/Nielsen requested a three-month extension of time due to the inclement weather. However, the Air Force authorized only a 49-day extension of time.

**C. EXTENDED MAINTENANCE PERIOD**

23. KCI's Subcontract included a 90-day maintenance period to begin running after the date of acceptance. The anticipated acceptance dates based upon the original completion dates of the work were October 1997 through January 1998.

24. As a result of the delays caused by the USTs and the weather conditions, Harper/Nielsen turned over all housing units built on the Project to the Air Force from September 18, 1997 through December 18, 1998. As such, the one-year warranty period should have ended on each of the housing units during the period of October 1998 through January 1999. However, the final inspections by the Air Force of the landscaping on the housing units did not begin until January 1998, and were not finalized until May, 1998. As such, the warranty period was not finally concluded on all of the housing units until August 18, 1999.

25. The Air Force delayed issuing final acceptance of the landscaping on the housing units in order to extend the running of the warranty period.

26. During the delay period, additional damage occurred to the landscaping due to severe weather. KCI was required to repair this damage.

27. Additionally, KCI was required to expend additional time and labor maintaining the landscaping during this extended warranty period.

**D. WAGE DETERMINATION**

28. KCI had previously bid and completed work on Phase II of the Project, which was similar to the work performed on Phase III. As such, KCI relied upon its experience on Phase II as well as industry standards when submitting its bid on Phase III.

29. The General Prevailing Wage Determination ("GPWD") for Phase III did not contain a classification for "Tradesman," although KCI had used that classification in Phase II for similar work.

30. KCI submitted a Request for Authorization for Additional Classification and Rate based upon its use of the classification of Tradesman in Phase II of the Project. The Air Force denied KCI's request.

31. The GPWD for Phase III had a classification for Landscape Maintenance Laborer, with a base rate of pay of $7.00, and a classification of "Landscape Laborer" with a base rate of pay of $13.40 plus $8.61 in fringe benefits.

32. Only a portion of the work performed by KCI required the skill and knowledge of a "Landscape and Irrigation Laborer" or a "Landscape Laborer."

33. The classification for Landscape Maintenance Laborer more closely fits the work description and qualifications under Section 02970 of the Contract that KCI performed, however,

KCI was instructed by the Air Force to use the classification and higher rate of pay of "Landscape Laborer." As a result, KCI had to pay higher wages than it should have.

**E. THE CLAIM**

34. On or about April 13, 1998, Harper/Nielsen submitted to the Contracting Officer for the Air Force a request for compensation on behalf of KCI seeking an equitable adjustment in the subcontract amount.

35. On or about September 1, 1998, the Contracting Officer rejected Harper/Nielsen's request for compensation on the basis that it was not certified pursuant to U.S.C. § 605(c).

36. On or about August 1, 2003, Harper/Nielsen and KCI resubmitted its certified claim in the amount of $770,565.00 to the Contracting Officer in accordance with 41 U.S.C. § 605(c).

37. On March 4, 2004, the Contracting Officer issued his final decision, denying the claim submitted by Harper/Nielsen on behalf of KCI. *A true and correct copy of the contracting officer's decision is attached hereto and incorporated herein as Exhibit 2.* The decision of the Contracting Officer noted that Harper/Nielsen and KCI had one year from the date of the decision to file suit in this Court.

**PRAYER FOR RELIEF**

38. As a direct and proximate result of the delays encountered on the Project and the actions taken by the Air Force as described herein, Harper/Nielsen on behalf of KCI is entitled to receive the following equitable adjustment:

(a) Increased labor costs in the amount of $555,207.00;

(b) Additional general conditions, including site administration and equipment, in the amount of $59,651.00;

(c) Additional home office expenses incurred by KCI pursuant to the Eichlay formula in the amount of $125,707.00;

(d) Proposal preparation costs in the amount of $30,000.00; and

(e) All interest allowed at the highest legal rate.

WHEREFORE, Harper/Nielsen on behalf of KCI, requests judgment in its favor and against the USA in the amount of $770,565.00, plus prejudgment interest at the highest legal rate, together with any other relief the Court deems just and proper.

February 28, 2005
Date

Respectfully submitted,

MILLER LAW FIRM, P.C.

Richard W. Miller Mo. Bar #16136
Michael T. Metcalf Mo. Bar #45304
4310 Madison Avenue
Kansas City, Missouri 64111
Telephone: (816) 531-0755
Facsimile: (816) 561-6361
ATTORNEYS FOR PLAINTIFF