9-19

# DEPARTMENT OF THE AIR FORCE
30TH SPACE WING (AFSPC)

4 March 2004

MEMORANDUM FOR HARPER/NIELSEN DILLINGHAM CONSTRUCTION CO.
ATTN: MR. KEVIN SMITH
2241 KETTNER BLVD #300
SAN DIEGO CA 92101

FROM: 30 CONS/LGCA
806 13TH STREET, SUITE 2
VANDENBERG AFB CA 93437-5226

SUBJECT: Contract F04684-96-C-0046, Project XUMU 96-4003, Contracting Officer's Final Decision, Harper/Nielsen Dillingham Claim for Equitable Adjustment Government-caused delay

**INTRODUCTION. History:**

Contract F04684-96-C-0046 was awarded to Harper/Nielson Dillingham Construction Co., Inc., (H/N-D) on 27 August 1996 with an initial contract value of $17,714,714.00. The contract was to demolish and remove 143 existing housing units, including asbestos removal and designated site work and to construct 143 housing units and associated site work for Military Family Housing Replacement- Phase III Project XUMU-96-4003. The initial Notice to Proceed was to be issued within 120 calendar days after award of contract. The work was to be completed within 480 days from the date of the Notice to Proceed. The contract completion date was extended an additional 76 days from 15 February 1998 to 2 May 1998 through bilateral contract modifications P00002, P00006 and P00007.

On 13 April 1998, H/N-D submitted a request for compensation for performing landscape work during the rainy season because of delay caused by the government's subcontractor on a separate contract. It was the Government's position that the subcontract did not delay the landscaping work based on AF form 3064 schedule showing the site work on subject contract was 10.82% complete (out of 11% scheduled) AF Form 3065 report number 019 dated 5 May 1998 indicated that H/N-D was on or ahead of schedule when its landscaping subcontractor KCI began to work. H/N-D's request for compensation was denied on 01 September 1998. On 26 Feb 1997, H/N-D was 2.84% ahead of schedule when KCI started work. The government did not control or schedule the work of H/N-D's subcontractors.

H/N-D submitted a new claim to the Government on 05 August 2003 in the amount of $770,565.00. The claim includes, claims for Project delays due to removal of underground storage tanks, "Acts of God" or Unusually Severe Weather, Unreasonable demands for landscaping beyond a reasonable period and a Wage Classification. The claim contains a narrative, a pricing proposal, and portions of documents they contend are relevant to the claim. The items claimed by H/N-D consist of:



EXHIBIT
2

9-11

**PART 1** **DELAYS** **$125,706.71**

| | |
|---|---|
| Extended Home Office Overhead | $125,706.71 |

**PART 2** **EXTENDED SUPERVISION** **$27,894.69**

| | | |
|---|---|---|
| Extended Hours | | 743.50 |
| | Wage rate (base & fringe) | $ 25.00 |
| | Subtotal | $18,587.50 |
| 16.2 Burden | | $ 3,011.18 |
| | Subtotal | $21,598.00 |
| 23% Overhead | | $ 4,967.70 |
| | Subtotal | $26,566.37 |
| 5% Markup | | $1,328.32 |
| | Total | $27,894.69 |

**PART 3** **MAINTENANCE INEFFICIENCY** **$351,415.89**

| | | |
|---|---|---|
| As-Bid Maintenance hours | | 1,560 |
| Actual Maintenance hours | | 12,199. |
| Additional Maintenance hours | | 10,639 |
| | Wage rate (base & Fringe) | $22.01 |
| Additional cost at 10,639 hours | | $234,164.39 |
| | 16.2% Burden | $37,934.63 |
| | 23% Overhead | $62,582.77 |
| | 5% Markup | $16,734.09 |
| | TOTAL | $351,415.89 |

**PART 4** **WAGE CLASSIFICATION INCREASE** **$24,207.26**

| | | |
|---|---|---|
| As-Bid Maintenance hours | | 1,560 |
| Actual Maintenance hours | | 12,199. |
| Additional Maintenance hours | | 10,639 |
| | Wage rate (base & Fringe) | $22.01 |
| Additional cost at 10,639 hours | | $234,164.39 |
| | 16.2% Burden | $37,934.63 |
| | 23% Overhead | $62,582.77 |
| | 5% Markup | $16,734.09 |
| | TOTAL | $351,415.89 |

**PART 5** **INCREASE DUE TO PROJECT IMPACT** **$179,852.52**

| | Irrigation | Landscaping | Total |
|---|---|---|---|
| As-Bid | 4322 | 5.640 | 9,962. |
| Actual | 4704 | 10,244 | 14,948 |
| Delta | 382 | 4,604 | 4,986 |
| Wage Rate | $24.00 * | $24.00* | $24.00* |
| Difference | $9,168.00 | $110,496.00 | $119,664.00 |
| 16.2% Burden | $1,485.22 | $17,900.35 | $19,385.57 |
| Sub T | $10,653.22 | $128,396.35 | $139,049.57 |
| 23% Markup | $655.17 | $7,896.38 | $8,551.55 |
| TOTAL | $13,758.63 | $165,823.89 | $179,852.52 |

9-12

* **Wage Rate should be $22.23 not $24.00**

**PART 6 DAMAGE RECAP** **$770,565.00**

| | |
|---|---|
| Home office overhead impact | $125,706.71 |
| EXTENDED GENERAL CONDITIONS | |
| Site Administration | $27,894.69 |
| Equipment | $31,755.40 |
| INCREASED LABOR COST | |
| Extended Maintenance | $351,415.89 |
| Classification Increase | $24,207.26 |
| Irrigation & Landscaping | $179,582.52 |
| PROPOSAL PREPARATION (ADR Consulting) | |
| Cost | $30,000.00 |
| TOTAL | $770,565.00 |

**FINDINGS.** H/N-D's claim has numerous narratives that contain detailed allegations of fact. The Air Force has not attempted to specifically refute each allegation. This final decision identifies the claim and provides the rationale for denying said claim.

**Delays**

H/N-D claims compensation for performing landscape work delays during the rainy season caused by another contractor on a separate and unplanned contract for removal of Underground Stroage Tanks (UST) and Government imposed unreasonable contract requirements and impractical standards of acceptance. H/N-D is asserting that this separate government contract had a negative impact on their schedule.

H/N-D awarded the landscaping subcontract on 02 April 1997 to KCI. The original project schedule was to start on 28 July 1997 and be completed 04 January 1998.

The progress schedule, AF Form 3064, scheduled site work to be performed from 01 August 1997 to 15 February 1998, was 10.82% complete (out of 11%) as of 31 October 1997, and they were ahead of schedule (89.29% scheduled, 99.78% actual). This leaves .21 % of the site work to be completed by the P00002-revised completion date of 02 March 1998.

KCI's work on Phase III under the sub contract work description included a 90 day maintenance period after acceptance date. The anticipated acceptance dates based upon the completion of work were around or near October 1997 through January 1998.

A series of memorandums from H/N-D indicate completion dates for MFH Phase III area B are as follows :

18 September 1997, units #1-#10 hydroseeeded 9-17-97 1 yr warnty starts 10- 20-97
25 September 1997, units #11-#24 hydroseeeded 9-17-97 1 yr warnty starts 10- 20-97
06 October 1997, units #25-#38 hydroseeeded 10-03-97 1 yr warnty starts 11-03-97
14 October 1997, units #39-#64 hydroseeeded10-03-97 1 yr warnty starts 11-03-97
28 October 1997, units #65-#97 hydroseeeded 10-03-97 1 yr warnty starts 11-28-97
30 December 1997, units #98-#123 hydroseeeded 10-03-97 1 yr warnty starts 01-04-98

H/N-D requested a preliminary acceptance of the landscaping. On 05 January 1998, during a walk down of the completed landscaping, KCI was notified that overall landscaping was not acceptable for warranty period.

9-13

On 28 January 1998, Freeman Fisher Associates, a contractor (the SWA Group), performed an evaluation and review of the landscape work performed to date per Government's request. The specifications enforced were industry accepted specifications.

Items KCI needed to complete for acceptance included insuring all hydorseeded areas properly growing, replacing dead and dying plant material including shrubs, trees, and clearing weeds from planter beds and lawn areas. It should be noted that the phases being accepted had differing discrepancies. KCI had to continue maintenance of all landscape areas until such time as all corrective measures were completed and accepted. The final acceptance date for landscaping was 20 May 1998 excluding the ninety day maintenance period.

SWA 's site visit and subsequent recommendations applied to the entire Phase III landscape work. SWA recommended no final acceptance of this landscape work by the Government until all items considered as unacceptable had been reworked to an acceptable level by Karleskint Crum, Inc, the subcontractor. The final Inspection by SWA group included 22 major categories; of these 20 were unacceptable and needed to be reworked. H/N-D concurred that KCI had to rework 20 of the major categories. H/N-D's delay claim is founded on the request dated 13 April 1998 for compensation from storm damage that was denied. Since those claims were denied, circumstances have not changed, nor were any further justification added to this claim.

The Air Force denies that it caused any delays affecting the completion of landscaping work in accordance with project XUMU 96-4003, Phase III Contract F04684-C-0046.

**UST**

The UST contract mobilized on 16 December 1996 and was to be completed on 15 January 1997; it was actually completed on 15 April 1997, a delay of 90 days. This initial and substantial delay had a domino effect. H/N-D claims Karleskint-Crum, Inc., (KCI) H/N-D's Landscaping subcontractor was delayed by a total of 223 days beyond the initial scope. Due to this delay, the project was not completed before the rainy season. H/N-D asserts the as a result of the overall project delays that proceeded KCI's start, the work progress of H/N-D and its subcontractors was so severely hindered that KCI could not begin some of its work as scheduled when in fact H/N-D's actual work surpassed the scheduled work the beginning of June 1997.

**Unusually Severe Weather**

Contract modification P00006 and P00007 extended the contract an additional 49 days and 12 days respectivly after H/N-D requested an extension for higer than normal rain conditions. Therefore H/N-D was fairly compensated for rain delays. FAR 52.249-10 entitled "Default" allows time extensions only for unusually severe weather and not additional monetary compensation.

**Wages - Claim For Change in Wage Classification Specifications.**

H/N-D claims the wage classification change asserted by the Government increased wage rates, and constituted a change in the terms of the contract after acceptance, which caused significant additional expense. H/N-D's subcontractor based its bid wage rate for Phase III on the presumption the same classification as used on Phase II would be used on Phase III as there had been no question or issue raised during the entirety of Phase II regarding the classification or rate. H/N-D's subcontractor KCI did not conform to the Phase III solicitation wage requirements that H/N-D agreed to.

The government issued a solicitation offer and award F04684-96-B-0005 dated 21 June 1996, for construction of military family housing Phase III. Included in this solicitation was the General Prevailing Wage Determination # CA960039 classification CA039-927 and CA960047 classification CA047-753, Landscape and Irrigation Work, under the general category PLUM0016K, dated 07/01/1996. KCI; s start

9-14

date was for sitework/landscape was scheduled for mid Aug 1997. When KCI'S payrolls were received for Sep 97, it was noted that KCI was not in conformance with the prevailing wage rates. A letter to H/N-D dated 30 September 1997 informing them that KCI was not paying the prevailing wage rates for Landscape & Irrigation Journeymen and they were not using a correct classification and category; the category used, Landscape Tradesman, did not exist in the applicable GPWD identified above. In addition, there was an error involving use of the classification Landscape/Irrigation Tradesman, another category that does exist in the applicable GWD. The correct classification in both cases was Landscape Laborer. H/N-D responded 7 Oct 1997 indicating that they saw no discrepancy in the wages being paid. On 30 October 1997 HN/D was informed that the U.S.Department of Labor and the Air Force Regional Labor Advisor requires that KCI must use the wage rate identified and required by contract.

On 29 Oct 1997, the Air Force Regional Labor Advisor, Jim Evans, issued a memo stating that a representative at U.S. Department of Labor's (DOL's) national office informed him that the 'Pipe Tradesman'/'Landscape Irrigation Tradesman' classification cannot be published in a Davis-Bacon Act wage determination (WD) and cannot be conformed for two reasons:

1) The classification involves use of ratios to journeymen and apprentices; and,
2) The classification position description overlaps work performed by the Laborers classification already listed on the WD, and very possibly overlaps work performed by the journey level 'Landscape/Irrigation' classification.

Based on this information, Mr. Evans recommended that the contractor be informed that: employees whom they have classified as 'Pipe Tradesmen' must be reclassified and paid under the appropriate WD classification (i.e., Laborer-appropriate Group, Landscape/Irrigation Journeyman, or other appropriate WD classification). This determination was retroactive to their first use of the 'Pipe Tradesman' or 'Landscape Irrigation Tradesman' classification. A letter dated 30 Oct 97 was sent to H/N-D stating the above. A classification change was not processed through this office during the remainder of the contract.

**DECISION.**

The Government has determined the Contractor's claim under contract F04684-96-C-0046 to be without merit and hereby denies it in its entirety. This claim is commingled with information and exhibits for Phase IV. Those references were dismissed and were not considered for this decision.

You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals [Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208] and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Cynthia Clayton

CYNTHIA CLAYTON
Contracting Officer