**No. 05-269C**
**(JUDGE FIRESTONE)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**HARPER/NIELSEN DILLINGHAM BUILDERS, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT, AND APPENDIX**

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**DONALD E. KINNER**
**Assistant Director**

**JEFFREY S. PEASE**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**1100 L St., N.W.**
**Attn: Classification Unit**
**8th Floor**
**Washington, D.C. 20530**
**Tel: (202) 307-1011**
**Fax: (202) 514-8624**

**Attorneys for Defendant**

**Of Counsel:**

**BRYAN O'BOYLE**
**Senior Trial Attorney**
**Air Force Legal Service Agency**
**Commercial Litigation Division**

**January 4, 2006**

# TABLE OF CONTENTS

PAGE


STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. Motion To Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. This Court Lacks Jurisdiction To Decide Harper's Claims For Reclassification Of KCI's Laborers . . . . . . . . . . . . . . . 9

III. This Court Should Dismiss Harper's Delay Claims Or Grant The United States Partial Summary Judgment . . . . . . . . . . 15

A. Harper's Delay Claims Should Be Dismissed Because Harper Lacks Standing Under the Severin Doctrine . . . . . . . 15

B. Harper's Weather-Related Delay Claims Should Be Denied Because They Are Barred By Accord And Satisfaction . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

AUTHORITIES PAGE(S)

Aleman Food Services, Inc. v. United States,
994 F.2d 819 (Fed. Cir. 1993) . . . . . . . . . . 14

Ashford v. United States,
43 Fed. Cl. 1 (1997) . . . . . . . . . . 10

Bailey v. United States,
341 F.3d 1342 (Fed. Cir. 2003) . . . . . . . . . . 16

Bradley v. Chiron Corp.,
136 F.3d 1317 (Fed. Cir. 1998) . . . . . . . . . . 7

Burnside-Ott Aviation Training Center, Inc. v. United States,
985 F.2d 1574 (Fed. Cir. 1993) . . . . . . . . . . 14

C&H Commercial Contractors, Inc. v. United States,
35 Fed. Cl. 246 (1996) . . . . . . . . . . 21, 22, 23

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . 8

Chesapeake & Potomac Tel. Co. of Va. v. United States,
654 F.2d 711 (Ct. Cl. 1981) . . . . . . . . . . 20

City of Oxnard v. United States,
851 F.2d 344 (Fed. Cir. 1988) . . . . . . . . . . 9

City of Tacoma v. United States,
38 Fed. Cl. 582 (1997) . . . . . . . . . . 9

Collins International Service Co. v. United States,
744 F.2d 812 (Fed. Cir. 1984) . . . . . . . . . . 10, 13

TABLE OF AUTHORITIES (cont'd)

AUTHORITIES PAGE(S)

Cray Research, Inc. v. United States,
44 Fed. Cl. 327 (1999) . . . . 8

Donovan Constr. Co. v. United States,
138 Ct. Cl. 97, 149 F.Supp. 898 (1957) . . . . 19

E.R. Mitchell Constr. Co. v. Danzig,
175 F.3d 1369 (Fed. Cir. 1999) . . . . 16, 17

Emerald Maintenance, Inc. v. United States,
925 F.2d 1425 (Fed. Cir. 1991) . . . . 10, 11

England v. Sherman R. Smoot Corp.,
388 F.3d 844 (Fed. Cir. 2004) . . . . 20

Erickson Air Crane Co. v. United States,
731 F.2d 810 (Fed. Cir. 1984) . . . . 16

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991) . . . . 8

Gresham, Smith & Partners v. United States,
24 Cl. Ct. 796 (1991) . . . . 9

HRE, Inc. v. United States,
142 F.3d 1274 (Fed. Cir. 1998) . . . . 9

Holly v. United States,
124 F.3d 1462 (Fed. Cir. 1997) . . . . 6

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . 16

TABLE OF AUTHORITIES (cont'd)

AUTHORITIES PAGE(S)

McAbee Constr., Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . 9

McCauley v. United States,
38 Fed. Cl. 250 (1997) . . . . . . . . . . 7

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . 8

O'Connor v. United States,
308 F.3d 1233 (Fed. Cir. 2002) . . . . . . . . . . 20

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . 7

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . 7

Severin v. United States,
99 Ct. Cl. 435 (1943) . . . . . . . . . . 16

Smelser v. United States,
53 Fed. Cl. 530 (2002) . . . . . . . . . . 8

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 8

Thomas Creek Lumber & Log Co. v. United States,
36 Fed. Cl. 220 (1996) . . . . . . . . . . 20

United Int'l Investigative Servs. v. United States,
26 Cl. Ct. 892 (1992) . . . . . . . . . . 11

TABLE OF AUTHORITIES (cont'd)

AUTHORITIES PAGE(S)

United States ex rel. Karleskint-Crum, Inc. v. Harper/Nielsen Dillingham, JV, et al., No. 99-08182RJK (C.D. Cal. 2000) . . . . . . . . . . . . 18

Valcon II, Inc. v. United States, 26 Cl. Ct. 393 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 23

Varilease Tech. Group, Inc. v. United States, 289 F.3d 795 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Zaccardelli v. United States, 68 Fed. Cl. 426 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FEDERAL STATUTES & REGULATIONS

28 U.S.C. § 1491(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

41 U.S.C. § 601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

41 U.S.C. § 605(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23

48 C.F.R. § 52.222-6(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

48 C.F.R. § 52.222-14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MISCELLANEOUS

6 Corbin on Contracts § 1276 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HARPER/NIELSEN-DILLINGHAM BUILDERS, INC., | ) | electronically filed January 4, 2006 |
| Plaintiff, | ) | |
| v. | ) | No. 05-269C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT, AND APPENDIX

Pursuant to the Court's scheduling orders on September 1, 2005 and December 14, 2005, defendant, the United States, files this dispositive motion regarding the limited issues of the Severin doctrine, accord and satisfaction, and wage determination. The United States respectfully requests that the Court dismiss the complaint or grant partial summary judgment in favor of the Government. Harper/Nielsen Dillingham Builders, Inc. ("Harper") attempts to obtain relief from the Court for injuries claimed by its subcontractor, Karleskint-Crum, Inc. ("KCI"), due to alleged delays and the prevailing wages KCI was required to pay its workers. This Court does not possess jurisdiction to decide Harper's claims regarding the wage classification at issue because such claims are the province of the Department of Labor ("DOL"). Harper was aware of the

DOL's authority and chose not to pursue relief from that agency at the time of the dispute. This Court also does not possess jurisdiction to decide Harper's asserted delay claims because Harper has suffered no "injury in fact" as a result of KCI's alleged injuries. Harper is not liable to KCI for KCI's claimed injuries and, therefore, is barred by the Severin doctrine from asserting KCI's delay claims. In the alternative, the Court should grant partial summary judgment in favor of the Government because Harper's weather-related delay claims fail as the subject of a prior accord and satisfaction. Therefore, the complaint should be dismissed entirely, or in part, for lack of jurisdiction, or, in the alternative, partial summary judgment should be granted in favor of the United States as to the weather-related delay claims. To the extent that Harper's extended maintenance period claim does not rely upon its weather-related delay claims, that claim may survive this motion.

## STATEMENT OF THE ISSUES

1. Whether Harper's wage determination claims should be dismissed because this Court does not possess jurisdiction to decide such claims.

2. Whether Harper's delay claims should be dismissed because Harper lacks standing to raise those claims on behalf of KCI under the Severin doctrine.

3. Whether Harper's weather-related delay claims should be denied because they are barred by the doctrine of accord and satisfaction.

# STATEMENT OF THE CASE

## I. Nature of the Case

Harper brings this action on behalf of its subcontractor, KCI, challenging a contracting officer's final decision regarding contract number F04684-96-C-0046 (the "contract"). The agency denied Harper's "pass-through" claim in which KCI requested an equitable adjustment for alleged injuries arising from delays caused by another Government contractor and by weather conditions, as well as alleged injuries arising from wage classifications permitted by the contract.

## II. Statement of Facts

The United States respectfully refers the Court to our proposed findings of uncontroverted fact, which are filed with this motion pursuant to Rule 56(h) of the Rules of the United States Court of Federal Claims ("RCFC"). In addition to our Rule 56(h) submission, a short summary of salient facts follows.

On August 27, 1996, the contract was awarded to Harper, with an initial contract value of $17,724,714. PFUF 1, A1-2.[1] The contract consisted of demolition and removal of 143 existing housing units, including asbestos removal and designated site work, and construction of 143 housing units and associated

---

[1] "PFUF __" refers to a page in Defendant's Proposed Findings of Uncontroverted Fact, filed concurrently with this motion. "A__" refers to a page in the attached appendix.

site work. PFUF 2, A37-38. The contract was subject to the Davis-Bacon Act ("DBA") and all implementing regulations, requiring Harper to pay all laborers employed or working upon the site at wage rates not less than the rates stated in the wage determinations issued by the DOL that were attached to the contract. PFUF 18, A3. The contract included two wage determinations establishing the minimum wage rates for this contract. PFUF 20-25, A4-21, A22-36.

On May 6, 1997, Harper signed a subcontract with KCI dated April 2, 1997. PFUF 4, A44-47.[2] KCI agreed to perform certain landscape and irrigation services according to the subcontract for the total contract amount of $720,500. Id. The subcontract included provisions limiting the liability of Harper in the event of certain delays. See PFUF 5, A45.

On September 30, 1997, the contracting officer identified certain KCI payrolls dated August 1997 through September 1997 that were not in compliance with wage determinations in the contract. PFUF 29, A92-93. The contracting officer's letter to Harper warned that KCI was not paying landscape/irrigation workers at the required hourly wage rate of $22.23 plus $6.80 in fringe benefits,

---

[2] The complaint included a less legible copy of the subcontract, labeled Exhibit 1, that was signed only by KCI's representative. The attached appendix contains a more legible reproduction containing the signatures of both parties. A44-47.

and was actually paying landscape/irrigation workers as low as $8.62 per hour. Id. The contracting officer required Harper to submit, by October 7, 1997, corrected payrolls and evidence that the certain identified KCI workers were paid in accordance with the required wage rates. Id.

By letter dated January 12, 1998 from Harper to KCI , Harper indicated that it was still waiting for supplemental checks to confirm KCI's conformance with the contract's wage determinations and the directions given by the contracting officer in the letter dated October 31, 1997. PFUF 33, A101-02. Harper also stated that KCI had "admitted that [its] efforts to persuade the Department of Labor were not working." PFUF 33, A101. Harper directed KCI to comply with the relevant DBA clauses incorporated by KCI's subcontract agreement. Id. Harper stated that it would not pay KCI until corrected payrolls were received from KCI, and "we are given a green light from the United States government's representative that this issue has been resolved to their satisfaction." PFUF 33, A102.

Effective March 2, 1998, modification P00006 extended the contract performance period from 495 days to 544 days, an increase of 49 calendar days because of "higher than normal rainfall" from November 1997 through February 1998. PFUF 6, A49-50. Effective April 20, 1998, modification P00007 extended

the contract performance period from 544 days to 556 days, an increase of 12 calendar days because of "higher than normal rainfall" from March 1, 1998 through April 20, 1998. PFUF 9, A61-62. On October 13, 1999, accompanying its invoice for final payment, Harper belatedly attempted to reserve KCI's claim by stating that: "Our landscape subcontractor, [KCI], has submitted a claim for equitable adjustment in the amount of $720,500.00. This claim is currently in litigation." PFUF 12, A71.

On August 5, 2003, the Government received Harper's claim on behalf of KCI, including Harper's certification in accordance with 41 U.S.C. § 605(c). PFUF 17, A80-85. The contracting officer denied Harper's claim by decision dated March 4, 2004. Compl. at Exhibit 2.

## ARGUMENT

### I. Standard Of Review

#### A. Motion To Dismiss

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." RCFC 12(h)(3). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holly v. United States, 124

F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted). "In passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a claim, the allegations of the complaint should be construed favorably to the pleader." McCauley v. United States, 38 Fed. Cl. 250, 262-63 (1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)) (other citations omitted).

Pursuant to RCFC 8(a)(1), a plaintiff need only state "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "conclusory allegations unsupported by factual assertions will not withstand a motion to dismiss." McCauley, 38 Fed. Cl. at 263 (internal quotation marks omitted). Accord Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim."). Moreover, the Court can consider and resolve any disputes regarding the truth of the jurisdictional facts alleged in the complaint. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); accord Zaccardelli v. United States, 68 Fed. Cl. 426, 430 (2005).

B. Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986);

Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987); RCFC 56(c). It is a "salutary method of disposition designed 'to secure the just, speedy, and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). As the court of appeals emphasized in Sweats Fashions: "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." Id. (emphasis omitted) (quoting Celotex Corp., 477 U.S. at 325). Thus, where the non-moving party fails to make a sufficient showing as to the existence of an essential element for which it bears the burden of proof, summary judgment is appropriate. Celotex Corp., 477 U.S. at 322-23.

Contract interpretation is a question of law that is generally resolvable by summary judgment. Smelser v. United States, 53 Fed. Cl. 530, 539 (2002) (citing Varilease Tech. Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002)). One begins by looking to the plain language of the agreement. Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991); Cray Research, Inc. v. United States, 44 Fed. Cl. 327, 329 (1999). The Court's first responsibility when

construing a disputed contractual provision is to determine analytically whether the meaning of the disputed contract provision is plain from the language or whether an ambiguity exists. McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996) ("We begin with the plain language."); accord Gresham, Smith & Partners v. United States, 24 Cl. Ct. 796, 802 (1991). When the provisions of a contract are clear, "the court may not resort to extrinsic evidence to interpret them." HRE, Inc. v. United States, 142 F.3d 1274, 1276 (Fed. Cir. 1998) (quoting McAbee Constr., 97 F.3d at 1435). Contract interpretation calls for an objective test, with the standard being what a similarly situated, reasonably prudent contractor would have understood the contract language to mean, not what the drafter or any other party subjectively intended the contract to mean. City of Tacoma v. United States, 38 Fed. Cl. 582, 588 (1997) (citing City of Oxnard v. United States, 851 F.2d 344, 347 (Fed. Cir. 1988)).

## II. This Court Lacks Jurisdiction To Decide Harper's Claims For Reclassification Of KCI's Laborers

Pursuant to the Contract Disputes Act, 41 U.S.C. § 601, et seq., this Court lacks jurisdiction to entertain a claim for the reclassification or wage conformance of laborers. Clause I-258 of the contract incorporated by reference FAR 52.222-14 (Feb. 1988), entitled "DISPUTES CONCERNING LABOR STANDARDS,"

PFUF 19, A3, which states:

> The United States Department of Labor has set forth in 29 CFR parts 5, 6, and 7 procedures for resolving disputes concerning labor standards and requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause includes disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

48 C.F.R. § 52.222-14 (emphasis added).

Regardless of how Harper styles its claim or complaint, whether as a defective specification or a mis-direction of the contracting officer, its complaint relates to the wages it was required to pay certain laborers. See compl. at ¶ 31-33. Under these circumstances, the Court lacks jurisdiction to entertain the complaint. Ashford v. United States, 43 Fed. Cl. 1, 5 (1997) ("[A]dherence to the specified disputes procedure is the only mechanism open to a contractor seeking to challenge the appropriateness of a particular wage determination."); see also Collins International Service Co. v. United States, 744 F.2d 812, 815 (Fed. Cir. 1984).

As stated in Emerald Maintenance, Inc. v. United States, 925 F.2d 1425 (Fed. Cir. 1991):

> [W]hether as a defective specification or a misrepresentation, the essence of its complaint relates to the wage rate it had to pay all workers doing roofing work, and the listing of the job categories and wage rates in the contract is surely one of the labor standard provisions. The dispute here thus 'aris[es] out of' the labor standards provisions of the contracts, and the Disputes provisions require that it be solved by Labor.

925 F.2d at 1429. Accordingly, this Court lacks jurisdiction to entertain Harper's claims that the contracting officer improperly failed to approve a new classification for "Tradesmen," or that the wage determination should have included the labor classification of Tradesmen (as did the earlier acquisition for phase II). United Int'l Investigative Servs. v. United States, 26 Cl. Ct. 892, 902 (1992) ("To the extent Count I is based on defects in the wage determination originally incorporated into the contract, the court lacks jurisdiction to hear plaintiff's claim.").

Further, the contracting officer was required to ensure that any laborers not listed in the wage determination were "classified in conformance with the wage determination." 48 C.F.R. § 52.222-6(b)(1). The contract spelled out how the parties, with approval of the DOL, could conform additional wage classifications. 48 C.F.R. § 52.222-6(b)(2); PFUF 18, A3. Likewise, the contract identified how the DOL would resolve disputes between the parties about a particular wage

conformance. 48 C.F.R. § 52.222-6(b)(3); PFUF 18, A3. In any event, the contract required wages for any additional classifications of laborers to be paid from the first day on which the work was performed at the job site. 48 C.F.R. § 52.222-6(b)(4) ("The wage rate . . . determined pursuant to subparagraphs (b)(2) and (b)(3) of this clause shall be paid to all workers performing work in the classification under this contract from the first day on which work is performed in the classification.").

Moreover, Harper knew, understood, and fully appreciated the proper procedures to seek the conformance or classification for additional laborers working at the job site that were not already conformed. See PFUF 26-27, A86, 89. In April 1997, Harper had submitted a request for the wage conformance for tile setters and tile finishers for another subcontractor. PFUF 26, A86. This request was recommended for approval by the contracting officer and later, after revision, approved by the DOL. PFUF 26-28, A86-90. For some unexplained reason, Harper never submitted a formal request to the contracting officer to initiate, at the DOL, a review process for the new conformance that KCI sought. PFUF 28, A91. The Government, based upon correspondence provided by KCI, can only now surmise that KCI and Harper knew that its endeavor for a new wage conformance would not be successful at the DOL. See PFUF 33, A101 ("efforts to

persuade Department of Labor were not working"). Without Harper's initiation of a proper written wage conformance request, the contracting officer was not required to do anything further. The contracting officer was under no obligation to initiate a formal wage conformance request and review at the DOL. See Collins Int'l Serv. Co. v. United States, 744 F.2d 812 (Fed. Cir. 1984) ("[W]e are compelled to conclude, as did the Claims Court, that the Navy did not owe CISCO a legal duty to clarify the Labor employee classifications, despite CISCO's efforts to obtain such clarification.").

Notably, this is not a dispute about how to interpret the contract or specifically apply the wage determination. Harper's complaint alleges the wage determinations had a classification for "'Landscape Maintenance Laborer' with a base rate of pay of $7.00, and a classification of 'Landscape Laborer' with a base rate of pay of $13.40 plus $8.61 in fringe benefits." Compl. at ¶ 31. However, the wage determinations do not contain such wage classifications with the rates sought by Harper. PFUF 21, 24. The wage determinations contain a job classification of "landscape laborer, clean-up, fencing (chain link and wood)" with a base wage rate of $13.14 plus $8.61 in fringe benefits (Item # CA047-472). PFUF 25, A29. It is unclear how Harper would have been harmed when this labor classification was clearly present in the wage determinations. Again, the

Government can only conclude that Harper is improperly asking this Court to find that the classifications of "'Landscape Maintenance Laborer' with a base rate of pay of $7.00" or "Tradesman" were the proper labor classifications that should have been used or inserted in the wage determinations.

With no viable dispute over how to interpret a contract provision, this is not a dispute the Court may decide. Cf. Aleman Food Services, Inc. v. United States, 994 F.2d 819, 822 (Fed. Cir. 1993) ("[t]he dispute whether the government is obligated to compensate Aleman for increases in Texas state workers' compensation and unemployment taxes, is a question of contract interpretation which we review de novo."); Burnside-Ott Aviation Training Center, Inc. v. United States, 985 F.2d 1574, 1580 (Fed. Cir. 1993) (contractor was not merely challenging the DOL's classification of its employees or the wage rate it had to pay its employees, but rather the effect that the DOL's classification had on its contract rights, so that the court did have jurisdiction to entertain the claim). Therefore, the Court must dismiss Harper's claims on behalf of KCI regarding wage classifications because it does not possess jurisdiction to decide those claims.

## III. This Court Should Dismiss Harper's Delay Claims Or Grant The United States Partial Summary Judgment

On behalf of KCI, its subcontractor, Harper asserts two interrelated damage claims allegedly resulting from excusable delay. Complaint at ¶¶ 15, 18, 19. First, Harper claims that another Government contractor and its subcontractor caused KCI to be delayed because KCI was forced to complete its work "out of sequence" and that "KCI's work was damaged by work being performed by other subcontractors." Compl. at ¶¶ 15, 18. Next, Harper claims that the initial delay created "a domino effect" that led to excessive rain, causing KCI to be delayed in completing its subcontract. Compl. at ¶ 19. The delay claims should be dismissed due to Harper's lack of standing because the subcontract explicitly exempts Harper from any liability for such claims of delay caused by other contractors or by weather. See PFUF 5, A45. If the Court determines otherwise, the weather-related delay claims should be denied because the parties resolved those claims, without reservation, in two contract modifications. See PFUF 6, 9, A49-50, 61-62.

### A. Harper's Delay Claims Should Be Dismissed Because Harper Lacks Standing Under The Severin Doctrine

Harper claims that its subcontractor, KCI, was injured by delays resulting from weather conditions and other Government contractors or subcontractors. Compl. at ¶¶ 19, 21, 26, 27, 38. The Tucker Act, 28 U.S.C. § 1491(a)(1), affords

this Court jurisdiction where privity of contract exists between the party bringing suit and the United States. Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984). A plaintiff must also allege sufficient facts to establish its Article III standing, which among other things, requires a plaintiff to demonstrate an injury in fact. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see Bailey v. United States, 341 F.3d 1342, 1345-47 (Fed. Cir. 2003) (affirming this Court's dismissal of certain claims for lack of Article III standing).

Subcontractors are not in privity with the United States simply by virtue of having agreed to perform work for a contractor who is in privity with the United States. See E.R. Mitchell Constr. Co. v. Danzig, 175 F.3d 1369, 1370 (Fed. Cir. 1999). A prime contractor may pursue "pass-through" claims on behalf of its subcontractor, who would otherwise not be able to pursue such claims for lack of privity with the United States. Id. In this special case of a subcontractor's injury arising from a contract between a prime contractor and the United States, the prime contractor must be liable to the subcontractor for the subcontractor's injury in order for the prime contractor to have standing to sue the Government for damages on behalf of the subcontractor. Severin v. United States, 99 Ct. Cl. 435, 442 (1943), cert. denied, 322 U.S. 733, 733 (1944). The burden is upon the Government to raise the Severin defense and to establish that the prime contractor is not liable to the

subcontractor. E.R. Mitchell, 175 F.3d at 1370. In other words, if the Government demonstrates as a matter of law that the prime contractor could suffer no damage as a result of the subcontractor's alleged injury, the prime contractor cannot pursue a claim to recover for the subcontractor's damages. See id.

Harper does not allege any injury it has suffered as a result of the Government's actions. It alleges, at most, injuries to its subcontractor, KCI, which Harper asserts only "on behalf of KCI." See Compl. at ¶¶ 18, 19, 21, 23, 24, 26, 27, 34, 37, 38. Harper does not have standing to pursue these claims because it is not liable to KCI for KCI's alleged injuries. The subcontract between Harper and KCI contains a paragraph entitled "Delays," which limits Harper's liability:

> A. In the event of any delays, entailed as a result of fault of [Harper] or [the United States], then [Harper] shall grant [KCI] an extension of time equal to the delay and [KCI] shall be entitled to no other or further damages against [Harper] or [the United States].
>
> B. Any delays or additional work entailed as a result of weather conditions, storms, acts of God, delays in construction, delays by governmental bodies will not entitle [KCI] to any extras whatsoever.

PFUF 5, A45. Further, the subcontract provides only for an extension of time, without mention of any liability for damages, when KCI requests such an extension from Harper within 30 days of the delay, if due to "the neglect or default

of . . . [the United States] . . . or other contractors employed by [the United States]." Id. These provisions of the subcontract signed by Harper and KCI establish that Harper is not liable to KCI for any damages arising from delays caused by the weather or by other Government contractors.

Harper and KCI were previously involved in a Miller Act civil action in the United States District Court for the Central District of California, Western Division. See United States ex rel. Karleskint-Crum, Inc. v. Harper/Nielsen Dillingham, JV, et al., No. 99-08182RJK (C.D. Cal. 2000) (unpublished order dismissing with prejudice pursuant to the stipulation of the parties). The parties agreed in settling the case that "[i]t is understood and agreed by the Parties that [Harper's] payment of $84,360.59 settles all claims KCI has on the Project, except a claim for equitable adjustment for which [Harper] shall have no liability except to cooperate in submittal as set forth in the letter agreement by the parties." PFUF 14, A72. Regarding KCI's claimed equitable adjustment, two documents signed by KCI's vice president and incorporated by the settlement agreement note that "[Harper] has no responsibility except to furnish documents and reasonably cooperate . . . in processing [KCI's] request." PFUF 15, A74-75. In addition, KCI "will look solely to the U.S. government for payment of any allowable equitable adjustment." Id. The incorporated "letter agreement" indicates that Harper simply

would not oppose a FOIA request, would certify a KCI request for equitable adjustment "if it can concur in the basis therefore," and would be responsible for providing documents to KCI, but that KCI would reimburse Harper for any extraordinary costs of duplication. PFUF 16, A76-77. Therefore, the settlement agreement further demonstrates Harper's and KCI's acceptance that Harper was not, and is not, liable to KCI for damages arising from the delay claims asserted in this case, but that KCI might attempt to recover using a pass-through claim.

The complaint and the procedural history of this case indicate that Harper is merely presenting such a pass-through claim on behalf of KCI, which, as a general proposition, would be permitted. However, the subcontract between Harper and KCI specifically absolves Harper of liability for damages due to the types of delays that KCI claims in this case.[3] Therefore, in accordance with the Severin doctrine, Harper does not possess Article III standing to assert pass-through claims on behalf of KCI for those damages, and this Court must dismiss those claims for

---

[3] By contrast, the subcontract appears to be silent regarding wage classification claims, which, if otherwise within this Court's jurisdiction, would permit Harper to pursue those claims on behalf of KCI. See Donovan Constr. Co. v. United States, 138 Ct. Cl. 97, 149 F.Supp. 898, 900 (1957) ("[I]f the subcontract is silent on the question of non-liability of the prime contractor then recovery can be had by the prime contractor on behalf of the subcontractor but where the subcontract expressly negates any liability of the prime contractor to the subcontractor then recovery on behalf of the subcontractor cannot be allowed.").

lack of jurisdiction.

B. Harper's Weather-Related Delay Claims Should Be Denied Because They Are Barred By Accord And Satisfaction

If this Court determines that is possesses jurisdiction to decide Harper's claims for KCI's alleged delay-induced injuries, it should deny KCI's weather-related delay claims because they are also barred by the doctrine of accord and satisfaction. The doctrine of accord and satisfaction "denotes 'one of the recognized methods of discharging and terminating an existing right' and constitutes 'a perfect defense in an action to enforce a previous claim, whether that claim was well-founded or not.'" Chesapeake & Potomac Tel. Co. of Va. v. United States, 654 F.2d 711, 716 (Ct. Cl. 1981) (quoting 6 Corbin on Contracts § 1276 (1962)); see also Thomas Creek Lumber & Log Co. v. United States, 36 Fed. Cl. 220, 237 (1996); Valcon II, Inc. v. United States, 26 Cl. Ct. 393, 396 (1992). "A claim is discharged by accord and satisfaction when 'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.'" England v. Sherman R. Smoot Corp., 388 F.3d 844, 849 (Fed. Cir. 2004) (quoting O'Connor v. United States, 308 F.3d 1233, 1240 (Fed. Cir. 2002)). It is well-settled that "an executed bilateral contract modification that contains no

reservation of rights constitutes an accord and satisfaction." Valcon II, 26 Cl. Ct. at 397; C&H Commercial Contractors, Inc. v. United States, 35 Fed. Cl. 246, 252 (1996). Moreover, "any reservation of a right or a claim for damages from a bilateral contract modification must ordinarily be manifestly and expressly set forth in the contract modification which incorporates the parties' settlement." C&H Commercial, 35 Fed. Cl. at 252.

In this case, bilateral modifications constitute accord and satisfaction of the weather-related delay claims Harper puts forth on behalf of KCI. See PFUF 6, 9, A49-50, 61-62. There is no genuine issue of material fact regarding these modifications, which the Court can interpret as a matter of law. Effective March 2, 1998, modification P00006 extended the contract performance from that date until April 20, 1998, because of "higher than normal rainfall" between November 1997 through February 1998. PFUF 6, A49-50. Harper's representative signed the modification on March 6, 1998. Id. At that time, Harper did not reserve any claim related to the issues resolved by modification P00006. See id.

Effective April 20, 2998, modification P00007 extended the contract performance from that date until May 2, 1998, because of "higher than normal rainfall" from March 1, 1998 through April 20, 1998. PFUF 9, A61-62. Harper's

representative signed the modification on April 28, 1998. Id. At that time, Harper did not reserve any claim related to the issues resolved by modification P00007. See id. These two bilateral contract modifications extended the contract performance for a total of 61 calendar days based upon objective weather data, without reservation of any related claims. PFUF 6, 9, A49-52, 61-65.

Harper now alleges, on behalf of KCI, delays because of "record-breaking rains from November 1997 through February 1998." Compl. at ¶ 20. However, Harper acknowledges that the Government "authorized a 49-day extension of time" for the period of time at issue, compl. at ¶ 22, and does not address the weather-related 12-day extension agreed upon in modification P00007 for March 1998 through April 1998. On April 13, 1998, more than a month after it agreed to bilateral modification P00006 to extend contract performance for 49 days due to "higher than normal rainfall," Harper raised the issue of delay resulting from the removal of underground storage tanks, which allegedly shifted its performance into the rainy season . See PFUF 7, A59-60. However, the Government responded on September 1, 1998 that, according to progress reports, Harper's performance had not been adversely impacted by the alleged delay. PFUF 8, A56-58. On or about May 26, 1999, more than one year after Harper agreed to modifications P00006 and P00007, it attempted to raise, on behalf of KCI, the

delay claims at issue in this case. See PFUF 10, A67. Harper admits that it failed to certify KCI's claim, pursuant to 41 U.S.C. § 605(c), at that time.[4] See compl. at ¶ 35-36. On October 13, 1999, accompanying its invoice for final payment, Harper belatedly attempted to reserve KCI's claim by stating that: "Our landscape subcontractor, [KCI], has submitted a claim for equitable adjustment in the amount of $720,500.00. This claim is currently in litigation." PFUF 12, A71. Over 5 years after agreeing to the 49-day extension of the contract performance period in modification P00006, and the 12-day extension in modification P00007, Harper submitted a certified claim seeking compensation on behalf of KCI, upon which this action is based. PFUF 17, A80-85; Compl. at ¶ 36.

Harper's agreement in modifications P00006 and P00007, which both resolved delays because of "higher than normal rainfall," and its failure to reserve any claim at the time it signed those modifications, bars Harper from raising claims relating to the same issues resolved in those modifications. See Valcon II, 26 Cl. Ct. at 397; C&H Commercial, 35 Fed. Cl. at 252. Harper's failure to certify a claim in this regard until over 5 years after the modifications were executed is

---

[4] Harper confuses its dates. The Government's September 1, 1998 letter was in response to Harper's April 13, 1998 request. See PFUF 8, A56-58. On June 15, 1999, Harper's May 26, 1999 attempted "pass-through" claim on behalf of KCI was rejected for lack of the required certification. PFUF 11, A66.

further evidence that modifications P00006 and P00007 did not contemplate the reservation of claims for delay due to adverse weather. For these reasons, if the Court determines it possesses jurisdiction to consider Harper's weather-related delay claims, it should bar those claims under the doctrine of accord and satisfaction, granting partial summary judgment on those claims in favor of the United States.

## CONCLUSION

For the foregoing reasons, the Court should dismiss for lack of jurisdiction Harper's claims filed on behalf of KCI regarding wage classifications and alleged delays, or in the alternative, the Court should grant partial summary judgment in favor of the United States with regard to Harper's weather-related delay claims because they are barred by accord and satisfaction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Jeffrey S. Pease
JEFFREY S. PEASE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

Of Counsel:

BRYAN O'BOYLE
Senior Trial Attorney
Air Force Legal Service Agency
Commercial Litigation Division

Attorneys for Defendant

January 4, 2006

# APPENDIX

# INDEX TO DEFENDANT'S APPENDIX


| | PAGE |
|---|---|
| Solicitation, Offer and Award | A1 |
| Attachment 1, General Decision Number CA960039 | A4 |
| Attachment 2, General Decision Number CA960047 | A22 |
| Attachment 5, Specifications | A37 |
| Modification P00001 | A40 |
| Subcontract | A44 |
| Modification P00006 | A49 |
| Memorandum and Attachments, March 2, 1998 | A51 |
| Memorandum, September 1, 1998 | A56 |
| Memorandum, June 17, 1998 | A57 |
| Letter, April 13, 1998 | A59 |
| Modification P00007 | A61 |
| Memorandum and Attachment, April 20, 1998 | A63 |
| Memorandum, June 15, 1999 | A66 |
| Letter, May 26, 1999 | A67 |
| Letter, May 18, 1999 | A68 |
| Final Invoice | A69 |
| Settlement Agreement and Mutual Release and Attachments | A72 |
| Certified Claim, Excerpts | A80 |

INDEX TO DEFENDANT'S APPENDIX (cont'd)

PAGE

Request for Authorization of Additional Classification, April 17, 1997 . . . . . A86

Memorandum, April 24, 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A87

Request for Authorization of Additional Classification, July 16, 1997 . . . . . . A89

Letter, August 14, 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A90

Declaration of Leonard J. Horniak . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A91

Memorandum, September 30, 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A92

Letter, October 7, 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A94

Memorandum, October 30, 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A95

Letter and Facsimile Transmission, November 10, 1997 . . . . . . . . . . . . . . . . . A96

Facsimile Transmission, December 15, 1997 . . . . . . . . . . . . . . . . . . . . . . . . . A99

Letter and Attachments, January 12, 1998 . . . . . . . . . . . . . . . . . . . . . . . . . . . A101

| SOLICITATION, OFFER AND AWARD (Construction, Alteration, or Repair) | SOLICITATION NO. F04684-96-B-0005 | 2. TYPE OF SOLICITATION [X] SEALED BID (IFB) [ ] NEGOTIATED (RFP) | 3. DATE ISSUED 21 June 96 | PAGE OF PAGES 1 OF 41 |
|---|---|---|---|---|

IMPORTANT - The 'offer' section on the reverse must be fully completed by the offeror.

| 4. CONTRACT NO. | 5. REQUISITION/PURCHASE REQUEST NO. | 6. PROJECT NO. |
|---|---|---|
| F04684-96-C-0046 | F5CERF61090300 | XUMU 96-4003<br>MILITARY FAMILY HOUSING PHASE III |

| 7. ISSUED BY | CODE | 8. ADDRESS OFFER TO |
|---|---|---|
| 30 CONS/LGCCB<br>806 13TH STREET, SUITE 2<br>VANDENBERG AFB CA 93437-5226 | | 30 SW/BZ<br>ATTN: F04684-96B0005, MFH PHASE III<br>806 13th St, Suite 129<br>VANDENBERG AFB CA 93437-5226<br>DO: C2 SIC CODE: 1521 SIZE STD: $17,000,000 |

| 9. FOR INFORMATION CALL: | A. NAME | B. TELEPHONE NO. (Include area code)(NO COLLECT CALLS) |
|---|---|---|
| | BUYER: HUGHES, CHARLES E /LGCCB | 8057348232 X5-7031 |

## SOLICITATION

NOTE: In sealed bid solicitations 'offer' and 'offeror' mean 'bid' and 'bidder'.

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS (Title, identifying no., date)
SEE SCHEDULE.
PLEASE READ THE FOLLOWING INFORMATION:

1. FAILURE TO COMPLETE THE REPRESENTATIONS AND CERTIFICATIONS MAY DETERMINE YOUR BID NON-RESPONSIVE.

2. TO ENSURE ADEQUATE INTEREST IN AND SUPERVISION THE CONTRACTOR WILL BE REQUIRED TO PERFORM 20 PERCENT OF THE CONTRACT WORK WITH ITS OWN WORK FORCES. SEE FAR CLAUSE 52.236-1

3. THIS ACQUISITION IS UNRESTRICTED

4. ENTER PRICES IN BLACK INK OR TYPEWRITER IN SECTION B

5. A SITE VISIT WILL BE CONDUCTED ON 8 JULY 96 AT 10:00 AM. (SEE L-124C)

6. IF THIS CONTRACT IS AWARDED TO OTHER THAN A SMALL BUSINESS CONCERN, A SUBCONTRACTING PLAN WILL BE REQUIRED.

7. HAND CARRIED BIDS SHALL BE PLACED IN THE "BID BOX" LOCATED IN BLDG 7015, FIRST FLOOR, SUITE 129. THIS IS THE SMALL BUSINESS OFFICE.

11. The Contractor shall begin performance within 10 calendar days & complete it within 480 calendar days after receiving [ ] award, [X] notice to proceed.
This performance period is [X] mandatory [ ] negotiable. (See * I100 FAR 52.211-10)

| 12A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? (If 'YES,' indicate within how many days after award in Item 12B.) [X] YES [ ] NO | 12B. CALENDAR DAYS 020 |
|---|---|

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and 00 copies to perform the work required are due at the place specified in item 8 by 1:00 PM (HOUR) LOCAL TIME 22 Jul 96 (date). If this is a sealed bid solicitation, offers will be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number and the date and time offers are due.

B. An offer guarantee [X] IS, [ ] IS NOT REQUIRED.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation full text or by reference.

D. Offers providing less than 090 calendar days for Government acceptance after the date offers are due will be considered nonresponsive and will be rejected.

A1

(Must be fully completed by offeror)

| 14. NAME AND ADDRESS OF OFFEROR (Include ZIP Code) | 15. TELEPHONE NO. (Include area code) |
|---|---|
| HARPER/NIELSEN DILLINGHAM BUILDERS, Inc.<br>A Joint Venture<br><br>2241 Kettner Blvd., Suite 300<br>San Diego, California 92101 | TEL:(619) 233-7900 FAX:(619) 233-1889<br>16. REMITTANCE ADDRESS (Include only if different than item 14) |
| CEC#14-740-3658 TIN#33-0640898<br>CODE 0J2V9 FACILITY CODE | |

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within 090 calendar days after the date offers are due. (Insert any number equal to or greater than the minimum requirements stated in Item 13D. Failure to insert any number means offeror accepts the minimum in Item 13D.

AMOUNTS >> SEE PART I-THE SCHEDULE; SECTION B-SUPPLIES AND PRICES/COSTS

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGMENT OF AMENDMENTS
(The offeror acknowledges receipt of amendments to the solicitation - give number and date of each)

| AMENDMENT NO. | 0001 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 7/11/96 | | | | | | | | | |

| 20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or print) | 20B. SIGNATURE | 20C. OFFER DATE |
|---|---|---|
| Ronald D. Harper, Managing Partner | [signature] | July 22, 1996 |

21. ITEMS ACCEPTED:
CLINs 0001 - 0008. Amendment 001, 11 Jul 96 & Subcontracting Plan, 22 Jul 96, are hereby incorporated into and made a part of this contract.

| 22. AMOUNT | 23. ACCOUNTING AND APPROPRIATION DATA | |
|---|---|---|
| $17,724,714.00 | 576/17040 896 83LW 96-DKX P711 672300 A88549 | |
| 24. SUBMIT INVOICES TO ADDRESS SHOWN IN (4 COPIES UNLESS OTHERWISE SPECIFIED) >> | ITEM 7 | 25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO<br>[ ] 10 USC 2304(c)( ) [ ] 41 USC 253(c)( ) |
| 26. ADMINISTERED BY CODE<br>SAME AS BLOCK 7 | | 27. PAYMENT WILL BE MADE BY<br>DFAS-SB/FPF<br>1111 EAST MILL STREET<br>SAN BERNADINO CA 92408-1621 |

CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE

| [ ] 28. NEGOTIATED AGREEMENT | [X] 29. AWARD |
|---|---|
| (Contractor is required to sign this document and return _____ copies to issuing office). Contractor agrees to furnish & deliver all work, requisitions identified on this form & any continuation sheets for the consideration slated in this contract. The rights & obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitations, & (c) the clauses, representations, certifications, & specifications or incorporated by reference in or attached to this contract. | (Contractor is not required to sign this document). Your offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consits of (a) the Government solicitation and your offer and (b) this contract award. No futher contractual document is necessary. |

| 30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN (Type or print) | | 31A. NAME OF CONTRACTING OFFICER (Type or print)<br>C.H. PAINTER | |
|---|---|---|---|
| 30B. SIGNATURE | 30C. DATE | 31B. UNITED STATES OF AMERICA<br>A2 [signature] | 31C. AWARD DATE<br>27 AUG 1996 |

| | | | |
|---|---|---|---|
| I-122. | 52.214-29 | ORDER OF PRECEDENCE--SEALED BIDDING (IAW FAR 14.201-7(d)) | JAN 1986 |
| I-214. | 52.219-8 | UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS CONCERNS (IAW FAR 19.708(a)) | OCT 1995 |
| I-215. | 52.219-9 | SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS SUBCONTRACTING PLAN (IAW FAR 19.708(b)(1)) | OCT 1995 |
| I-216. | 52.219-9 | ALTERNATE I (IAW FAR 19.708(b)(1)) | OCT 1995 |
| I-223. | 52.219-16 | LIQUIDATED DAMAGES--SUBCONTRACTING PLAN (IAW FAR 19.708(b)(2)) | OCT 1995 |
| I-245. | 52.222-1 | NOTICE TO THE GOVERNMENT OF LABOR DISPUTES (IAW FAR 22.101-1(e), and 22.103-5(a)) | APR 1984 |
| I-247. | 52.222-3 | CONVICT LABOR (IAW FAR 22.202) | APR 1984 |
| I-248. | 52.222-4 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (IAW FAR 22.305) | JUL 1995 |
| I-250. | 52.222-6 | DAVIS-BACON ACT (IAW FAR 22.407(a)(1)) | FEB 1995 |
| I-251. | 52.222-7 | WITHHOLDING OF FUNDS (IAW FAR 22.407(a)(2)) | FEB 1988 |
| I-252. | 52.222-8 | PAYROLLS AND BASIC RECORDS (IAW FAR 22.407(a)(3)) | FEB 1988 |
| I-253. | 52.222-9 | APPRENTICES AND TRAINEES (IAW FAR 22.407(a)(4)) | FEB 1988 |
| I-254. | 52.222-10 | COMPLIANCE WITH COPELAND ACT REQUIREMENTS (IAW FAR 22.407(a)(5)) | FEB 1988 |
| I-255. | 52.222-11 | SUBCONTRACTS (LABOR STANDARDS) (IAW FAR 22.407(a)(6)) | FEB 1988 |
| I-256. | 52.222-12 | CONTRACT TERMINATION--DEBARMENT (IAW FAR 22.407(a)(7)) | FEB 1988 |
| I-257. | 52.222-13 | COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS (IAW FAR 22.407(a)(8)) | FEB 1988 |
| I-258. | 52.222-14 | DISPUTES CONCERNING LABOR STANDARDS (IAW FAR 22.407(a)(9)) | FEB 1988 |
| I-259. | 52.222-15 | CERTIFICATION OF ELIGIBILITY (IAW FAR 22.407(a)(10)) | FEB 1988 |
| I-264. | 52.222-26 | EQUAL OPPORTUNITY (IAW FAR 22.810(e)) | APR 1984 |
| I-266. | 52.222-27 | AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (IAW FAR 22.810(f)) | APR 1984 |
| I-274. | 52.222-35 | AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS (IAW FAR 22.1308(a)(1), and DFARS 222.1308(a)(1)) | APR 1984 |
| I-276. | 52.222-36 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (IAW FAR 22.1408(a)) | APR 1984 |

General Decision Number CA960039

Superseded General Decision No. CA950039

State: California

Construction Type:
BUILDING
HEAVY
HIGHWAY

County(ies):
SANTA BARBARA

BUILDING CONSTRUCTION PROJECTS; HEAVY CONSTRUCTION PROJECTS (doe not include water well drilling); HIGHWAY CONSTRUCTION PROJECTS; DREDGING PROJECTS (does not include hopper dredge work)

| Modification Number | Publication Date |
|---|---|
| 0 | 03/15/1996 |
| 1 | 04/12/1996 |
| 2 | 04/26/1996 |
| 3 | 05/31/1996 |
| 4 | 06/07/1996 |

COUNTY(ies):
SANTA BARBARA

ASBE0208B 09/20/1995

| | Rates | Fringes |
|---|---|---|
| INSULATOR/ASBESTOS WORKER Includes the application of all insulating materials, protective coverings, coatings, and finishings to all types of mechanical systems | 27.21 | 7.53 |
| ASBESTOS REMOVAL WORKER/ HAZARDOUS MATERIAL HANDLER Includes preparation, wetting, stripping, removal, scrapping, vacuuming, bagging and disposing of all insulation materials from mechanical systems, whether they contain asbestos or not | 20.00 | 4.47 |

---

BOIL0092A 04/01/1996

| | Rates | Fringes |
|---|---|---|
| BOILERMAKER | 28.31 | 8.76 |

---

BRCA0004F 05/01/1994

| | Rates | Fringes |
|---|---|---|
| BRICKLAYER | 23.60 | 4.65 |

---

BRCA0004H 05/01/1992

| | Rates | Fringes |
|---|---|---|
| MARBLE SETTER | 25.32 | 6.05 |

---

BRCA0004P 06/01/1994

| | Rates | Fringes |
|---|---|---|
| TERRAZZO WORKER | 24.99 | 6.60 |
| TERRAZZO FINISHER | 19.28 | 3.90 |

---

CARP0002A 07/01/1995

| | Rates | Fringes |
|---|---|---|
| CARPENTERS: | | |
| Carpenter (including drywall lathing), cabinet installer, floor worker and acoustical installer | 23.80 | 5.10 |
| Insulation installer: | | |
| Wood frame non-residential or concrete block or tilt-up, Types III, IV and V construction | 17.00 | 4.81 |
| All other work | 23.80 | 5.10 |
| Shingler | 23.93 | 5.10 |
| Saw filer | 23.88 | 5.10 |
| Table power saw operator | 23.90 | 5.10 |
| Pneumatic nailer or power stapler | 24.05 | 5.10 |
| Commercial fence builder | 21.51 | 5.10 |
| Roof loader of shingles (commercial) | 16.75 | 5.10 |
| Millwright | 24.30 | 5.10 |
| Pile driver; Derrick barge; Bridge or dock carpenter; Cable splicer; Heavy framer; Rock slinger | 23.93 | 5.10 |
| Head rock slinger | 24.03 | 5.10 |
| Rock barge or scow | 23.83 | 5.10 |

---

CARP0002B 07/01/1993

| | Rates | Fringes |
|---|---|---|
| DIVERS: | | |
| Diver, wet | 52.86 | 5.10 |
| Diver, stand-by | 26.43 | 5.10 |
| Diver tender | 25.43 | 5.10 |

---

ELEC0011L 12/01/1992

| | Rates | Fringes |
|---|---|---|
| COMMUNICATIONS AND SYSTEMS WORK: | | |
| COMMUNICATIONS & SYSTEMS: | | |
| Installer | 16.15 | 3% + 3.40 |
| Technician | 17.90 | 3% + 3.40 |

SCOPE OF WORK:

Installation, testing, service and maintenance of systems utilizing the transmission and/or transference of voice, sound, vision and digital for commercial, educational, security and entertainment purposes for the following: TV monitoring and surveillance, background-foreground music, intercom and telephone

interconnect, inventory control systems, microwave transmission, multi-media, multiplex, nurse call systems, radio page, school intercom and sound, burglar alarms, fire alarm (see last paragraph below) and low voltage master clock systems in commercial buildings.

Communication Systems that transmit or receive information and/or control systems that are intrinsic to the above listed systems; inclusion or exclusion of terminations and testings of

conductors determined by their function; excluding all other data systems or multiple systems which include control function or power supply; excluding installation of raceway systems, conduit systems, line voltage work, and energy management systems.

Does not cover work performed at Point Arguello or Vandenberg Air Force Base.

Fire alarm work shall be performed at the current inside wireman total cost package.

----------------------------------------------------------------

ELEC0413A 06/01/1995

| ELECTRICIANS: | Rates | Fringes |
|---|---|---|
| Vandenberg Air Force Base: | | |
| Electrical subcontracts over $50,000: | | |
| Electrician | 28.97 | 3% + 6.85 |
| Electrician, welding | 29.47 | 3% + 6.85 |
| Cable splicer | 30.47 | 3% + 6.85 |
| Electrical subcontracts of $50,000 or less: | | |
| Electrician | 25.20 | 3% + 6.85 |
| Electrician, welding | 25.70 | 3% + 6.85 |
| Cable splicer | 26.70 | 3% + 6.85 |
| Remainder of Santa Barbara County: | | |
| Electrical subcontracts over $50,000: | | |
| Electrician | 25.22 | 3% + 6.85 |
| Electrician, welding | 25.72 | 3% + 6.85 |
| Cable splicer | 26.72 | 3% + 6.85 |
| Electrical subcontracts of $50,000 or less: | | |
| Electrician | 21.45 | 3% + 6.85 |
| Electrician, welding | 21.95 | 3% + 6.85 |
| Cable splicer | 22.95 | 3% + 6.85 |

----------------------------------------------------------------

ELEC0413B 06/01/1995

| LINE CONSTRUCTION: | Rates | Fringes |
|---|---|---|
| Vandenberg Air Force Base: | | |
| Line technician; Equipment operator | 28.97 | 4.5% + 6.65 |
| Cable splicer | 30.47 | 4.5% + 6.65 |

| | Rates | Fringes |
|---|---|---|
| Ground person; Ground person/driver | 21.73 | 4.5% + 6.65 |
| Remainder of Santa Barbara County: | | |
| Line technician; Equipment operator | 25.22 | 4.5% + 6.65 |
| Cable splicer | 26.72 | 4.5% + 6.65 |
| Ground person; Ground person/driver | 17.98 | 4.5% + 6.65 |

---

ELEC1245A 06/01/1995

| | Rates | Fringes |
|---|---|---|
| OUTSIDE UTILITY TRANSMISSION WORK: | | |
| Line worker; Cable splicer | 26.87 | 4.5% +6.50 |
| Powder worker | 25.53 | 4.5% +6.50 |
| Ground person | 17.47 | 4.5% +6.50 |
| Line worker, welding | 28.21 | 4.5% +6.50 |

SCOPE OF WORK:
All outside work on electrical transmission lines, switchyards and substations, and outside work in electrical utility distribution systems owned, maintained and operated by electrical utility companies, municipalities, or governmental agencies.

---

ELEV0018A 09/15/1995

| | Rates | Fringes |
|---|---|---|
| ELEVATOR MECHANIC | 28.53 | 6.12 |

FOOTNOTE:
Vacation Pay: 8% with 5 or more years of service, 6% for 6 months to 5 years service. Paid Holidays: New Years Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Friday after, and Christmas Day.

---

ENGI0012F 01/01/1996

| | Rates | Fringes |
|---|---|---|
| POWER EQUIPMENT OPERATORS: | | |
| GROUP 1 | 22.85 | 9.80 |
| GROUP 2 | 23.63 | 9.80 |
| GROUP 3 | 23.92 | 9.80 |
| GROUP 4 | 24.06 | 9.80 |
| GROUP 5 | 25.16 | 9.80 |
| GROUP 6 | 24.28 | 9.80 |
| GROUP 7 | 24.39 | 9.80 |
| GROUP 8 | 25.49 | 9.80 |
| GROUP 9 | 24.51 | 9.80 |
| GROUP 10 | 25.61 | 9.80 |
| GROUP 11 | 24.68 | 9.80 |
| GROUP 12 | 24.78 | 9.80 |
| GROUP 13 | 24.81 | 9.80 |
| GROUP 14 | 24.89 | 9.80 |
| GROUP 15 | 25.01 | 9.80 |
| GROUP 16 | 25.18 | 9.80 |
| GROUP 17 | 25.28 | 9.80 |

| | | |
|---|---|---|
| GROUP 18 | 25.39 | 9.80 |
| GROUP 19 | 25.51 | 9.80 |
| GROUP 20 | 25.68 | 9.80 |
| GROUP 21 | 25.78 | 9.80 |
| GROUP 22 | 25.89 | 9.80 |
| GROUP 23 | 26.01 | 9.80 |
| GROUP 24 | 26.18 | 9.80 |
| | | |
| CRANES, PILEDRIVING & HOISTING EQUIPMENT: | | |
| GROUP 1 | 22.85 | 9.80 |
| GROUP 2 | 23.63 | 9.80 |
| GROUP 3 | 23.92 | 9.80 |
| GROUP 4 | 24.06 | 9.80 |
| GROUP 5 | 24.28 | 9.80 |
| GROUP 6 | 24.39 | 9.80 |
| GROUP 7 | 24.51 | 9.80 |
| GROUP 8 | 24.68 | 9.80 |
| GROUP 9 | 24.85 | 9.80 |
| GROUP 10 | 25.85 | 9.80 |
| GROUP 11 | 26.85 | 9.80 |
| GROUP 12 | 27.85 | 9.80 |
| GROUP 13 | 28.85 | 9.80 |
| | | |
| TUNNEL GROUP: | | |
| GROUP 1 | 24.13 | 9.80 |
| GROUP 2 | 24.42 | 9.80 |
| GROUP 3 | 24.56 | 9.80 |
| GROUP 4 | 24.78 | 9.80 |
| GROUP 5 | 24.89 | 9.80 |
| GROUP 6 | 25.01 | 9.80 |
| GROUP 7 | 25.31 | 9.80 |
| | | |
| DREDGING: | | |
| Hydraulic suction dredges: | | |
| Lever operator | 25.20 | 9.80 |
| Deckmate; Watch engineer | 24.62 | 9.80 |
| Winch (stern winch on dredge) | 24.07 | 9.80 |
| Bargehand; Deckhand; Fire fighter; | | |
| Oiler; Leveehand | 23.53 | 9.80 |
| Dozer | 24.73 | 9.80 |
| | | |
| Clamshell dredges: | | |
| Lever operator | 25.20 | 9.80 |
| Watch engineer; Deckmate | 24.62 | 9.80 |
| Barge mate | 24.14 | 9.80 |
| Bargehand; Deckhand; Fire fighter; | | |
| Oiler | 23.53 | 9.80 |

POWER EQUIPMENT OPERATOR CLASSIFICATIONS

GROUP 1: Barge, brake, compressor operator, Ditch Witch, with seat or similar type equipment, elevator operator - inside, engineer oiler, generator operator, generator, pump or compressor plant operator, pump operator, signal, switch

GROUP 2: Concrete mixer operator - skip type, conveyor operator, fire person, hydrostatic pump operator, oiler crusher (asphalt or concrete plant), skiploader (when wheel type up to 3/4 yd. without attachment), soils field technician, tar pot

fire person, temporary heating plant operator, trenching machine operator

GROUP 3: Equipment greaser (rack), Ford Ferguson (with dragtype attachments), helicopter radio (ground), power concrete curing machine operator, power concrete saw operator, power - driver jumbo form setter operator, stationary pipe wrapping and cleaning machine operator

GROUP 4: Asphalt plant fire person, backhoe operator (mini-max or similar type), boring machine operator, box or mixer (asphalt or concrete), chip spreading machine operator, concrete pump operator (small portable), drilling machine operator, small auger types (Texoma super economatic or similar types - Hughes 100 or 200 or similar types - drilling depth of 30' maximum), equipment greaser (grease truck), guard rail post driver operator, highline cableway signal, hydra-hammer-aero stomper, power sweeper operator, roller operator (compacting), screed operator (asphalt or concrete), trenching machine operator (up to 6 ft.)

GROUP 5: Equipment greaser (grease truck/multi-shift)

GROUP 6: Asphalt plant engineer, batch plant operator, bit sharpener, concrete joint machine operator (canal and similar type), concrete planer operator, deck engine operator, derrick (oilfield type), drilling machine operator, bucket or auger types (Caldwell 100 bucket or similar types - Watson 1000 auger or similar types - Texoma 330, 500 or 600 auger or similar types - drilling depth of 45' maximum), drilling machine operator, hydrographic seeder machine operator (straw, pump or seed), Jackson track maintainer, or similar type, Kalamazoo switch tamper, or similar type, machine tool operator, Maginnis internal full slab vibrator, mechanical berm, curb or gutter (concrete or asphalt), mechanical finisher operator (concrete, Clary-Johnson-Bidwell or similar type), pavement breaker operator (truck mounted), road oil mixing machine operator, roller operator (asphalt or finish), rubber-tired earth moving equipment (single engine, up to and including 25 yds. struck), self-propelled tar pipelining machine operator, skiploader operator (crawler and wheel type, over 3/4 yd. and up to and including 1-1/2 yds.), slip form pump operator (power driven hydraulic lifting device for concrete forms), tractor operator - bulldozer, tamper-scraper (single engine, up to 100 h.p. flywheel and similar types, up to and including D-5 and similar types), tugger hoist operator

GROUP 7: Asphalt or concrete spreading operator (tamping or finishing), asphalt paving machine operator (Barber Greene or similar type), backhoe operator (up to and including 3/4 yd.), small Ford, Case or similar, cast-in-place pipe laying machine operator, combination mixer and compressor operator (gunite work), compactor operator (self-propelled), concrete mixer operator (paving), crushing plant operator, drill doctor, drilling machine operator, bucket or auger types (Caldwell 150 bucket or similar types - Watson 1500, 2000 2500 auger or similar types - Texoma 700, 800 auger or similar types - drilling depth of 60' maximum), elevating grader operator, grade checker, gradall operator, grouting machine operator, heavy-duty repair person, Kalamazoo ballast regulator or similar type, Kolman belt loader and similar type, Le Tourneau blob compactor or similar

type, loader operator (Athey, Euclid, Sierra and similar types), pneumatic concrete placing machine operator (Hackley-Presswell or similar type), pumpcrete operator, rotary drill operator (excluding caisson type), rubber-tired earth-moving equipment operator (single engine, Caterpillar, Euclid, Athey Wagon and similar types with any and all attachments over 25 yds. up to and including 50 cu. yds. struck), rubber-tired earth-moving equipment operator (multiple engine up to and including 25 yds. struck), rubber-tired scraper operator (self-loading paddle wheel type - John Deere, 1040 and similar single unit), self-propelled curb and gutter machine operator, skipload operator (crawler and wheel type over 1-1/2 yds. up to and including 6-1/2 yds.), surface heater and planer operator, tractor compressor drill combination operator, tractor operator (any type larger than D-5 - 100 flywheel h.p. and over, or similar - bulldozer, tamper, scraper and push tractor single engine), tractor operator (boom attachments), traveling pipe wrapping, cleaning and bending machine operator, trenching machine operator

GROUP 8: Heavy-duty repair person (multi-shift)

GROUP 9: Drilling machine operator, bucket or auger types (Caldwell 200 B bucket or similar types - Watson 3000 or 5000 auger or similar types - Texoma 900 auger or similar types - drilling depth of 105' maximum), dual drum mixer, heavy-duty repair-welder combination, monorail locomotive operator (diesel, gas or electric), motor patrol - blade operator (single engine), multiple engine tractor operator (Euclid and similar type - except Quad 9 cat.), rubber-tired earth-moving equipment operator (single engine, over 50 yds. struck), rubber-tired earth-moving equipment operator (multiple engine, Euclid, Caterpillar and similar over 25 yds. and up to 50 yds.), tower crane repair person, tractor loader operator (crawler and wheel type over 6-1/2 yds.), Woods mixer operator (and similar pugmill equipment)

GROUP 10: Heavy-duty repair-welder combination (multi-shift)

GROUP 11: Auto grader operator, automatic slip form operator, drilling machine operator, bucket or auger types (Caldwell, auger 200 CA or similar types - Watson auger 6000 or similar types - drilling depth of 175' maximum), hoe ram or similar with compressor, mass excavator operator, mechanical finishing machine operator, mobile form traveler operator, motor patrol operator (multi-engine), pipe mobile machine operator, rubber-tired earth-moving equipment operator (multiple engine, Euclid, Caterpillar and similar type, over 50 cu. yds. struck), rubber-tired self-loading scraper operator (paddle-wheel-auger type self-loading - two (2) or more units)

GROUP 12: Rubber-tired earth-moving equipment operator operating equipment with push-pull system (single engine, up to and including 25 yds. struck)

GROUP 13: Canal liner operator, canal trimmer operator, remote-control earth-moving equipment operator, wheel excavator operator

GROUP 14: Rubber-tired earth-moving equipment operator, operating equipment with push-pull system (single engine, Caterpillar, Euclid, Athey Wagon and similar types with any and all attachments over 25 yds. and up to and including 50 yds.

struck), rubber-tired earth-moving equipment operator, operating equipment with push-pull system (multiple engine - up to and including 25 yds. struck)

GROUP 15: Rubber-tired earth-moving equipment operator, operating equipment with push-pull system (single engine, over 50 yds. struck), rubber-tired earth-moving equipment operator, operating equipment with push-pull system (multiple engine, Euclid, Caterpillar and similar, over 25 yds. and up to 50 yds. struck)

GROUP 16: Rubber-tired earth-moving equipment operator, operating equipment with push-pull system (multiple engine, Euclid, Caterpillar and similar, over 50 cu. yds. struck), tandem tractor operator (operating crawler type tractors in tandem - Quad 9 and similar type)

GROUP 17: Rubber-tired earth-moving equipment operator, operating in tandem (scrapers, belly dumps and similar types in any combination, excluding compaction units - single engine, up to and including 25 yds. struck)

GROUP 18: Concrete pump operator, truck-mounted, rubber-tired earth-moving equipment operator, operating in tandem (scrapers, belly dumps and similar types in any combination, excluding compaction units - single engine, Caterpillar, Euclid, Athey Wagon and similar types with any and all attachments over 25 yds. and up to and including 50 cu. yds. struck), rubber-tired earth-moving equipment operator, operating in tandem (scrapers, belly dumps and similar types in any combination, excluding compaction units - multiple engine, up to and including 25 yds. struck)

GROUP 19: Rubber-tired earth-moving equipment operator, operating in tandem (scrapers, belly dumps and similar types in any combination, excluding compaction units - single engine, over 50 yds. struck)

GROUP 20: Rubber-tired earth-moving equipment operator, operating in tandem (scrapers, belly dumps and similar types in any combination, excluding compaction units - multiple engine, Euclid, Caterpillar and similar type, over 50 cu. yds. struck)

GROUP 21: Rubber-tired earth-moving equipment operator, operating equipment with the tandem push-pull system (single engine, up to and including 25 yds. struck)

GROUP 22: Rubber-tired earth-moving equipment operator, operating equipment with the tandem push-pull system (single engine, Caterpillar, Euclid, Athey Wagon and similar types with any and all attachments over 25 yds. and up to and including 50 yds. struck), rubber-tired earth-moving equipment operator, operating with the tandem push-pull system (multiple engine, up to and including 25 yds. struck)

GROUP 23: Rubber-tired earth-moving equipment operator, operating equipment with the tandem push-pull system (single engine, over 50 yds. struck), rubber-tired earth-moving equipment operator, operating equipment with the tandem push-pull system (multiple engine, Euclid, Caterpillar and similar, over 25 yds.

and up to 50 yds. struck)

GROUP 24: Rubber-tired earth-moving equipment operator, operating equipment with the tandem push-pull system (multiple engine, Euclid, Caterpillar and similar type, over 50 cu. yds. struck)

CRANES, PILEDRIVING AND HOISTING EQUIPMENT CLASSIFICATIONS

GROUP 1: Engineer oiler; Fork lift operator (under 5 tons capacity)

GROUP 2: Truck crane oiler

GROUP 3: A-frame or winch truck operator; Ross carrier operator (jobsite)

GROUP 4: Bridge-type unloader and turntable operator; Helicopter hoist operator

GROUP 5: Stinger crane (Austin-Western or similar type); Tugger hoist operator (1 drum)

GROUP 6: Bridge crane operator; Cretor crane operator; Fork lift operator (over 5 tons); Hoist operator (Chicago boom and similar type); Lift mobile operator; Lift slab machine operator (Vagtborg and similar types); Material hoist operator; Shovel, backhoe, dragline, clamshell operator (over 3/4 yd. and up to 5 cu. yds. mrc); Tugger hoist operator

GROUP 7: Pedestal crane operator; Shovel, backhoe, dragline, clamshell operator (over 5 cu. yds. mrc); Tower crane repair; Tugger hoist operator (3 drum)

GROUP 8: Crane operator (up to and including 25 ton capacity); Crawler transporter operator; Derrick barge operator (up to and including 25 ton capacity); Hoist operator, stiff legs, Guy derrick or similar type (up to and including 25 ton capacity); Shovel, backhoe, dragline, clamshell operator (over 7 cu. yds. mrc)

GROUP 9: Crane operator (over 25 tons and up to and including 50 tons mrc); Derrick barge operator (over 25 tons up to and including 50 tons mrc); Highline cableway operator; Hoist operator, stiff legs, Guy derrick or similar type (over 25 tons up to and including 50 tons mrc); K-crane operator; Polar crane operator; Tower crane operator

GROUP 10: Crane operator (over 50 tons and up to and including 100 tons mrc); Derrick barge operator (over 50 tons up to and including 100 tons mrc); Hoist operator, stiff legs, Guy derrick or similar type (over 50 tons up to and including 100 tons mrc)

GROUP 11: Crane operator (over 100 tons and up to and including 200 tons mrc); Derrick barge operator (over 100 tons up to and including 200 tons mrc); Hoist operator, stiff legs, Guy derrick or similar type (over 100 tons up to and including 200 tons mrc); Mobile tower crane operator (over 100 tons up to and including 200 tons mrc)

GROUP 12: Crane operator (over 200 tons up to and including 300 tons mrc); Derrick barge operator (over 200 tons up to and including 300 tons mrc); Hoist operator, stiff legs, Guy derrick or similar type (over 200 tons, up to and including 300 tons mrc); Mobile tower crane operator (over 200 tons, up to and including 300 tons mrc)

GROUP 13: Crane operator (over 300 tons); Derrick barge operator (over 300 tons); Helicopter pilot; Hoist operator, stiff legs, Guy derrick or similar type (over 300 tons); Mobile tower crane operator (over 300 tons)

TUNNEL CLASSIFICATIONS

GROUP 1: Skiploader (wheel type up to 3/4 yd. without attachment)

GROUP 2: Power-driven jumbo form setter operator

GROUP 3: Dinkey locomotive or motorperson (up to and including 10 tons)

GROUP 4: Bit sharpener; Equipment greaser (grease truck); Slip form pump operator (power-driven hydraulic lifting device for concrete forms); Tugger hoist operator (1 drum); Tunnel locomotive operator (over 10 and up to and including 30 tons)

GROUP 5: Backhoe operator (up to and including 3/4 yd.); Small Ford, Case or similar; Drill doctor; Grouting machine operator; Heading shield operator; Heavy-duty repairperson; Loader operator (Athey, Euclid, Sierra and similar types); Mucking machine operator (1/4 yd., rubber-tired, rail or track type); Pneumatic concrete placing machine operator (Hackley-Presswell or similar type); Pneumatic heading shield (tunnel); Pumpcrete gun operator; Tractor compressor drill combination operator; Tugger hoist operator (2 drum); Tunnel locomotive operator (over 30 tons)

GROUP 6: Heavy-duty repair/welder combination

GROUP 7: Tunnel mole boring machine operator

---

IRON0001M 01/01/1996

| | Rates | Fringes |
|---|---|---|
| IRONWORKERS: | | |
| Work on Vandenberg Air Force Base: | | |
| Ornamental, reinforcing and structural | 24.83 | 12.17 |
| Fence erector | 23.94 | 12.17 |
| All other work: | | |
| Ornamental, reinforcing and structural | 21.83 | 12.17 |
| Fence erector | 20.94 | 12.17 |

---

* LABO0001B 07/01/1995

| | Rates | Fringes |
|---|---|---|
| BRICK TENDER | 17.21 | 8.61 |

---

LABO0002H 07/01/1995

| | Rates | Fringes |
|---|---|---|
| LABORERS: | | |
| GROUP 1 | 16.96 | 8.61 |
| GROUP 2 | 17.36 | 8.61 |
| GROUP 3 | 17.56 | 8.61 |
| GROUP 4 | 18.61 | 8.61 |
| GROUP 5 | 18.81 | 8.61 |
| TUNNEL LABORERS: | | |
| GROUP 1 | 19.87 | 8.61 |
| GROUP 2 | 19.99 | 8.61 |
| GROUP 3 | 20.15 | 8.61 |
| GROUP 4 | 20.43 | 8.61 |
| GUNITE LABORERS: | | |
| GROUP 1 | 19.86 | 10.21 |
| GROUP 2 | 18.91 | 10.21 |
| GROUP 3 | 16.40 | 10.21 |
| HOUSEMOVERS (ONLY WHERE HOUSEMOVING IS INCIDENTAL TO A CONSTRUCTION CONTRACT): | | |
| Housemover | 15.37 | 8.19 |
| Yard maintenance person | 15.12 | 8.19 |

LABORER CLASSIFICATIONS

GROUP 1: Cleaning and handling of panels, forms; Concrete screeding for rough strike-off; Concrete, water curing; Demolition laborer, the cleaning of brick and lumber; Dry packing of concrete, plugging, filling of sheetbolt holes; Fire watcher, limber, brush loaders, pilers and debris handlers; Flag person; Gas, oil and/or water pipeline laborer; Laborer, asphalt-rubber material loader; Laborer, general or construction; Laborer, general clean-up; Laborer, landscaping; Laborer, jetting, temporary water and air lines; Material hose operator (walls, slabs, floors and decks); Railroad maintenance, repair track person and road beds; Rigging and signaling; Scaler; Slip form raiser; On highways, slurry seal crew (mixer operator, applicator operator, squeegee operator, shuttle, top person), filling of cracks by any method on any surface; Streetcar and railroad construction track laborers; Striper, concrete or other paved road surfaces; Tar and mortar; Tool crib or tool house laborer; Traffic control by any method; Traffic delineating device applicator; Window cleaner; Wire mesh, pulling all concrete pouring operations

GROUP 2: Asphalt shoveler; Cement dumper (on 1 yd. or larger mixer and handling bulk cement); Cesspool digger and installer; Chucktender; Chute handler, pouring concrete, the handling of the chute from readymix trucks such as walls, slabs, decks, floors, foundations, footings, curb, gutters and sidewalks; Concrete curer, impervious membrane and form oiler; Cutting torch operator (demolition); Fine grader, highways and street paving, airport, runways and similar type heavy construction; Gas, oil and/or water pipeline wrapper; Pot tender and form person; Guinea chaser; Headerboard, asphalt; Laborer, packing rod steel and pans; Membrane vapor barrier installer; Power broom sweeper

(small); Riprap stonepaver, placing stone or wet sacked concrete; Roto scraper and tiller; Sandblaster (pot tender); Septic tank digger and installer (lead); Tank scaler and cleaner; Tree climber, faller, chain saw operator, Pittsburgh chipper and similar type brush shredder; Underground laborer, including caisson bellower

GROUP 3: Buggymobile; Concrete cutting torch; Concrete pile cutter; Driller, jackhammer, 2-1/2 ft. drill steel or longer; Dri-pak-it machine; Gas, oil and/or water pipeline wrapper, 6-in. pipe and over, by any method, inside and out; Hydro seeder and similar type; Impact wrench multi-plate; Kettle, pot and asphalt applier, lay-kold, creosote, lime caustic and similar type materials ("applying" means applying, dipping, brushing or handling of such materials for pipe wrapping and waterproofing); Operator of pneumatic, gas, electric tools; Vibrating machine; pavement breaker, air blasting, come-alongs, and similar mechanical tools not separately classified herein; Pipelayer's backup, coating, grouting, making of joints, sealing, caulking, diapering and including rubber gasket joints, pointing and any and all other services; Rock slinger; Rotary scarifier or multiple head concrete chipping scarifier; Steel headerboard and guideline setter; Tamper, Barko, Wacker and similar type; Trenching machine, hand-propelled

GROUP 4: Asphalt raker, lute person, ironer and asphalt spreader boxes (all types); Concrete core cutter (walls, floors or ceilings), grinder or sander; Concrete saw person, cutting walls or flat work, scoring old or new concrete; Cribber, shorer, lagging, sheeting and trench bracing, hand-guided lagging hammer; Head rock slinger; Laborer, asphalt-rubber distributor bootperson; Laser beam in connection with laborers' work; No-joint pipe and stripping of same; Over-size concrete vibrator operator, 70 lbs. and over; Pipelayer, including water, sewage, solid, gas or air; Porta shot-blast; Prefabricated manhole installer; Sandblaster (nozzle, water blasting); Welding in connection with laborers' work;

GROUP 5: Blaster powder, all work of loading holes, placing and blasting of all powder and explosives of whatever type, regardless of method used for such loading and placing; Driller: All power drills, excluding jackhammer, whether core, diamond, wagon, track, multiple unit, and any and all types of mechanical drills; Toxic waste removal

TUNNEL LABORER CLASSIFICATIONS

GROUP 1: Batch plant laborer; Bull gang mucker, track; Concrete crew, including rodder and spreader; Changehouse; Dump; Dump (outside); Swamper (brake and switch on tunnel work); Tunnel materials handling

GROUP 2: Cable tender; Chuck tender; Nipper; Vibrator operator, jackhammer, pneumatic tools (except driller); Loading and unloading agitator cars; Pot tender, using mastic or other materials

GROUP 3: Blaster, driller, powder; Chemical grout jet; Cherry

picker; Grout gun; Grout mixer; Grout pump; Jackleg miner; Jumbo; Kemper and other pneumatic concrete placer operator; Miner, tunnel (hand or machine); Powder (primer house); Primer; Shotcrete; Steel form raiser and setter; Timber; Retimber (wood or steel); Tunnel concrete finisher; Nozzle; Operating troweling and/or grouting machine; Sandblaster

GROUP 4: Shaft, raise miner; Diamond driller

GUNITE LABORERS CLASSIFICATIONS

GROUP 1: Nozzle and rod

GROUP 2: Gun

GROUP 3: Rebound

----------------------------------------------------------------

LABO0002T 07/01/1995

| | Rates | Fringes |
|---|---|---|
| PLASTERER TENDER: | | |
| North part of county | 17.34 | 8.38 |
| South part of county | 18.34 | 8.38 |

----------------------------------------------------------------

LABO0067D 02/01/1993

| | Rates | Fringes |
|---|---|---|
| ASBESTOS REMOVAL LABORER | 10.00 | 3.83 |

SCOPE OF WORK:
Includes site mobilization, initial site clean-up, site preparation, removal of asbestos-containing material and toxic waste (including lead abatement and any other toxic materials), encapsulation, enclosure and disposal of asbestos-containing materials and toxic waste (including lead abatement and any other toxic materials) by hand or with equipment or machinery; scaffolding, fabrication of temporary wooden barriers and assembly of decontamination stations.

----------------------------------------------------------------

PAIN0036G 01/01/1996

| | Rates | Fringes |
|---|---|---|
| DRYWALL FINISHER | 23.16 | 4.69 |

PAINTERS:
Work on service stations and car washes; small new commercial work (construction up to and including 3 stories in height, such as small shopping centers, small stores, small office buildings and small food establishments); small new industrial work (light metal buildings, small warehouses, small storage facilities and tilt-up buildings); and tenant improvement work (tenant improvement work not

| | Rates | Fringes |
|---|---|---|
| included in conjunction with the construction of the building; including repaint work) (not applicable to any phase of the aerospace industry or to hotels which operate commercial establishments as part of the hotel service) | 16.70 | 5.53 |
| All other work | 20.89 | 5.53 |

---

PAIN0636B 12/01/1995

| | Rates | Fringes |
|---|---|---|
| GLAZIER | 22.60 | 7.34 |

---

PAIN1176B 04/01/1993

| | Rates | Fringes |
|---|---|---|
| PARKING LOT STRIPING WORK AND/OR HIGHWAY MARKERS: | | |
| GROUP 1 | 19.93 | 5.67 |
| GROUP 2 | 18.93 | 5.67 |
| GROUP 3 | 16.94 | 5.67 |
| GROUP 4 | 19.93 | 5.67 |
| GROUP 5 | 16.94 | 5.67 |
| Service person (maintenance and repair of equipment) (on jobsite only) | 11.96 | 5.25 |
| Slurry seal work: | | |
| Sealer/mixer | 14.89 | 3.66 |
| Applicator operator, shuttle person and squeegee person | 13.18 | 3.66 |
| Traffic surface protective coating applicator | 15.51 | 3.66 |

PARKING LOT STRIPING AND/OR HIGHWAY MARKING CLASSIFICATIONS

GROUP 1: STRIPER: Layout and application of painted traffic stripes and marking; hot thermo plastic; tape traffic stripes and marking

GROUP 2: TRAFFIC DELINEATING DEVICE APPLICATOR: Layout and application of pavement markers, delineating signs, rumble and traffic bars, adhesives, guide markers; other traffic delineating devices; includes all related surface preparation (sandblasting, waterblasting, grinding) as part of the application process

GROUP 3: TRAFFIC SURFACE ABRASIVES BLASTER: Removal of traffic lines and markings; preparation of surface for coatings and traffic control devices

GROUP 4: TRAFFIC PROTECTIVE DELINEATING SYSTEMS INSTALLER: Removes; relocates; installs; permanently affixed roadside and parking delineating barricades, fencing, guard rail, cable anchor, retaining walls, reference signs, monument markers

GROUP 5: TRAFFIC CONTROL PERSON: Sole function is to control and direct traffic through both conventional and moving lane closures

---

PAIN1247B 08/01/1992

| | Rates | Fringes |
|---|---|---|
| SOFT FLOOR LAYER | 23.30 | 6.49 |

---

PLAS0052B 07/01/1994

| | Rates | Fringes |
|---|---|---|
| CEMENT MASONS: | | |
| Work on projects where the total permit value of the general contract and all subcontracts upon that jobsite is $7.5 million or less: | | |
| Cement mason; Curb and gutter machine; Clary and similar type of screed operator (cement only); Grinder; Jackson vibratory, Texas screed and similar type screed operator; Scoring machine operator | 18.30 | 8.25 |
| Cement mason (magnesite - epoxy) | 18.42 | 8.25 |
| Cement mason, floating and troweling machine operator | 18.55 | 8.25 |
| All other work: | | |
| Cement mason, including but not restricted to the following: cellular cement mason, chipping; patching, grinding; setting all concrete forms and perimeter forms, including catch basin structures and drain inlets, setting curb form and plank, setting of lines, stakes and grades; setting screeds, which includes screed pins; cutting scoring and sawing new concrete, plugging, filling Shee-bolt holes; dry packing concrete and EMBECO; tending material hose on slabs, floors and decks; tending mixer-truck chute on slabs, floors and decks; bush hammering; patching and sacking, rodding, tamping, bidwell and similar type rodding machines, bull floating; Curb and gutter machine operator; Clary and similar type of screed | | |

| | | |
|---|---|---|
| operator (cement only); Grinding machine (all types); Jackson Vibratory, Texas Screed and similar type screed operator; Scoring machine operator | 20.26 | 10.25 |
| Cement mason (magnesite, magnesite - terrazzo and mastic composition, epoxy, urethanes and exotic coatings, Dex-O-Tex) | 20.38 | 10.25 |
| Cement mason floating and troweling machine operator | 20.51 | 10.25 |

---

PLAS0341B 08/07/1993

| | Rates | Fringes |
|---|---|---|
| PLASTERER | 22.10 | 4.53 |

---

PLUM0016K 07/01/1995

| | Rates | Fringes |
|---|---|---|
| PLUMBER; STEAMFITTER: | | |
| Vandenberg Air Force Base | 30.56 | 7.54 |
| Remainder of County | 28.31 | 7.54 |
| LANDSCAPE & IRRIGATION WORK | 22.23 | 6.80 |

---

ROOF0036B 01/01/1994

| | Rates | Fringes |
|---|---|---|
| ROOFERS: | | |
| Roofer | 20.27 | 6.635 |
| Preparer (duties limited to the following: tear-off and/or remove any type of roofing or roofing material or spudding, or sweeping and/or clean-up, and/or preloading, or in preparing the roof for application of roofing, damp and/or waterproofing material) | 15.55 | 1.00 |

---

SFCA0669G 01/01/1995

| | Rates | Fringes |
|---|---|---|
| SPRINKLER FITTER | 24.55 | 6.28 |

---

SHEE0273A 08/01/1994

| | Rates | Fringes |
|---|---|---|
| SHEET METAL WORKER | 24.66 | 8.38 |

---

TEAM0011K 07/01/1994

| | Rates | Fringes |
|---|---|---|
| TRUCK DRIVERS: | | |

Point Arguello; Point Conception; and Vandenberg Air Force Base:

| | | |
|---|---|---|
| GROUP 1 | 20.79 | 11.54 |
| GROUP 2 | 20.94 | 11.54 |
| GROUP 3 | 21.07 | 11.54 |
| GROUP 4 | 21.12 | 11.54 |
| GROUP 5 | 21.20 | 11.54 |
| GROUP 6 | 21.32 | 11.54 |
| GROUP 7 | 21.57 | 11.54 |
| GROUP 8 | 22.02 | 11.54 |
| GROUP 9 | 22.32 | 11.54 |
| GROUP 10 | 22.82 | 11.54 |

Remainder of County:

| | | |
|---|---|---|
| GROUP 1 | 18.79 | 11.54 |
| GROUP 2 | 18.94 | 11.54 |
| GROUP 3 | 19.07 | 11.54 |
| GROUP 4 | 19.12 | 11.54 |
| GROUP 5 | 19.20 | 11.54 |
| GROUP 6 | 19.32 | 11.54 |
| GROUP 7 | 19.57 | 11.54 |
| GROUP 8 | 20.02 | 11.54 |
| GROUP 9 | 20.32 | 11.54 |
| GROUP 10 | 20.82 | 11.54 |

TRUCK DRIVER CLASSIFICATIONS

GROUP 1: Teamster

GROUP 2: Driver of vehicle or combination of vehicles of 2 axles (including all vehicles less than 6 tons); Traffic control pilot car, excluding moving heavy equipment permit load

GROUP 3: Truck-mounted power broom

GROUP 4: Driver of vehicles or combination of vehicles of 3 axles

GROUP 5: Boot person; Cement distributor; Erosion control driver; Fuel truck; Water truck, 2-axle

GROUP 6: Dump, less than 16 yds.

GROUP 7: Transit mix, under 3 yds.; Dumpcrete, less than 6-1/2 yds.

GROUP 8: Water truck, 3 or more axles

GROUP 9: PB and similar type truck when performing within the Teamsters' jurisdiction; Pipeline and utility working truck including winch, but limited to truck applicable to pipeline and utility work, where a composite crew is used; Slurry driver; Truck greaser and tire worker (50 cents per hour additional for tire)

GROUP 10: Water pull twin engine; Water pull twin engine with attachments

FOOTNOTE:
Winch truck driver - $1.25 additional when operating winch or similar special attachments.

----------------------------------------------------------------

WELDERS - Receive rate prescribed for craft performing operation to which welding is incidental.

================================================================

Unlisted classifications needed for work not included within the scope of the classifications listed may be added after award only as provided in the labor standards contract clauses (29 CFR 5.5(a)(1)(v)).

----------------------------------------------------------------

In the listing above, the "SU" designation means that rates listed under that identifier do not reflect collectively bargained wage and fringe benefit rates. Other designations indicate unions whose rates have been determined to be prevailing.

END OF GENERAL DECISION