**No. 05-269C**
**(JUDGE FIRESTONE)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**HARPER/NIELSEN DILLINGHAM BUILDERS, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**DONALD E. KINNER**
**Assistant Director**

**JEFFREY S. PEASE**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**1100 L St., N.W.**
**Attn: Classification Unit**
**8th Floor**
**Washington, D.C. 20530**
**Tel: (202) 307-1011**
**Fax: (202) 514-8624**

**Attorneys for Defendant**

**Of Counsel:**

**BRYAN O'BOYLE**
**Senior Trial Attorney**
**Air Force Legal Service Agency**
**Commercial Litigation Division**

**January 4, 2006**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HARPER/NIELSEN-DILLINGHAM BUILDERS, INC., | ) | electronically filed January 4, 2006 |
| Plaintiff, | ) | |
| v. | ) | No. 05-269C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

1. On August 27, 1996, contract number F04684-96-C-0046 (the "contract") was awarded to Harper/Nielsen-Dillingham Builders, Inc. ("Harper"), with an initial contract value of $17,724,714. A1-2. The contract required Harper to complete performance within 480 days from the date of receipt of the Notice to Proceed. A1.[1]

2. The contract consisted of demolition and removal of 143 existing housing units, including asbestos removal and designated site work, and construction of 143 housing units and associated site work for Military Family Housing Replacement - Phase III Project XUMU-96-4003. A37-38.

[1] "A__" refers to a page in the appendix attached to Defendant's dispositive motion filed concurrently.

3. Modification P00001 added Geoprobe Testing in the amount of $414,085, deleted CLINs 0001AB thru 0001AG in the amount of $229,320, added a requirement to install a 6-inch "Cock Valve & Curb Box" in the amount of $3,677, and added a requirement to "Remove & Chip 102 Trees & 5 Stumps" in the amount of $132,481. A40-43. This modification did not extend the contract completion date. Id. Harper signed the modification on March 11, 1997. A40.

4. On May 6, 1997, Harper signed a subcontract dated April 2, 1997, with Karleskint-Crum, Inc. ("KCI"). A44-47. KCI agreed to perform certain landscape and irrigation services according to the subcontract for the total contract amount of $720,500. Id.

5. The subcontract includes the following provisions:

> 7. Extension of Time of Completion: If the Subcontractor shall be obstructed or delayed in the prosecution or completion of the work by the neglect or default of the Contractor, the Designer, the Owner, or of any other Subcontractor employed by or dealing with the Contractor; or other contractors employed by the owner; or by the stopping of the work by employees of the Contractor, the Subcontractor, or any other Subcontractor of the Contractor through no fault of the Subcontractor, then the time, as fixed in Article 6 for the completion of the work, shall be extended for a period necessary to make up for lost time by reason on any or all the clauses aforesaid. No such extension, however, shall be

made unless a claim therefor is served in writing on the Contractor within thirty (30) days of the occurrence of such delay.

8. Delays:

A. In the event of any delays, entailed as a result of fault of Contractor or Owner, then Contractor shall grant Subcontractor an extension of time equal to the delay and Subcontractor shall be entitled to no other or further damages against Contractor or Owner.

B. Any delays or additional work entailed as a result of weather conditions, storms, acts of God, delays in construction, delays by governmental bodies will not entitle the Subcontractor to any extras whatsoever.

A45.

6. Effective March 2, 1998, modification P00006 extended the contract performance period from 495 days to 544 days, an increase of 49 calendar days because of "higher than normal rainfall" from November 1997 through February 1998. A49-50. This amount was calculated by comparing the statistical average number of days of rain with the actual number of days of rain. A51-52. The contract completion date was changed from March 2, 1998 to April 20, 1998. A50. Harper agreed to this modification on March 6, 1998. A49.

7. On or about April 13, 1998, Harper requested by letter that the Government "pay for the delay caused by Jacob's Eng.," without specific mention

of KCI. A59-60.

8. On September 1, 1998, supported by a letter dated June 17, 1998, from the Government architect, the Government responded that according to Harper's progress schedule, AF Form 3064, "Jacob's Engineering's delay did not impact [Harper's] landscaping work like [it] claim[ed]. Consequently, [Harper's] request for compensation is denied." A56-58. The letter also acknowledged that modification P00006 accounted for the "higher than normal rainfall" experienced from November 1997 through February 1998. A56.

9. Effective April 20, 1998, modification P00007 extended the contract performance period from 544 days to 556 days, an increase of 12 calendar days because of "higher than normal rainfall" from March 1, 1998 through April 20, 1998. A61-62. This amount was calculated by comparing the statistical average number of days of rain with the actual number of days of rain. A63-65. The contract completion date was changed from April 20, 1998 to May 2, 1998. A62. Harper agreed to this modification on April 28, 1998. A61.

10. On May 28, 1999, the Government received a letter from Harper submitting "an amendment without consideration to the . . . contract pursuant to FAR 50.302.1" on behalf of KCI. A67. The letter stated: "it is possible that [KCI] has presented facts that would merit an adjustment to the contract which would

enable us to increase KCI's subcontract amount. However, we have conducted no independent investigation and are unable to submit the certification requested by FARs 50.202-2 and 52-233-1." Id.

11. On June 15, 1999, the Government responded by returning Harper's letter, and stating: "We do not have privity of contract with your subcontractors, therefore any claim on their behalf must be submitted and certified by you." A66.

12. On October 13, 1999, accompanying its invoice for final payment, Harper attempted to reserve KCI's claim by stating that: "Our landscape subcontractor, [KCI], has submitted a claim for equitable adjustment in the amount of $720,500.00. This claim is currently in litigation." A71.

13. On or about December 17, 1999, Harper and KCI signed a "Settlement Agreement and Mutual Release" to settle a Miller Act lawsuit in the United States District Court for the Central District of California. A72-73.

14. The settlement agreement included the following statement:

> It is understood and agreed by the Parties that HND's Payment of $84,360.59 settles all claims KCI has on the Project, except a claim for equitable adjustment for which HND shall have no liability except to cooperate in submittal as set forth in the letter agreement between the parties dated December 18, 1999, a copy of which is attached hereto.

A72.

15. Two documents entitled "Conditional Waiver and Release Upon Final Payment (Miller Act)" were attached to the settlement agreement, both of which included the following statement:

> This release covers the final payment to the undersigned for all labor, services, equipment or materials furnished to the job, except for a request for equitable adjustment to be presented to the U.S. Air Force for which HND has no responsibility except to furnish documents and reasonably cooperate with the undersigned in processing its request as set forth in the letter agreement between HND and the undersigned dated December 17, 1999.

A74-75.

16. The "letter agreement" attached to the settlement agreement was, in fact, dated December 17, 1999, signed on that date by Harper, and signed on December 20, 1999 by KCI. A76-77. This "letter agreement" indicates that Harper simply would not oppose a Freedom of Information Act request, would certify a KCI request for equitable adjustment "if it can concur in the basis therefore," and would be responsible for providing documents to KCI, but that KCI would reimburse Harper for any extraordinary costs of duplication. Id.

17. On August 5, 2003, the Government received Harper's claim on behalf of KCI, including Harper's certification in accordance with 41 U.S.C. § 605(c). A80-85.

Wage Classification Claims

18. The contract was subject to the Davis-Bacon Act ("DBA") and all implementing regulations. See, e.g., contract clauses I-250 through I-259. A3. Specifically, contract clause I-250 incorporated by reference Federal Acquisition Regulation ("FAR") 52.222-6 (FEB 1995), entitled "DAVIS BACON ACT," requiring Harper to pay all laborers employed or working upon the site at wage rates not less than the rates stated in the wage determinations issued by the Department of Labor ("DOL") that were attached to the contract. See A3. The contract also required Harper to ensure compliance by all subcontractors with the DBA. See contract clause I-255, incorporating by reference FAR 52.222-11 (Feb. 1988), entitled "SUBCONTRACTS (LABOR STANDARDS)."

19. Contract clause I-258 incorporated by reference FAR 52.222-14 (Feb. 1988), entitled "DISPUTES CONCERNING LABOR STANDARDS." A3. FAR 52.222-14 (Feb. 1988) states the following:

> The United States Department of Labor has set forth in 29 CFR Parts 5, 6, and 7 procedures for resolving disputes concerning labor standards and requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause includes disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their

representatives.

48 C.F.R. § 52.222-14.

20. The contract includes two wage determinations. A4-21, A22-36. Attachment 1 to the contract included wage determination general decision number CA960039 dated June 7, 1996, issued by the DOL, which established the minimum required wage rates for heavy construction laborers employed or working upon the project site at Vandenberg Air Force Base, CA. A4-21.

21. Wage determination CA960039 does not include a classification for "Landscape Maintenance Laborer" with a base rate of pay of $7.00, and does not include a classification of "Landscape Laborer" with a base rate of pay of $13.40 plus $8.61 in fringe benefits. Id.

22. Wage determination CA960039 does include a classification for "landscape & irrigation work" (Item # CA0039-927) with a base wage rate of $22.23 plus $6.80 for fringe benefits. A19.

23. Attachment 2 to the contract included wage determination general decision number CA960047 dated June 7, 1996, issued by the DOL, which established the minimum required wage rates for residential construction laborers employed or working upon the project site. A22-36.

24. Wage determination CA960047 does not include a classification for "Landscape Maintenance Laborer" with a base rate of pay of $7.00, and does not include a classification of "Landscape Laborer" with a base rate of pay of $13.40 plus $8.61 in fringe benefits. Id.

25. Wage determination CA960047 does include a classification for "landscape & irrigation work" (Item # CA047-753) with a base wage rate of $22.23 plus $8.60 for fringe benefits, A34, as well as "landscape laborer, clean-up, fencing (chain link and wood)" (Item # CA047-470) with a base wage rate of $13.14 plus $8.61 in fringe benefits. A29.

26. On or about April 17, 1997, Harper submitted a Standard Form 1444 on behalf of Michael's Custom Tile Works, one of its subcontractors, requesting a proposed labor classification or conformance for tile setters and tile finishers that was not included within the wage determinations. A86. The contracting officer recommended approval of this proposed conformance and classification, and forwarded the wage classification or conformance request to the DOL on or about April 24, 1997. A87-88.

27. On or about July 10, 1997, Harper resubmitted a Standard Form 1444 at the request of the DOL for the same proposed classification or conformance of tile setters and tile finishers, but with different proposed wage and benefits. A89.

The contracting officer recommended approval of this proposed conformance and classification, and submitted the request to DOL on or about July 16, 1997. Id.

28. By letter dated August 14, 1997, the Employment Standards Administration, Wage & Hours Division, DOL, approved the "conformed classifications and wage rates" for the tile setters and tile finishers. A90. These were the only wage classification or conformance requests submitted to the contracting officer by Harper under the contract. A91.

29. On September 30, 1997, the contracting officer identified certain KCI payrolls dated August 1997 through September 1997 that were not in compliance with wage determinations in the contract. A92-93. The contracting officer's letter to Harper warned that KCI was not paying landscape/irrigation workers at the required hourly wage rate of $22.23 plus $6.80 in fringe benefits, and was actually paying landscape/irrigation workers as low as $8.62 per hour. Id. The contracting officer required Harper to submit, by October 7, 1997, corrected payrolls and evidence that the certain identified KCI workers were paid in accordance with the required wage rates. Id.

30. By letter dated October 7, 1997, Harper replied to the contracting officer asserting that KCI had paid landscape workers at a labor classification for "Tradesman" that was purportedly used by KCI and recognized for KCI's work on

earlier construction phases 1 and 2. A94. Harper stated the following:

> So in response to your letter, I see no discrepancy in the wages being paid, as the Union has predetermined them. I do think that an "Additional Wage Classification" form should have been submitted, but as we know, that is a lengthy process and we are already into the Landscape scope of work.

Id.

31. On October 30, 1997, the contracting officer responded that the Government disagreed with Harper's response because the classification "Tradesman" was not listed in the wage determinations. A95. Further, "a request for additional wage classification is not warranted as the GWD [general wage determination] already has a classification for 'landscape & irrigation work' (Item # CA047-753 in your GWD) as well as landscape laborer (Item # CA047-472) and these are the classification/rates you must use." Id. The contracting officer requested corrected payrolls and evidence of correct payments to laborers by November 10, 1997. Id.

32. A letter dated November 10, 1997, from KCI to Harper reflects that KCI took the contracting officer's direction "seriously and ha[d] taken steps to mitigate the situation." A96. KCI also stated to Harper that "we have enlisted the support of our Union (Local 345 of United Brotherhood of Pipefitters) to work

with us on the correct wage rate conflict with the labor board and get the tradesman classification reinstated. Id. We hope to have most of this work completed on 11/12/97." Id.

33. By letter dated January 12, 1998 from Harper to KCI , Harper indicated that it was still waiting for supplemental checks to confirm KCI's conformance with the contract's wage determinations and the directions given by the contracting officer in the letter dated October 31, 1997. A101-02. Harper also stated that KCI had "admitted that [its] efforts to persuade the Department of Labor were not working." A101; see also A99-100. Harper directed KCI to comply with the relevant DBA clauses incorporated by KCI's subcontract agreement. A101. Harper stated that it would not pay KCI until corrected payrolls were received from KCI, and "we are given a green light from the United States government's representative that this issue has been resolved to their satisfaction." A102.

34. Harper's claim to the contracting officer dated August 1, 2003, alleged the following:

> Government's unilateral decision, long after KCI's contract was awarded and work had commenced, to require KCI to reclassify KCI's "Tradesman" workers as "Landscape Laborer" imposed a defective specification by the Government and caused significant additional

> expense for KCI. KCI's Subcontract's work description included work that should be performed by a worker classified as a "Tradesman." Further, KCI had in fact used the "Tradesman" classification for the very same work in Phase II.

A80-81. The claim to the contracting officer admitted that "KCI based its bid wage rate for Phase III on the presumption the same classification as used on Phase II would be based on Phase III because no question or issue was raised during the entirety of Phase II regarding the classification or rate." A82. The claim requests "an additional $24,208 in increased wages due to unreasonable reclassification of 'tradesman' by the Government." A83. Specifically, the claim contends that "KCI has had to pay its maintenance tradesman at the $22.01 per hour wage rate ($13.40 + $8.61 fringe benefits), an increase of $10.34 per hour." Id.

35. The contracting officer denied Harper's claim by decision dated March 4, 2004. Compl. at Exhibit 2.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Jeffrey S. Pease
JEFFREY S. PEASE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-1011
Fax: (202) 514-8624

Of Counsel:

BRYAN O'BOYLE
Senior Trial Attorney
Air Force Legal Service Agency
Commercial Litigation Division

Attorneys for Defendant

January 4, 2006

CERTIFICATE OF FILING

I hereby certify that on this 4th day of January, 2006, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Jeffrey S. Pease