**No. 05-269C**
**(JUDGE FIRESTONE)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**HARPER/NIELSEN DILLINGHAM BUILDERS, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFF'S BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**RICHARD W. MILLER**
**MICHAEL T. METCALF**
**Miller Law Firm, P.C.**
**4310 Madison Avenue**
**Kansas City, Missouri 64111**
**Tel: (816) 531-0755**
**Fax: (816) 561-6361**

**February 22, 2006**

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

TABLE OF CONTENTS ....... i

TABLE OF AUTHORITIES ....... iii

STATEMENT OF ISSUES ....... 1

STATEMENT OF THE CASE ....... 1

ARGUMENT ....... 2

I. STANDARD OF REVIEW ....... 2

II. THIS COURT HAS JURISDICTION OVER HARPER'S CLAIM REGARDING WAGE DETERMINATIONS BECAUSE HARPER IS ASSERTING AN ENTITLEMENT TO AN EQUITABLE ADJUSTMENT UNDER THE PRICE ADJUSTMENT CLAUSE AND THE CHANGES CLAUSE OF THE CONTRACT AND IS NOT MERELY CHALLENGING THE DEPARTMENT OF LABOR'S CLASSIFICATIONS OR THE WAGE RATE IT HAD TO PAY ITS EMPLOYEES. ....... 2

III. THE GOVERNMENT'S ARGUMENTS BASED ON THE *SEVERIN* DOCTRINE FAIL BECAUSE HARPER WAS NOT EXONERATED FROM LIABILITY FOR KCI'S DELAY CLAIM AND HARPER WAS REQUIRED TO SPONSOR A PASS-THROUGH CLAIM ON BEHALF OF KCI AND WAS NEVER FULLY OR UNCONDITIONALLY RELEASED BY KCI. ....... 6

A. Applicable Federal Law. ....... 6

B. The Government Cannot Establish That Harper Was Exonerated By The Purported "No Damage For Delay Clause." .................................. 9

C. The "Settlement Agreement" Does Not Release Harper From Liability.......................................................................................... 12

IV. THE DELAY CLAIMS ARE NOT BARRED BY ACCORD AND SATISFACTION. ....................................................................................... 14

CONCLUSION.............................................................................................................. 17

CERTIFICATE OF FILING.......................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Aleman Food Services v. United States*, 25 Cl. Ct. 201, 208 (1992). .......... 3

*Burnside-Ott Aviation Training Center, Inc. v. United States*, 985 F.2d 1574 (Fed. Cir. 1993) .......... 3, 4

*C & H Commercial Contractors, Inc. v. U.S.*, 35 Fed. Cl. 246, 250 .......... 2, 7

*Consolidated Eng'g Co. v. U.S.*, 98 Ct. Cl. 256 (1943) .......... 6

*D.A. Parrish & Sons v. County Sanitation District No. 4*, 174 Cal.App.2d 406, 414 (1959)....... 10

*Emerald Maintenance, Inc. v. United States*, 925 F.2d 1425 (Fed. Cir. 1991).......... 3

*Frank Coluccio Constr. Co. v. City of Springfield*, 779 S.W.2d 550, 551-552 (Mo. 1989) (en banc).......... 7

*George Leary Constr. Co. v. U.S.*, 63 Ct. Cl. 206 (1927).......... 6

*Hawley v. Orange County Flood Control*, 211 Cal.App.2d 708,713 (1963).......... 10, 11

*J. L. Simmons Co. v. United States*, 304 F.2d 886, 889, 158 Ct.Cl. 393, 398 (1962).......... 8

*Jackson Constr. Co. v. U.S.*, 62 Fed. Cl. 84, 92 (2004) .......... 14, 15, 17

*Mitsui & Co. v. Puerto Rico Water Resources*, 528 F. Supp. 768 (D. P.R. 1981) .......... 8

*Morrison-Knudson Co. v. U.S.*, 1397 F.2d 825 (Ct. Cl. 1968) .......... 9

*Perry-McCall Constr. Inc. v. U.S.*, 46 Fed.Cl. 664, 671 (2000) .......... 7

*Seger v. U.S.*, 469 F.2d 292 (Ct. Cl. 1972) .......... 8

*Stout, Hall & Bangs v. U.S.*, 27 Ct. Cl. 385 (1892) .......... 6

*United Int'l Investigative Services v. United States*, 26 Cl.Ct. 892, 897 (1992) .......... 2

*United States v. Blair*, 321 U.S. 730 (1944) .......... 6, 7

*United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1552 & n. 8 (Fed. Cir. 1983).......... 8

*Westerhold v. U.S.*, 28 Fed. Cl. 172, 174-175 (1993).......... 14, 17

## Statutes

Cal. Pub. Contract Code § 7102 (2006) .......................................................................... 14

## Other Authorities

Carl A. Calvert & Carl F. Ingwalson, Jr., *Pass Through Claims and Liquidating Agreements*, 18 Constr. L. 29 (Oct. 1998) ......................................................................... 15

Plaintiff Harper/Nielsen Dillingham Builders, Inc. ("Harper") respectfully submits this Opposition to the Motion to Dismiss or in the Alternative Motion for Partial Summary Judgment filed by Defendant the United States (the "Government"). Harper requests that the Motion be denied for the reasons set forth herein.

## **STATEMENT OF ISSUES**

The Statement of Issues presented by the Government in its brief is acceptable to Harper.

## **STATEMENT OF THE CASE**

The Statement of the Case presented by the Government and the summary of facts that appears therein are acceptable with a few exceptions. Harper specifically takes issue with the Government's Statement of Fact on page 4 of its Brief that "the Subcontract included provisions limiting the liability of Harper in the event of certain delays" since that statement is conclusory in nature. Harper does not agree they were enforceable or that they did in fact constitute a limitation of liability. In addition, Harper specifically disputes the Statement of Fact on page 6 that "Harper belatedly attempted to reserve KCI's claim" because it is Harper's position that it properly preserved KCI's claim and it complied with all of the requirements in the contract documents necessary to do so. The Government's statement improperly suggests that there is some issue about that. Otherwise, Harper does not take issue with the Statement of Facts, but notes that it has presented additional facts in its Response to Defendant's Proposed Findings of Uncontroverted Facts; its Brief Opposing the Motion; and its Appendix.

## ARGUMENT

### I. STANDARD OF REVIEW

"In a motion to dismiss for lack of jurisdiction, the facts alleged in the complaint are considered to be correct." *United Int'l Investigative Services v. United States*, 26 Cl.Ct. 892, 897 (1992). "If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." *Id.* (quoting *W.R. Cooper Gen. Contractor, Inc., V. United States*, 843 F.2d 1362, 1364 (Fed. Cir. 1988)).

In a motion for summary judgment, "the moving party initially bears the burden of demonstrating the absence of any genuine issue of material fact." *C & H Commercial Contractors, Inc. v. U.S.*, 35 Fed. Cl. 246, 250. In considering motions for summary judgment, the court views evidence and draws inferences in a light most favorable to the non-moving party. *Id.* (citing *Litton Indus. Products, Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163 (Fed.Cir. 1985)). Here, the evidence must be viewed in the light most favorable to Harper.

### II. THIS COURT HAS JURISDICTION OVER HARPER'S CLAIM REGARDING WAGE DETERMINATIONS BECAUSE HARPER IS ASSERTING AN ENTITLEMENT TO AN EQUITABLE ADJUSTMENT UNDER THE PRICE ADJUSTMENT CLAUSE AND THE CHANGES CLAUSE OF THE CONTRACT AND IS NOT MERELY CHALLENGING THE DEPARTMENT OF LABOR'S CLASSIFICATIONS OR THE WAGE RATE IT HAD TO PAY ITS EMPLOYEES.

The Government misconstrues the nature of Harper's claim in order to make its argument that this Court lacks jurisdiction. Harper is entitled to an equitable adjustment under the Price Adjustment Clause and the Changes Clause of the Contract because Harper is requesting that this Court determine the effect that the DOL's classification had on Harper's contract rights. The

Labor Standard provisions form only <u>part</u> of the factual predicate of the claim; as a result, the Government's argument fails because this Court "has jurisdiction where resolution of dispute requires examination of contract provisions and the DOL's determinations form only part of the factual predicate." *Aleman Food Services v. United States*, 25 Cl. Ct. 201, 208 (1992).

This dispute is factually similar to *Burnside-Ott Aviation Training Center, Inc. v. United States*, 985 F.2d 1574 (Fed. Cir. 1993). In *Burnside-Ott*, a Navy contractor sought an equitable adjustment when it was required to pay additional compensation as a result of having to reclassify technician employees to a higher classification. *Id*. Similar to the instant dispute, the contractor had previously paid its employees under a Navy contract as "technicians." When the contractor entered into a subsequent contract with the Navy, the contractor's employees filed a complaint with the DOL challenging their classification as "technicians." *Id*. at 1576. Unbeknownst to the contractor, the wage determination of "technician" was no longer valid.

After complying with the new wage determination, the contractor submitted a claim for an equitable adjustment seeking reimbursement for its increased costs. *Id*. The Contracting Officer denied the claim and the Claims Court dismissed three counts of the suit for lack of subject matter jurisdiction. *Id*. at 1578. In doing so, the Claims Court relied upon *Emerald Maintenance, Inc. v. United States*, 925 F.2d 1425 (Fed. Cir. 1991). The Government has cited that same case here. However, in *Burnside-Ott*, the Federal Circuit distinguished *Emerald Maintenance* and reversed the Claims Court's dismissal for lack of subject matter jurisdiction. The Federal Circuit held that unlike the contractor in the case before it, the contractor in *Emerald Maintenance* was actually challenging the wage rate that it was required to pay its employees. *Burnside-Ott*, 985 F.2d at 1580. The contractor in *Burnside-Ott*, however, (like Harper and KCI here) had accepted the wage determination and was merely seeking compensation for the additional wages it was required to pay. *Id*. Accordingly, the contractor could maintain its suit.

Despite the Government's characterization of Harper's claim, Harper is not challenging the DOL's classification of the affected employees or the wage rate that Harper's subcontractor KCI was required to pay its employees. Instead, Harper accepted that rate and is now requesting that this Court determine the effect of the DOL's classification on Harper's and in turn KCI's contract rights under the Price Adjustment and Changes clause. Indeed, the request for equitable adjustment submitted to the Contracting Officer stated that it was based on defective specifications and change in the terms of the contract. Defendant's Appendix, A81. Furthermore, the decision of the Contracting Officer dated March 4, 2004, notes that Harper's claim was based on "a change in the terms of the contract." Plaintiff's Appendix, PA33-PA37.

The Government may attempt to distinguish *Burnside-Ott* on the basis that the contractor in that case also challenged the wage determination with the DOL. That distinction, however, does not save the Government's argument. Harper now seeks on behalf of KCI an equitable adjustment based on the increased costs incurred as a result of accepting the changed wage determination. As such, this case fits under the *Burnside-Ott* rationale. The fact that both the *Burnside-Ott* contractor and KCI accepted the higher wage determination and paid their employees accordingly is controlling, and Harper is not precluded from now seeking in this Court an Equitable Adjustment under the Price Adjustment Clause and the Changes Clause. Contrary to the Government's suggestion, the mere fact that a wage determination is involved does not mean that Harper's claim arose "exclusively" out of the Labor Standards provision of the Contract. 985 F.2d at 1580. Instead, like *Burnside-Ott*, the Labor Standard provisions form only part of the factual predicate of Harper's claim. As such, this Court has jurisdiction over the claim, and the Government's Motion to Dismiss should be denied

Furthermore, Harper did challenge the requirement to pay its tradesmen under the classifications of "landscape and irrigation work" and "landscape laborer." In fact, Harper wrote

to the Air Force on October 7, 1997 concerning the issue, noting that the "tradesman" classification was a union classification and was recognized on Phases I and II of the Vandenberg Housing project, which KCI also worked on. Defendant's Appendix, A94. The Air Force responded that "a request for additional wage classification is not warranted as the GWD [general wage determination] already has a classification for 'landscape & irrigation work' (Item # CA047-753 in your GWD) as well as landscape laborer (Item #, CA047-472) and these are the classifications/rates you must use." See Defendant's Proposed Findings of Uncontroverted Fact ("PFUF") ¶31; Defendant's Appendix, A95. The letter from the Air Force also noted that "this has been coordinated with and concurred by our Air Force Regional Labor Advisor . . ." Defendant's Appendix, A95.

KCI even submitted to Harper a request on Standard Form 1444 (copy attached as Ex. A), and Harper in turn submitted it to the Contracting Officer as required by the procedures outlined in the contract. Plaintiff's Appendix, PA27-PA32. The Air Force either failed to submit it to the DOL or rejected it again as KCI never received any formal written determination, acceptance or denial of the request. Harper later wrote in a letter dated January 12, 1998, that it had "written several letters to the Government representative requesting that an additional wage rate be allowed . . ." and concluded that "<u>all attempts in requesting a new wage classification were denied. The reason for the denial was that in the general wage decision a wage classification already exists for landscape labor</u>." Defendant's Appendix, A101. Harper and KCI clearly exhausted their attempts and did what was required, but it was very clear further attempts to pursue the issue were futile. Therefore, they accepted the rate and KCI paid its workers accordingly.

In the alternative, should this Court find the Government's argument persuasive or find that Harper's argument is not supported by the pleadings, then Harper respectfully requests leave

to amend its Complaint to assert that the claim is based on the price adjustment and changes clause, and that the Government is now estopped from arguing that Harper was required to appeal the determination to the DOL or is liable for failing to pursue the request for additional classification after it was submitted. Clearly, Harper (and KCI) relied upon the Government's representations that any further appeal or attempts to change the wage determination would be futile. A party may amend its pleadings by leave of the Court and such leave shall be freely given when justice so requires. RCFC Rule 15(a).

## III. THE GOVERNMENT'S ARGUMENTS BASED ON THE *SEVERIN* DOCTRINE FAIL BECAUSE HARPER WAS NOT EXONERATED FROM LIABILITY FOR KCI'S DELAY CLAIM AND HARPER WAS REQUIRED TO SPONSOR A PASS-THROUGH CLAIM ON BEHALF OF KCI AND WAS NEVER FULLY OR UNCONDITIONALLY RELEASED BY KCI.

The Government's argument that Harper is precluded under the *Severin* Doctrine from sponsoring KCI's delay claims fails because the Government cannot carry its burden of proof and Harper was never exonerated or released.

### A. Applicable Federal Law.

Federal courts have long held that a contractor may pursue a claim against the government for additional costs incurred by a subcontractor as a result of the government's breach of the prime contract. *Stout, Hall & Bangs v. U.S.,* 27 Ct. Cl. 385 (1892); *Consolidated Eng'g Co. v. U.S.*, 98 Ct. Cl. 256 (1943) (government liable to prime as subcontractor's representative for costs to correct mistake because sub relied on incorrect specifications); *George Leary Constr. Co. v. U.S.,* 63 Ct. Cl. 206 (1927) (prime entitled to costs owed to sub despite government contention that prime did not demonstrate it had paid sub cost claims). A leading decision is the Supreme Court's case of *United States v. Blair*. 321 U.S. 730 (1944). In *Blair*,

the Court held that a contractor could recover for the extra expense resulting from the government's improper directives even though a subcontractor performed the work. *Id*. at 737-738. Although the subcontractor could not pursue its own claim directly because it was not in privity with the government, the Supreme Court noted that:

> [I]t does not follow that [the contractor] is barred from suing for [the extra costs incurred by the subcontractor]. Respondent [the contractor] was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price for the tile, terrazzo, marble and soapstone work whether that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of respondent under the contract, regardless of whether such costs were incurred or such services were performed personally or through a subcontractor. Respondent's contract with the Government is thus sufficient to sustain an action for extra costs wrongfully demanded under that contract. *Id*.

In *Severin v. United States*, 99 Ct. Cl. 435 (1943), *cert. denied*, 322 U.S. 733 (1944), the Federal Court of Claims adopted a view holding that a contractor could not recover for impact to subcontracted work if the contractor had unconditionally released the subcontractor from liability. "The *Severin* Doctrine precludes a prime contractor from bringing a pass-through suit for a subcontractor where the prime contractor is not liable to the subcontractor." *Perry-McCall Constr. Inc. v. U.S.*, 46 Fed.Cl. 664, 671 (2000). But a prime contractor may recover from the government for damages incurred by its subcontractor if the prime has itself suffered damage. *C&H Commercial Contractors, Inc. v. U.S.*, 35 Fed.Cl. 246, 257 (1996). However, "in this context, damages are not limited to payments actually made to subcontractors but can include potential liability." *Id*. (emphasis added). Although these claims are premised on the liability of the contractor to the subcontractor, that liability need not be reduced to a judgment, confessed or even plead by the contractor. *See Frank Coluccio Constr. Co. v. City of Springfield*, 779 S.W.2d 550, 551-552 (Mo. 1989) (en banc) (noting that a contractor's confession of absolute liability is not necessary to pursue a claim).

In his dissent in *Severin*, Chief Justice Whaley noted that "[f]or fifty years it has been the settled doctrine of this court that a contractor could bring suit for himself and his subcontractor for losses occasioned by delay by the defendant before payment was made to the subcontractor." 99 Ct. Cl. at 440 (Whaley, C.J., dissenting) He also noted pragmatic and equitable justifications for allowing contractors to recover damages for breaches of contract that impacted subcontracted work, such as the fact that general contractors often subcontract substantial amounts of work. *Id.* To preclude contractors from recovering damages for subcontracted work would be "a travesty of justice." *Id.*

Heeding these concerns, Federal courts have applied the *Severin D*octrine very narrowly. *E.R. Mitchell*, 175 F.3d at 1370 (Fed. Cir. 1999) (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1552 & n. 8 (Fed. Cir. 1983)). Where an agreement provides that a prime contractor's liability is conditioned on the prime contractor obtaining recovery from the government, the prime contractor may recover for the subcontracted work. *J. L. Simmons Co. v. United States*, 304 F.2d 886, 889, 158 Ct. Cl. 393, 398 (1962); *Donovan Constr. Co.*, 149 F. Supp. at 900. Even if a release by the subcontractor is deemed to be an unconditional and complete release, the release will not prevent the contractor from pursuing the claim where the contractor has waived the release. *Mitsui & Co. v. Puerto Rico Water Resources*, 528 F. Supp. 768 (D. P.R. 1981). Furthermore, the *Severin D*octrine has been held not to apply in situations like the present case where the claims are for an equitable adjustment under the claims or changes provisions of the contract. *Seger v. U.S.*, 469 F.2d 292 (Ct. Cl. 1972). As the court in *Seger* stated:

> Where the provisions of the prime contract provide a mechanism that in a proper case can mitigate injury to the subcontractor, and such provisions are incorporated by reference in the subcontract, abstract legal doctrines of privity and exculpatory clauses in the subcontract do not control. 459 F.2d at 300. *See also Blount*, 348 F.2d at 471.

In addition, the Federal courts have viewed application of *Severin* as an affirmative defense and held that the government has the burden of proof on this issue. *E.R. Mitchell,* 175 F.3d at 1370; *Blount Bros. Constr. Co.,* 171 Ct. Cl. 478, 346 F.2d at 964-65; *Morrison-Knudson Co. v. U.S.,* 1397 F.2d 825 (Ct. Cl. 1968). It is well accepted that "the government bears the burden of establishing that the prime contractor has been completely exonerated against claims brought by the subcontractor." *Id*. (emphasis added). In fact, the Court of Claims has held that to meet its burden of proof under *Severin*, the government must produce "an iron-bound release or contract provision immunizing the prime contractor completely from any liability to the sub…" *E.R. Mitchell Constr. Co. v. Danzig*, 175 F.3d 1369, 1371 (Fed. Cir. 1999). Indeed, the *Danzig* court confirmed that "application of the *Severin* doctrine has been narrowly construed." *Id*. Thus, under Federal law, conditional releases or liquidating agreements that require the contractor to pay to the subcontractor only such sums as the contractor is able to recover from the government do not preclude the contractor from recovering for claims for subcontracted work.

Here, the Government has failed to make the strict case required to apply the *Severin* doctrine to preclude Harper's claim. The Government has advanced two arguments in an attempt to establish that Harper is completely exonerated against claims brought by KCI for its alleged injuries. Neither argument is meritorious.

### B. The Government Cannot Establish That Harper Was Exonerated By The Purported "No Damage For Delay Clause."

The Government first relies on certain language in the subcontract between Harper and KCI that states:

> A. In the event of any delays, entailed as a result of fault of [Harper] or [the United States], then [Harper] shall grant [KCI] an extension of time equal to the delay

> and [KCI] shall be entitled to no other or further damages against [Harper] or [the United States].
>
> B. Any delays or additional work entailed as a result of weather conditions, storms, acts of God, delays in construction, delays by governmental bodies will not entitle [KCI] to any extras whatsoever.

PFUF, A45. However, the Government cites no authority for its assertion that these contractual provisions, commonly referred to as a "no damage for delay" clause, exonerate or completely immunized HND from all liability for KCI's claims. Rather, the Government simply assumes that Harper asserted these provisions as a defense to KCI's claim and assumes that the provisions were enforceable and completely exonerated Harper from liability. Given its burden, the Government cannot rely on such assumptions or speculation.

Harper was <u>not</u> completely exonerated by the "no damage for delay" clause. The subcontract specifically states that it is governed by California law. Defendant's Appendix, A46. Under California law, "if an agreement can be reasonably interpreted so as to avoid a forfeiture, it is the duty of the court to avoid it." *Hawley v. Orange County Flood Control*, 211 Cal.App.2d 708,713 (1963). Moreover, California disfavors "no damage for delay" clauses. *D.A. Parrish & Sons v. County Sanitation District No. 4*, 174 Cal.App.2d 406, 414 (1959). *See also, e.g.*, *Hawley*, 211 Cal.App.2d at 713 (1963) (stating that "a clause which in ultimate result has the effect of imposing a forfeiture will be strictly construed, especially where the contract, as here, was prepared by the one seeking to impose the forfeiture.") In *Hawley*, the defendant, like the Government in the instant dispute, contended that the delay clause language was so unequivocal that the contractor must be deemed to have assumed the risk of prevention or hindrance by the contractee-owner. *Id*. at 714. The *Hawley* contract language, similar to the provision at issue here, provided that:

> Furthermore, if the contractor suffers any delay caused by the failure of the District to furnish the necessary right-of-way or materials agreed to be furnished

> by it, or by failure to supply necessary plans or instructions concerning the work to be done after written request therefore has been made, the contractor shall be entitled to an extension of time equivalent to the time lost for any of the above-mentioned reasons, but shall not be entitled to any damages for such delay.

*Id*. at 712. Notwithstanding this plain and obvious language, the Court in *Hawley* reversed the lower court's grant of nonsuit. The court summarized several cases from California and other jurisdictions which permitted recovery notwithstanding the plain language of the contract. In these cases, the respective courts considered whether the actual delay was within the contemplation of the parties, whether the defendant was liable for the breach, whether the delay was unreasonable, or if the defendant actively interfered with the contractor. In these cases, the courts went to great lengths to avoid application of the "no damage for delay" clause. Relying on these cases, the *Hawley* court ultimately held that "the question of whether or not the delay damage clause was intended by the parties to prevent recovery under the peculiar circumstances here involved resolves itself into a factual question requiring the weighing of all the facts presented." *Id*. at 715. Clearly, whether the "no damage for delay" clause in the present case could serve to bar KCI's claims requires a factual inquiry and decision well outside the bounds of this summary judgment motion. As such, the Government cannot contend, as a matter of law, that the "no damage for delay" clause completely immunized Harper from liability, and cannot meet its burden to invoke the *Severin* Doctrine.

Furthermore, the California legislature has specifically provided that "no damage for delay" clauses in <u>public</u> contracts or subcontracts are not enforceable. California *Public Contract Code* § 7102 states that "contract provisions <u>in construction contracts of public agencies and thereunder</u> which limit the contractee's liability to an extension of time for delay for which the contractee is responsible and which delay is unreasonable under the circumstances involved, and not within the contemplation of the parties, <u>shall not be construed to preclude the</u>

recovery of damages by the contractor or subcontractor." Cal. Pub. Contract Code § 7102 (2006). Section 7102 applies to the Harper/KCI Subcontract since it arises out of a public project, and it acts to render the "no damage for delay" clause unenforceable.

Finally, the Government's argument assumes that Harper took the position that KCI's claims were barred by the "no damage for delay" clause and attempted to enforce it against KCI. That is incorrect, as noted in the Affidavits of Jeffrey Harper and Curt Boutwell. Plaintiff's Appendix, PA1-PA4; PA27-PA29. In fact, Harper never took that position with KCI or claimed it was not liable for the delay damages because of those provisions in the Subcontract. It is not enough for the Government to speculate about Harper's liability to KCI. The Government has no standing and never had standing to assert the "no damage for delay" clause as a defense on behalf of Harper. In fact, to avoid liability Harper entered into the liquidating arrangement whereby it agreed to pass the claim on to the Government and pay any recovery to KCI. Harper did not seek to avoid it based on the "no damage for delay" clause.

The "no damage for delay" clause in the Subcontract does not, as a matter of law, completely immunize Harper from liability to KCI. At the very least, the Government has failed to meet its burden of proof to show that it did. As a result, the *Severin* doctrine does not apply, and the Government's motion to dismiss should be denied.

**C. The "Settlement Agreement" Does Not Release Harper From Liability.**

The Government's second argument is based on an agreement between KCI and Harper that the Government contends released Harper from all liability to KCI. The Government's reliance on that agreement is also misplaced. As discussed above, in order to invoke the *Severin* doctrine the Government must produce an iron-bound release which absolves Harper of all liability. *Danzig*, 175 F.3d at 1371. Here, the agreement at issue specifically states that the parties were settling KCI's claims "except a claim for equitable adjustment . . ." and that Harper

was liable to cooperate in submitting it as set forth in the letter agreement … PFUF 14, Defendant's Appendix, A72 (emphasis added). By its very definition, the word "except" means that Harper retained some liability to KCI. Furthermore, the attached letter agreement states that "it is the goal of the parties to settle their differences and allow Karleskint-Crum, Inc. (KCI) to pursue a Request for Equitable Adjustment against the Air Force …" Plaintiff's response to PFUF 16; Defendant's Appendix, A76. At a minimum, these agreements indicate that Harper did not enter into a complete release, but rather it was a release conditioned on the sponsorship of the pass-through claim and obligations to pay any recovery to KCI. Harper was potentially liable for KCI's delay damages, and in an effort to minimize this potential liability, Harper entered into a valid liquidating agreement to sponsor KCI's delay claims.[1] Plaintiff's Appendix, PA1-PA4; PA14-PA29.

At the conclusion of KCI's work, and following a Miller Act claim that KCI filed to free up money that Harper was holding, Harper and KCI entered into negotiations that resulted in the agreements referenced herein and that are relied upon by the Government in making its argument. KCI and Harper agreed to resolve their differences and to fix and liquidate Harper's liability and exposure by agreeing that Harper would sponsor, certify and pass on the claim and cooperate in that regard. *Id.* They also clearly agreed (and it was understood at all times) that Harper's liability would be limited to the extent of any funds recovered from the Government as a result of the request for equitable adjustment. *Id.* It was always the intention of Harper and KCI, and still is the intention of those parties, that Harper would be obligated to pay to KCI any

[1] A "liquidating agreement" is a form of a settlement agreement in which a dispute between two parties with contractual privity is liquidated (settled) on terms delineating the rights, responsibilities, and procedures for representing a pass-through claim to a third party and allocating the costs expended and benefits received when doing so. It is an attempt by the parties to avoid an extra layer of litigation (i.e., litigation between themselves) with its attendant costs and risks by focusing on the party responsible. Carl A. Calvert & Carl F. Ingwalson, Jr., *Pass Through Claims and Liquidating Agreements*, 18 Constr. L. 29 (Oct. 1998).

funds realized from the Government and would remain liable to KCI to the extent any such funds were recovered. *Id.* Not only is that conclusion supported by the documents referenced by the Government, it is only logical. There is nothing that would support a conclusion that Harper could retain funds realized from the Government from the pass-through claim and not be obligated to pay those over to KCI.

In addition, Harper and KCI entered into a subsequent "Claims Presentation and Prosecution Agreement" in February, 2005, that superseded the agreements referenced by the Government and set forth the rights and obligations of Harper and KCI with respect to the pass-through claim. *Id.* That agreement specifically states that KCI is not releasing Harper from liability to KCI to pay any funds recovered from the Government. There has never been a complete, unconditional or iron-bound release by KCI, and the Government cannot point to one because no such release exists. Instead, all of the evidence points to the fact that Harper and KCI entered into only a partial release conditioned on Harper's sponsorship of a pass-through claim. As such, this is clearly a valid pass-through claim recognized under Federal law and the *Severin* Doctrine does not apply. The Government has failed to meet its burden.

## IV. THE DELAY CLAIMS ARE NOT BARRED BY ACCORD AND SATISFACTION.

To prove a valid "accord and satisfaction," the Government must establish that there was a meeting of the minds between the parties to extinguish, discharge, or terminate an existing right. *Westerhold v. U.S.*, 28 Fed. Cl. 172, 174-175 (1993). The Government has not met its burden to establish this. It is well settled that "an executed bilateral modification <u>with a release provision</u> usually constitutes an accord and satisfaction unless that release is either ambiguous or limited in scope." *Jackson Constr. Co. v. U.S.*, 62 Fed. Cl. 84, 92 (2004) (emphasis added). It is equally well-established that "a contractor may preserve its rights by explicitly reserving its

rights to assert additional claims." *Id*. But in both situations, "the Court must look beyond the mere existence or nonexistence of any release language or reservation of rights in a bilateral modification . . . [and] focus on whether or not the parties' objective manifestations of intent demonstrate that they reached a meeting of the minds with respect to the release of additional claims." *Id*.

Here, Harper and the Government did not reach a meeting of the minds with respect to the release of additional claims when they executed modifications P00006 and P00007. The "contract modifications" relied on by the Government do not contain <u>any</u> language to the effect that they were in full satisfaction of all claims arising out of the various conditions that led to KCI's claim. Moreover, Harper's letter dated April 13, 1998, and the Government's subsequent consideration of this claim further demonstrate that Modifications P00006 and P00007 were never intended to extinguish, discharge, or terminate all of Harper's rights. The final decision from the Contracting Officer dated March 4, 2004 (Plaintiff's Appendix, PA2) mentions these two modifications as extending the contract date, but states only that they "fairly compensate Harper for rain delays." There is absolutely no mention in the CO's decision that P00006 and P00007 constituted an accord and satisfaction, and clearly the Government never treated it as such.

The Government's argument is further undermined by its own documents, specifically the Memorandum dated June 17, 1998 (Defendant's Appendix, A57-A58) wherein the Government discussed the delay claims by Harper related to weather and noted numerous reasons why they might not consider the claims based on the merits but made absolutely no mention of Modifications P00006 or P00007 whether they constituted an accord and satisfaction. That same document noted that "[Harper/Nielsen Dillingham] may be entitled to compensation for delays, but the extent of these delays is nearly impossible to determine." Defendants

Appendix, A58. This same document was prepared after both P00006 and P00007 were executed. If the Government truly thought that those modifications were the final word on any delay claim, then the Government would have said so in its documents analyzing the claim.

When Harper agreed to the modifications, it did not intend for the modifications to bar any claims for damages. (See Affidavit of Jeffrey A. Harper, Plaintiff's Appendix, PA__). Furthermore, neither P00006 nor P00007 contain any language contemplating a release (Defendant's Appendix, A49-A50 and A61-A62) even though other modifications did contain such language. Modification P00001 (Defendant's Appendix, A40-A43) has a paragraph at the end that states "Contractor's statement of release: acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full, for both time and money, for any and all costs, impacts, and/or delays arising out of or incidental to, the work as herein described and extensions of the contract performance, if applicable." Defendant's Appendix, A43. This same paragraph does not appear anywhere in P00006 or P00007. It is conspicuously missing from these two modifications and was obviously excluded by the parties. Not only does this establish that there was never a meeting of the minds concerning an accord and satisfaction created, but it shows that Harper was explicitly not agreeing that P00006 and P00007 constituted an accord and satisfaction and was reserving its rights to seek delay damages on behalf of itself or its subcontractors. This fact alone precludes the Government's argument that there was an accord and satisfaction.

Finally, the fact that Harper submitted a request for equitable adjustment after executing the modifications and that the Government considered the request for equitable adjustment and did not deny it based on an accord and satisfaction effectuated by Modifications P00006 and P00007 further demonstrates that neither party intended for those particular modifications to act as an unconditional release of any claims. If additional negotiations occur after the execution

of a bilateral modification, then these negotiations indicate that the parties did not intend the release to extinguish the claim. *Id*. at 93. (citing *Westerhold v. U.S.*, 28 Fed. Cl. 172, 175 (1993)). Here, the Government acknowledges that Harper submitted a request for equitable adjustment shortly after it agreed to bilateral modification P00006 on April 13, 1998. Defendant's Motion, p. 22; Defendant's Appendix, A59-A60. Instead of denying the request on the grounds that any claims were barred under the doctrine of accord and satisfaction, the Government considered the request. After months of consideration, the Government denied the request for compensation for performing landscape work during the rainy season on its merits, without any mention of accord and satisfaction. PFUF 8; Defendant's Appendix, A56-A58; see also Plaintiff's Appendix, PA33-PA37. As such, it is clear that the Government did not consider P00006 or P00007 as a bar to additional claims. Without establishing a meeting of the minds, the Government cannot prevail on its affirmative defense under the doctrine of accord and satisfaction.

## CONCLUSION

The Government's motion to dismiss or, in the alternative, motion for partial summary judgment should be denied in its entirety. First, this Court has jurisdiction to hear Harper's claim for an equitable adjustment regarding the effects of the wage determination and an adjustment under the change clause because Harper is not challenging the wage determination but requesting that this Court make a determination regarding effect of the wage determination. Second, the *Severin* Doctrine does not preclude Harper from sponsoring KCI's delay claim because the Government has failed to meet its burden to show that Harper was completely exonerated or released and all of the evidence demonstrates this is a valid pass-through claim. Finally, the Government has failed to establish that the bilateral contract modifications in P00006 and

P00007 constituted an "accord and satisfaction" or were intended to bar any additional claims for compensation.

Respectfully Submitted,

MILLER LAW FIRM, P.C.

/s/Richard W. Miller
Richard W. Miller Mo. Bar #16136
Michael T. Metcalf Mo. Bar # 45304
4310 Madison Avenue
Kansas City, Missouri 64111
Telephone: (816) 531-0755
Facsimile: (816) 561-6361
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF FILING**

I hereby certify that on this 22nd day of February, 2006, a copy of the foregoing "Plaintiff's Brief Opposing Defendant's Motion to Dismiss or in the Alternative, Motion for Partial Summary Judgment" was filed electronically with this Court. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic system. The parties may access this filing through the Court's system.

/s/Richard W. Miller
Attorneys for Plaintiff