# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **HARPER/NIELSEN-DILLINGHAM BUILDERS, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 05-269-C** |
| | ) | **Judge Nancy B. Firestone** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

## AFFIDAVIT OF JEFFREY A. HARPER

Jeffrey A. Harper, having been duly sworn upon his oath, deposes and states as follows:

1. My name is Jeffrey A. Harper, and I am Sr. Vice President, Operations of Harper Construction Company. I am over the age of eighteen; have personal knowledge of the matters set forth herein, and can competently testify thereto if called to do so.

2. Harper entered into a joint venture with another company, Nielsen-Dillingham Builders, Inc., for purposes of contracting with the Air Force for work related to the construction of housing units at Vandenberg Air Force Base in California, specifically Contract Number F04684-96-C-0046. This Contract was for the "Phase III" housing replacement project.

3. The joint venture entered into a Subcontract Agreement with Karleskint-Crum, Inc. ("KCI") on or about April 2, 1997, whereby KCI agreed to perform certain landscape and irrigation services for the Phase III Project. (Copy attached hereto as Exhibit A).

4. Paragraphs 7 and 8 of the Subcontract with KCI contain language that indicates that no monetary damages would be paid to KCI as a result of delays on the Project. To my knowledge, Harper never attempted to enforce those provisions against KCI, nor did Harper

deny any claims of KCI based on those provisions. Rather, it was understood at all times that KCI's Request for Equitable Adjustment would be submitted to the Government by Harper as a "pass through" claim. The delay damage exculpatory provisions in paragraphs 7 and 8 of the Subcontract were never litigated in any court, and whether they were enforceable under California law was never determined.

5. Modifications P00006 and P00007 (attached hereto as Exhibit B) were agreed to by Harper, but it was not the intention of Harper that they would constitute any accord and satisfaction of claims for delay damages or other costs incurred by Harper or its subcontractors. P00006 and P00007contain no language stating that they constitute a release of claims for damages arising out of the extended time those modifications granted, nor do they contain any language indicating that they constituted an "accord and satisfaction." In this regard, P00006 and P00007 specifically differ from other modifications Harper agreed to on the Project, such as P00001, that does have a specific paragraph stating that the modification constituted an "accord and satisfaction" and release of any further claims other than the compensation allowed by the modification. This same language was specifically excepted from P00006 and P00007.

6. At the conclusion of KCI's work on the Project, Harper held some retainage from KCI that resulted in a Miller Act claim filed by KCI in the United States District Court for the Central District of California. After negotiations with KCI, Harper agreed to resolve its differences and to settle with KCI. In this regard, a "Settlement Agreement and Mutual Release" was entered into between Harper and KCI with an attached letter agreement signed by the parties. (copy attached hereto as Exhibit C).

7. The intention of the Settlement Agreement and letter attached as Exhibit C was to effectuate a "pass through" agreement by which Harper agreed to certify and submit KCI's

Request for Equitable Adjustment to the Government. At all times relevant thereto, it was the intention of the parties that Harper would be obligated to pay to KCI any funds realized from the request for equitable adjustment and would remain liable to KCI to the extent that any such funds were recovered from the Government. That intent is supported by the documents executed by the parties and attached as Exhibit C. KCI agreed to settle its differences with Harper and to not make claims other than the request for equitable adjustment in exchange for Harper's agreement to pass that claim on, and to pay KCI whatever was realized. It was never the intention of Harper to effectuate a complete or unconditional release of all liability whatsoever from KCI.

8. In February, 2005, Harper and KCI entered into a "Claims Presentation and Prosecution Agreement" (copy attached as Exhibit D) that superseded the documents attached as Exhibit C and governs the rights and obligations of Harper and KCI. That Agreement specifically states that KCI was not releasing Harper from liability to KCI to pay over any funds recovered from the Government. Harper was and remains liable to KCI to the extent of any recovery realized in this litigation, as consistently provided in the agreements and documentations between Harper and KCI. To my knowledge there has never been a complete, unconditional iron bound release executed by KCI.

FURTHER AFFIANT SAYETH NAUGHT

Jeffrey A. Harper

# ACKNOWLEDGEMENT

STATE OF CALIFORNIA )
) ss.
COUNTY OF San Diego )

On this 21st day of February 2006, before me appeared Jeffrey A. Harper, personally known to me, who being first duly sworn upon his oath, did state and acknowledge that he has read in full and fully understands the foregoing affidavit and fully executes the same as his free act and deed.

WITNESS my hand and seal this 21st day of February, 2006.

ERICA S. ZOLL
Commission # 1627681
Notary Public - California
San Diego County
My Comm. Expires Dec 6, 2009

Erica S. Zoll
Notary Public

My Commission Expires:

Dec. 6, 2009



C:\Documents and Settings\JAH.HARPER\Local Settings\Temporary Internet Files\OLK1\aff jeff harper.doc