**No. 05-269C**
**(JUDGE FIRESTONE)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**HARPER/NIELSEN DILLINGHAM BUILDERS, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**DONALD E. KINNER**
**Assistant Director**

**JEFFREY S. PEASE**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**1100 L St., N.W.**
**Attn: Classification Unit**
**8th Floor**
**Washington, D.C. 20530**
**Tel: (202) 307-1011**
**Fax: (202) 514-8624**

**Attorneys for Defendant**

**Of Counsel:**

**BRYAN O'BOYLE**
**Senior Trial Attorney**
**Air Force Legal Service Agency**
**Commercial Litigation Division**

**March 24, 2006**

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 2

I. This Court Lacks Jurisdiction To Decide Harper's Claims For Reclassification Of KCI's Laborers . . . . . . . . . . 2

II. This Court Should Dismiss Harper's Delay Claims Or Grant The United States Partial Summary Judgment . . . . . . . . . . 8

A. Harper's Newly Disclosed Document Is Inherently Flawed . . . . . . . . . . 8

B. Harper's Delay Claims Should Be Dismissed Because Harper Lacks Standing Under the Severin Doctrine . . . . . . . . . . 9

1. The Severin Doctrine . . . . . . . . . . 10

2. The Subcontract Delay Clause In This Case Is Valid . . . . . . . . . . 12

C. Harper's Weather-Related Delay Claims Should Be Denied Because They Are Barred By Accord And Satisfaction . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . 17

# TABLE OF AUTHORITIES

AUTHORITIES PAGE(S)

Aleman Food Services, Inc. v. United States,
994 F.2d 819 (Fed. Cir. 1993) . . . . . 5

Boyle v. United Tech. Corp.,
487 U.S. 500 (1988) . . . . . 14

Burnside-Ott Aviation Training Center, Inc. v. United States,
985 F.2d 1574 (Fed. Cir. 1993) . . . . . 5

C&H Commercial Contractors, Inc. v. United States,
35 Fed. Cl. 246 (1996) . . . . . 15, 16

City of Tacoma v. United States,
38 Fed. Cl. 582 (1997) . . . . . 7

Coast Federal Bank, FSB v. United States,
323 F.3d 1035 (Fed. Cir. 2003) . . . . . 10

Collins Int'l Serv. Co. v. United States,
744 F.2d 812 (Fed. Cir. 1984) . . . . . 3, 6, 7

Emerald Maintenance, Inc. v. United States,
925 F.2d 1425 (Fed. Cir. 1991) . . . . . 3, 6

George Hyman Constr. Co. v. United States,
30 Fed. Cl. 170 (1993) . . . . . 10, 11

Hawley v. Orange County Flood Control District,
211 Cal. App. 2d 708 (1963) . . . . . 12, 13

Reliance Ins. Co. v. United States,
931 F.2d 863 (Fed. Cir. 1991) . . . . . 7

United Pacific Ins. Co. v. United States,
401 F.3d 1362 (Fed. Cir. 2005) . . . . . 8

Valcon II, Inc. v. United States,
26 Cl. Ct. 393 (1992) . . . . . 15, 16

TABLE OF AUTHORITIES (cont'd)

AUTHORITIES PAGE(S)

Zacharin v. United States,
213 F.3d 1366 (Fed. Cir. 2000) . . . . . . . . . . 8

FEDERAL STATUTES & REGULATIONS

41 U.S.C. §§ 601-613 . . . . . . . . . . 3, 7

41 U.S.C. § 605 . . . . . . . . . . 7

48 C.F.R. § 52.222-6 . . . . . . . . . . 5, 6

FAR § 52.249-10 . . . . . . . . . . 12

MISCELLANEOUS

Cal. Gov't Code § 4401 . . . . . . . . . . 14

Cal. Pub. Cont. Code § 7102 . . . . . . . . . . 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HARPER/NIELSEN-DILLINGHAM BUILDERS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-269C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to the Court's scheduling order on September 1, 2005 and its subsequent orders modifying the briefing schedule at the parties' request, defendant, the United States, files this reply regarding the limited issues of the Severin doctrine, accord and satisfaction, and wage determination. The United States respectfully renews its request that the Court dismiss the complaint or grant partial summary judgment in favor of the Government. Harper/Nielsen Dillingham Builders, Inc. ("Harper") attempts to obtain relief from the Court for injuries claimed by its subcontractor, Karleskint-Crum, Inc. ("KCI"), due to alleged delays and the prevailing wages KCI was required to pay its workers pursuant to the contract.

STATEMENT OF THE ISSUES

1. Whether Harper's wage determination claims should be dismissed because this Court does not possess jurisdiction to decide such claims.

2. Whether Harper's delay claims should be dismissed because Harper lacks standing to raise those claims on behalf of KCI under the Severin doctrine.

3. Whether Harper's weather-related delay claims should be denied because they are barred by the doctrine of accord and satisfaction.

ARGUMENT

I. This Court Lacks Jurisdiction To Decide Harper's Claims For Reclassification Of KCI's Laborers

We explained in our moving brief that the contract was subject to the Davis-Bacon Act ("DBA") and all implementing regulations, requiring Harper to pay all laborers employed or working upon the site at wages not less than the rates stated in the two wage determinations issued by the Department of Labor ("DOL") that were attached to the contract. Defendant's Brief at 9-13; see also Defendant's Proposed Findings Of Uncontroverted Fact ("PFUF") ¶ 18. We also described that Harper's complaint before this Court improperly alleges that the wage determinations had a classification of "'Landscape Maintenance Laborer' with a base minimum hourly wage rate of $7.00, and a classification of 'Landscape Laborer' with a base rate of pay of $13.40 plus $8.61 in fringe benefits." Def. Br. at 13-14; Complaint at ¶ 31. Harper's complaint also contended that the contract wage determination did not contain a classification for "Tradesman" that had allegedly been used in an earlier phase II for similar work. Compl. at ¶ 29. In addition, Harper alleged that "[t]he classification for Landscape Maintenance Laborer more closely fits the work description and qualifications under Section 02970 of the Contract that KCI performed, however, KCI was instructed by the Air Force to use the classification and higher rate of pay of 'Landscape Laborer,'" so that "KCI had to pay higher wages than it should have." Compl. at ¶ 33.

However, the applicable wage determinations do not contain the wage classifications

claimed or alleged by Harper upon behalf of KCI. See PFUF 21, 24. The contract included wage determination CA960039 with a classification for "landscape & irrigation work" (Item #CA0039-927) at a base wage rate of $22.23 plus $6.80 for fringe benefits, and wage determination CA960047 with a labor classification for "landscape & irrrigation work" (Item #CA047-753) at a base wage rate of $22.23 plus $6.80 for fringe benefits, as well as "landscape laborer, clean-up, fencing (chain link and wood)" (Item #CA047-470) at a base wage rate of $13.14 plus $8.61 in fringe benefits. See PFUF 22, 25.

Consequently, Harper is improperly asking this Court to insert new wage rates into the contract – something the Court lacks jurisdiction to entertain pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601-613. Emerald Maintenance, Inc. v. United States, 925 F.2d 1425 (Fed. Cir. 1991); Collins Int'l Serv. Co. v. United States, 744 F.2d 812, 815 (Fed. Cir. 1984).

Notwithstanding Harper's erroneous assertion in its complaint that classifications and wage rates were in the contract for "'Landscape Maintenance Laborer' with a base minimum hourly wage rate of $7.00, and a classification of 'Landscape Laborer' with a base rate of pay of $13.40 plus $8.61 in fringe benefits," Compl. at ¶ 31, Harper now contends that the "Government misconstrues Harper's claim to make its argument that the Court lacks jurisdiction." Plaintiff's Brief at 2. To the contrary, the Government construes Harper's claim as it is set forth in the complaint.

The complaint plainly alleges that the "Maintenance Landscape Laborer" more appropriately fit the work required by the contract, but that the contracting officer improperly instructed the contractor to use the higher rate of pay for "Landscape Laborer." Compl. at ¶ 33. The lower classification or wage rates sought by KCI, however, are not stated in the wage

determination or anywhere else in the contract at issue. See PFUF 21, 22, 24, 25.

Further, page 21 of Harper's claim to the contracting officer dated August 1, 2003, alleged the following:

> The Government's unilateral decision, long after KCI's contract was awarded and work had commenced, to require KCI to reclassify KCI's "Tradesman" workers as "Landscape Laborer" imposed a defective specification by the Government and caused significant additional expense for KCI. KCI's Subcontract's work description included work that should be performed by a worker classified as a "Tradesman." Further, KCI had in fact used the "Tradesman" classification for the very same work in Phase II.

A81[1]; PFUF 34. On page 36 of its claim, Harper requested "an additional $24,208 in increased wages due to unreasonable reclassification of 'tradesman' by the Government." A83; PFUF 34. In particular, Harper contended that "KCI has had to pay its maintenance tradesman at the $22.01 per hour wage rate ($13.40 + $8.61 fringe benefits), an increase of $10.34 per hour." PFUF 34.

Harper's claim upon behalf of KCI challenges the failure of the wage determinations to include a classification for Tradesmen or Maintenance Landscape Laborer at the lower hourly rates sought, which were allegedly contained in the wage determination for Phase II. However, the classifications and rates sought by Harper are not contained in this contract. See PFUF 21, 22, 24, 25. The contracting officer properly directed Harper to require KCI to comply with the wage determinations and pay at the rates specified in the applicable wage determination. PFUF 31.

Harper's statement that it "now seeks on behalf of KCI an equitable adjustment based on

[1] "A_" refers to Defendant's Appendix attached to its moving brief.

increased costs incurred as a result of accepting the changed wage determination," Pl. Br. at 4 (emphasis added), confirms and admits that Harper is improperly seeking an entitlement for "accepting," or mere compliance with, the applicable wage determination – which it was required to do from the outset in accordance with the Davis-Bacon Act clause of the contract. See 48 C.F.R. § 52.222-6. It must also be noted that according to the claim a "defective specification" was imposed because "KCI's Subcontract's work description included work that should be performed by a worker classified as a 'Tradesman,'" and "KCI had in fact used the 'Tradesman' classification for the very same work in Phase II." PFUF 34.

Under these circumstances, Harper's claim upon behalf of KCI obviously involves a claim to include different classifications and wage rates in the contract, rather than a dispute over how to interpret the wage determination. With no viable dispute over how to interpret a contract provision, this is not a dispute the Court may now entertain. Cf. Aleman Food Services, Inc. v. United States, 994 F.2d 819, 822 (Fed. Cir. 1993) ("[t]he dispute, whether the government is obligated to compensate Aleman for increases in Texas state workers' compensation and unemployment taxes, is a question of contract interpretation which we review de novo."); Burnside-Ott Aviation Training Center, Inc. v. United States, 985 F.2d 1574, 1580 (Fed. Cir. 1993) (contractor was not merely challenging DOL's classification of its employees or the wage rate it had to pay its employees, but rather the effect that DOL's classification had on its contract rights, so that the Court possessed jurisdiction to entertain the claim).

Moreover, contrary to Harper's allegations, the Government does not contend that this Court lacks jurisdiction to entertain Harper's claim simply because a wage determination is involved. See Pl. Br. at 4. Our contention is based entirely upon the fact that Harper's claim

upon behalf of KCI seeks compensation for labor classifications and wage rates that were not stated in the wage determinations – something this Court lacks jurisdiction to entertain. Emerald Maintenance, 925 F.2d at 1429; Collins Int'l, 744 F.2d at 815.

It is also unavailing that during contract performance Harper questioned the contracting officer regarding its duty to pay its workers the wage rates and classifications in the applicable wage determination. See Pl. Br. at 4. As we demonstrated in our moving brief, Harper knew, understood, and fully appreciated the proper procedures to seek the conformance or classification for new, additional laborers working at the job site that were not already conformed. Def. Br. at 12; PFUF 26, 27. For some unexplained reason, Harper never submitted a formal request to the contracting officer in accordance with 48 C.F.R. § 52.222-6(b)(2) to initiate, at the DOL, a review process for any new conformance of laborers that KCI may have sought.

Notably, Harper presents no evidence that a completed Standard Form 1444 was ever submitted to the contracting officer to initiate a conformance process at DOL. This is especially telling in view of the fact Mr. Jeffrey Harper, Senior Vice President for Harper, has submitted his affidavit explaining the subcontract arrangement with KCI and its litigation with KCI, but Mr. Harper remains silent on the wage conformance issue. Pl. App. at 1-4.

On the other hand, Mr. Curt Boutwell, KCI Vice-President, states in his affidavit dated February 22, 2006 that "KCI did submit to Harper a request on Standard Form 1444 (copy attached as Ex. A), and Harper in turn submitted it to the contracting officer as required by the procedures outline in the contract." Mr. Boutwell Affidavit ¶ 6, PA28-29. However, no official from Harper has attested to the submission to the contracting officer of a properly completed

Standard Form 1444, and the Standard Form 1444 attested to by Mr. Boutwell is merely a draft that is neither signed nor fully completed by any official from Harper, nor is it signed in block 4 by a representative of KCI. PA28-29, 32. Mr. Boutwell's statement that Harper submitted a Standard Form 1444 to the contracting officer is entirely unsupported conjecture. The unrebutted fact remains that the contracting officer never received a Standard Form 1444 for Harper's conformance of laborers upon behalf of KCI. A91; PFUF 28.

Finally, Harper mistakenly requests leave to amend its complaint to "assert a claim based upon the price adjustment and changes clause," and for the Court to estop the Government from arguing that Harper was required to appeal the wage conformance issue to the DOL. First, there is no need to amend the complaint. Harper's complaint tracks with its earlier, erroneous claim to the contracting officer. Any new claim on a different basis of legal entitlement would have to be submitted to the contracting officer in accordance with the Contract Disputes Act, 41 U.S.C. §§ 601-613. See City of Tacoma v. United States, 31 F.3d1130, 1134-35 (Fed. Cir. 1994); Reliance Ins. Co. v. United States, 931 F.2d 863, 866 (Fed. Cir. 1991) (the Court lacks jurisdiction to entertain a claim not clearly and unequivocally presented to the contracting officer). Any new claim, however, accrued in 1997 or 1998, and would be barred by the six-year statute of limitations under the Contract Disputes Act. See 41 U.S.C. § 605(a).

There is also no basis upon which estoppel may be applied against the Government in this case. Without the submission of a completed Standard Form 1444, the contracting officer was under no obligation to initiate a formal wage conformance request and review at the DOL. See Collins Int'l, 744 F.2d at 815 ("[W]e are compelled to conclude, as did the Claims Court, that the Navy did not owe CISCO a legal duty to clarify the Labor employee classifications,

despite CISCO's efforts to obtain such clarification."). As demonstrated by Harper's previous submission of two conformance requests under the contract, Harper fully understood and appreciated how to start and complete a conformance request and review at DOL. PFUF 26, 27. Further, Harper "admitted that [its] efforts to persuade the Department of Labor were not working," and Harper directed KCI to comply with the relevant Davis-Bacon Act clauses incorporated by KCI's subcontract agreement. PFUF 33. Under these circumstances, estoppel will not rest against the Government. See United Pacific Ins. Co. v. United States, 401 F.3d 1362, 1366 (Fed. Cir. 2005); Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000) ("[I]f equitable estoppel is available at all against the government some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel.").

## II. This Court Should Dismiss Harper's Delay Claims Or Grant The United States Partial Summary Judgment

Harper relies in part upon a newly produced document alleged to be a final agreement between Harper and KCI, and argues that the Severin doctrine should not apply in this case because of that agreement, Harper's interpretation of the subcontract and the settlement agreement with KCI, and based upon state law regarding contracts involving state governmental entities. None of these contentions overcomes the clear and plain language of the subcontract allowing for no liability of Harper for the type of delay alleged in this case.

### A. Harper's Newly Disclosed Document Is Inherently Flawed

In response to our moving brief, Harper includes and relies upon a document, which Harper failed to produce in response to our first request for documents, purporting to create or

preserve liability in Harper. See PA22-26a.[2] This document entitled "CLAIMS PRESENTATION AND PROSECUTION AGREEMENT" appears, on its face, not to be a valid enforceable agreement. Id. Page 1 is undated, but pages 2 and 3 are dated February 28, 2005. PA22-24. Page 4, Harper's signature page, is dated February 24, 2005, and is notarized by attachment on February 25, 2005, three days prior to the apparent drafting date of pages 2 and 3. PA25. Page 5, KCI's signature page, is dated February 25, 2005, also three days prior to the apparent drafting date of pages 2 and 3, and is notarized on February 28, 2005. PA26-26a. Furthermore, page 4 and the attached notarial certificate contain the facsimile header "THEMUNSLAWFIRM," whereas page 5 contains the facsimile header "KCI." PA25-26a. The date of facsimile transmission from the headers is obscured. Id. Absent any other explanation, on its face, this conglomeration of documents does not appear to be a single enforceable document agreed upon by Harper and KCI. This Court should not accept such clearly flawed evidence purporting to establish Harper's standing to invoke this Court's jurisdiction. However, for the sake of argument and for the purpose of this reply only, even assuming that Harper could present the Court and the Government with an authentic document containing the same operative language signed by both parties on or about February 28, 2005, Harper's claim should be dismissed.

B. Harper's Delay Claims Should Be Dismissed Because Harper Lacks Standing Under The Severin Doctrine

Harper contends that the Severin doctrine does not apply in this case because the subcontract does not absolve Harper of liability in this case, California law does not enforce "no

[2] "PA__" refers to Plaintiff's Appendix submitted with its response brief.

damage for delay" clauses, and subsequent agreements hold Harper liable to the extent of its recovery in this case. Harper's argument that it and KCI knowingly entered an unenforceable agreement is, at best, unreasonable. No other rule of interpretation is required to establish the unequivocal intentions stated in plain language by Harper and KCI. The undisputed language at issue could not be more clear in its expression that certain delays entitled KCI only to an extension of time and "to no other or further damages." Further, certain "delays or additional work entailed . . . [would] not entitle [KCI] to any extras whatsoever."

We object to Harper's reliance upon extrinsic evidence in the form of self-serving post hoc affidavits attesting to what Harper and KCI intended to agree upon in the subcontract, and in subsequent written agreements. See PA1, PA27. The operative documents must be interpreted within their four corners to determine the extent of the parties' agreements. See Coast Federal Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003). Harper has not established any misunderstanding, mistake, misrepresentation, duress, or other reason why parol evidence might be helpful to the Court in interpreting the plain, unambiguous language in the subcontract, or subsequent agreements.

1. The Severin Doctrine

This Court clarified and endorsed the viability of the Severin doctrine in George Hyman Constr. Co. v. United States, 30 Fed. Cl. 170, 176-78, 178 n.16 (1993) (relying upon prior precedential en banc decisions of the Court of Claims), a decision especially relevant to this case given Harper's belated production of a document purporting to establish or revive its liability to KCI. Hyman involved a release of claims that was inadvertently stamped upon the back of a check deposited by the plaintiff. Id. at 172. However, despite the plaintiff's uncontroverted

allegations as to the parties' intentions not to release liability by depositing the check, this Court refused to reform the "inadvertent" contract between private parties. Id. at 172, 175. In addition, because the plaintiff in Hyman was at one point in time not liable to the subcontractor (due to the inadvertent release), the Severin doctrine precluded suit. Id. at 176-77. The plaintiff was not permitted to revive liability in order to establish its standing and the jurisdiction of this Court to adjudicate the claim. Id. In Hyman, this Court astutely observed that:

> Permitting the parties subsequently to "revive" (or to create a new) liability by mutual agreement would essentially nullify the Severin doctrine in every action before this court, since the very fact that the prime contractor is pursuing the subcontractor's claim evidences that just such an agreement exists. Because the Severin doctrine is still in force . . . such a result must be rejected.

Id. at 177.

Although it is difficult to ascertain the degree of conditional liability existing in other Severin cases, the representation agreement produced in plaintiff's appendix leaves Harper truly without a stake in this litigation. See PA22-26a. KCI possesses sole discretion "to abandon, settle, compromise or dismiss" this case, and KCI shall pay "[a]ll costs, fees, and other expenses incurred with [its] preparation and prosecution." PA24. Harper is not responsible for the cost of its own defense or judgment if faced with "any and all loss, costs, penalties, interest, court cost, damages, claim, demand, expense or assessment whatsoever, including reasonable attorneys' fees . . . by reason of having certified KCI's claim or agreeing that suit can be filed in the U.S. Court of Federal Claims in the name of Harper/Nielsen." Id. By that agreement, Harper seeks no recovery and stands to lose nothing. In addition, any recovery obtained in this case would be "distributed to KCI" only after "any cost and expenses incurred" are paid in full. PA23.

As Harper notes in its response, an exception to the Severin doctrine allows for circumstances in which a contractor is conditionally liable to its subcontractor. See Pl. Br. at 8. But here there is nothing conditional about the plain language of the subcontract in which Harper and KCI contract away KCI's rights to recovery for any delay. Nothing in the subcontract states that Harper will become liable to KCI for delay costs, on any condition.

Harper also contends that its claim is beyond the reach of the Severin doctrine because it seeks an equitable adjustment rather than a remedy for breach of contract. However, the prime contract in this case incorporates Federal Acquisition Regulations ("FAR") § 52.249-10, Default (Fixed-Price Construction) (Apr 1984), which, similar to the subcontract at issue, provides only for an extension of time due to delays. Harper's vague contention that it now seeks an equitable adjustment on behalf of KCI does not provide any reasoned explanation of the contractual basis for such an adjustment, such that it might fall outside the purview of Severin. The Government has satisfied its burden of proof by a preponderance of the evidence that the subcontract explicitly precludes Harper's liability to KCI for certain delays at issue in this case, and no provision of the prime contract requires otherwise.

2. The Subcontract Delay Clause In This Case Is Valid

Harper contends that the subcontract delay clause agreed upon by Harper and KCI is unenforceable as a matter of California law. Pl. Br. at 10-12. Hawley v. Orange County Flood Control District, 211 Cal. App. 2d 708, 713 (1963), stands for the proposition that a party to a contract who has caused an unreasonable delay not within the contemplation of the parties may not enforce a "no damage for delay" to preclude damages against it. The Hawley court considered decisions from a variety of state jurisdictions that were concerned with the essential

fairness of permitting a party to the contract to disclaim damages when it unreasonably delayed another party to the contract. See id. at 713-16. The issues of the circumstances surrounding the delay and what was within the contemplation of the parties were factual issues to be determined by the state court. Id. at 717.

If Harper had alleged that it caused KCI to be unreasonably delayed and that Harper and KCI did not contemplate such a delay by Harper, then a California court might be persuaded to explore those factual matters in order to determine whether Harper should be held to be liable to KCI notwithstanding the clear subcontract language. However, Harper has not alleged any such facts. To the contrary, Harper has alleged in its complaint only that any delays were caused by the United States, its contractors or subcontractors, or the weather. Certainly the delay Harper alleges to have occurred between January 16, 1997 and April 15, 1997 was within the contemplation of the parties when they drafted their subcontract on or about April 2, 1997, which Harper signed on May 6, 1997. See Compl. at ¶11; PA 8. Neither party to the subcontract is alleged to have caused an unreasonable delay in this case, nor did events beyond the contemplation of the parties void the subcontract clause in question. Therefore, to the extent that the general rule in California precludes enforcement of "no damage for delay" clauses under certain factual situations, Harper has not alleged any facts to show that its subcontract would not be enforced between the subcontracting parties. The Government and the Court are entitled to rely upon Harper's allegations that delays were caused by the Government, other parties, or the weather, for the purposes of a motion to dismiss or for summary judgment, viewed in the light most favorable to Harper.

Furthermore, Harper does not contend, and could not reasonably argue that the United

States is itself bound by California law simply because Harper elected to contract with KCI pursuant to California law. To the extent that Harper now contends that its "no damage for delay" clause is unenforceable as a "public contract" pursuant to California Public Contract Code § 7102, Harper is mistaken. See Pl. Br. at 11-12. Section 7102 applies to "public agencies and subcontracts thereunder." Although not defined in section 7102, "public agency" is defined in a chapter entitled "Emergency Termination of Public Contracts" in California Government Code § 4401 to "include[] the State, its various commissions, boards and departments and any county, city, district or state agency authorized to enter into contracts for public work." This Court should not apply California's law barring enforcement of "no damage for delay" clauses under certain circumstances in California "public contracts" to this case because there is no "public contract" or "subcontract thereunder" as defined by California law, since the United States is not a "public agency" bound by California law. In addition, section 7102 is limited in the same way as California common law by the circumstances under which the subcontract was alleged to be formed, as addressed above. Moreover, regardless of Harper's attempt to bootstrap conflicting California law into the interpretation of its contract, Harper's agreement with the Air Force is governed by Federal statute, not state law. Boyle v. United Tech. Corp., 487 U.S. 500, 504 (1988).

Finally, our argument does not rely upon the parties' statements or attempts to enforce or refuse to enforce the subcontract, nor does the Government attempt in any way to raise a "defense on behalf of Harper." See Pet. Br. at 12. The issue before the Court is whether Harper may bring a "pass-through" claim upon behalf of KCI. In order to decide that issue, the Court must determine whether Harper is liable to KCI for the damages asserted. The Court clearly

must determine the jurisdictional standing of the parties attempting to litigate a claim, which, in this case, requires the Court to decide, as a matter of law, whether Harper is liable to KCI under the terms of their subcontract, which it is not.

C. Harper's Weather-Related Delay Claims Should Be Denied Because They Are Barred By Accord And Satisfaction

Harper contends that the lack of an explicit release in modifications P00006 and P00007 precludes a determination that those modifications constitute accords and satisfaction of the subject matter of those modifications.[3] However, as we stated in our moving brief, it is well-settled that "an executed bilateral contract modification that contains no reservation of rights constitutes an accord and satisfaction." Valcon II, Inc. v. United States, 26 Cl. Ct. 393, 397 (1992); see also C&H Commercial Contractors, Inc. v. United States, 35 Fed. Cl. 246, 252 (1996). Moreover, "any reservation of a right or a claim for damages from a bilateral contract modification must ordinarily be manifestly and expressly set forth in the contract modification which incorporates the parties' settlement." C&H Commercial, 35 Fed. Cl. at 252.

Harper's submission of an affidavit offering a post hoc rationalization of why global release language was included in one modification, but not in another, does not explain why there was no manifest or express reservation of any claims in modifications P00006 and P00007. It is irrational to conclude that Harper intended to reserve claims regarding precisely the same dates and subject matter simply by omitting a global release. As we set forth in our moving brief, modifications P00006 and P00007 extended the contract performance because of "higher

[3] The subject matter of those modifications was weather-related delay. To the extent that Harper alleges it was delayed for reasons other than weather, for instance by non-weather-related delay in removal of the underground storage tanks ("USTs"), we do not argue those delays are barred by accord and satisfaction.

than normal rainfall" between November 1997 through April 20, 1998. PFUF 6, 9; A49-50, A61-62. Harper now alleges, on behalf of KCI, delays because of "record-breaking rains from November 1997 through February 1998." Compl. at ¶ 20.

The Government seriously considered Harper's allegations regarding delay alleged as a result of the removal of USTs. Those allegations intertwined two aspects of delay, that delay allegedly caused directly by the USTs not being removed, and that delay caused indirectly by shifting work to the "rainy season." It is entirely reasonable for the Government to have considered these together and to explain fully that the weather-related delays were resolved by the bilateral modifications P00006 and P00007, as it did. See A56-57. This is not evidence that the Government considered weather-related delays as unresolved, but merely that the claim was one that involved two alleged delays with different, but related, characteristics, only one aspect of which was resolved by the bilateral modifications.

Harper's agreement in modifications P00006 and P00007, which resolved delays because of "higher than normal rainfall," and Harper's failure to reserve any claim at the time it signed those modifications, bars Harper from raising claims relating to the same issues resolved in those modifications. See C&H Commercial, 35 Fed. Cl. at 252; Valcon II, 26 Cl. Ct. at 397. Harper's failure to certify a claim in this regard until over 5 years after the modifications were executed is further evidence that modifications P00006 and P00007 did not contemplate the reservation of claims for delay due to adverse weather. For these reasons, if the Court determines it possesses jurisdiction to consider Harper's weather-related delay claims, it should bar those claims under the doctrine of accord and satisfaction, granting partial summary judgment on those claims in favor of the United States.

CONCLUSION

For the foregoing reasons, and the reasons set forth in our moving brief, the Court should dismiss for lack of jurisdiction Harper's claims filed on behalf of KCI regarding wage classifications and alleged delays, or in the alternative, the Court should grant partial summary judgment in favor of the United States with regard to Harper's weather-related delay claims because they are barred by accord and satisfaction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Jeffrey S. Pease
JEFFREY S. PEASE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-1011
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:

BRYAN O'BOYLE
Senior Trial Attorney
Air Force Legal Service Agency
Commercial Litigation Division

March 24, 2006

CERTIFICATE OF FILING

I hereby certify that on this 24th day of March, 2006, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Jeffrey S. Pease