James C. Buttery #56665
ANDRE, MORRIS & BUTTERY
A Professional Law Corporation
1304 Pacific Street
Post Office Box 730
San Luis Obispo, California 93406-0730
Telephone: (805) 543-4171
Facsimile: (805) 543-0752

Attorneys for Use-Plaintiff,
Karleskint-Crum, Inc.

AUG 1 0 1999

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

ANDRE, MORRIS & BUTTERY
1304 Pacific Street
San Luis Obispo, California 93406-0730
(805) 543-4171 Telephone • (805) 543-0752 Facsimile

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of: KARLESKINT-CRUM, INC., Plaintiffs, v. HARPER/NIELSEN DILLINGHAM BUILDERS, JV, a joint venture and FIREMAN'S FUND INSURANCE COMPANY, a corporation, Defendants. | CASE NO. **COMPLAINT FOR RECOVERY ON MILLER ACT PAYMENT BOND (40 U.S.C. § 270b) AND FOR EQUITABLE RELIEF** COPY |

Use-Plaintiff complains and alleges:

**FIRST CAUSE OF ACTION**

**Miller Act Bond**

1. This action is brought pursuant to and jurisdiction is conferred by Title 40, United States Code, sections 270a-270b.

2. At all times relevant herein Use-Plaintiff was and now is a corporation duly organized and existing under the laws of the State of California, doing business and having its principal place of business in the County of San Luis Obispo, State of California.

3. At all times relevant herein Defendant Fireman's Fund Insurance Company was

and now is a corporation authorized and licensed to do business and is doing business in the State of California as Fireman's Fund Insurance Company, a surety issuing bonds required by law or contract by the United States and various agencies within the jurisdiction of this Court.

4. Use-Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant Harper/Nielsen Dillingham, JV ( "Nielsen" herein) was and now is a joint venture, duly organized and existing under and by virtue of the laws of the State of California.

5. Defendant Nielsen, as a general contractor, entered into a written contract with the United States of America, by and through the Department of the Air Force, Contract No. F04684-96-C-0046 ("Prime Contract" herein), by the terms of which Defendant Nielsen agreed to construct, alter, and repair a public work known as Replace Capehart MFH Phase III at Vandenberg Air Force Base, California ("Project" herein).

6. Use-Plaintiff is informed and believes and thereon alleges that under 40 U.S.C. Sections 270a-270e, Defendant Nielsen, as principal, and Defendant Fireman's Fund Insurance Company, as surety, executed and delivered a payment bond to the United States in connection with the Project, whereby said Defendants bound themselves jointly and severally for the purpose of allowing a joint action or actions against any or all of them and bound themselves in a sum of money equal to the contract price.

7. Between July 28, 1997 and August 15, 1998, Use-Plaintiff furnished irrigation, landscaping, and maintenance labor, material, services, and equipment pursuant to a written contract between Use-Plaintiff and Defendant Nielsen and at its specific request, in the execution of the work required in the Prime Contract between Defendant Nielsen and the United States. A copy of said contract between Use-Plaintiff and Defendant Nielsen is attached hereto as Exhibit A and incorporated herein by this reference.

8. Under said contract, Defendant Nielsen agreed to pay Use-Plaintiff $720,500.00 for said irrigation, landscaping, and maintenance labor, material, services, and equipment. This amount was later lowered to $687,000.00 upon deductions by Defendant Nielsen.

9. Use-Plaintiff has fully and completely performed all promises on Use-Plaintiff's

ANDRE, MORRIS & BUTTERY
1304 Pacific Street
San Luis Obispo, California 93406-0730
(805) 543-4171 Telephone • (805) 543-0752 Facsimile

part to be performed under its contract with Defendant Nielsen and under the bond, and all of the conditions precedent to performance on the part of Defendants, and each of them, have occurred.

10. Of the total contract price of $687,500.00, for irrigation, landscaping, and maintenance labor, materials, services, and equipment furnished by Use-Plaintiff to Defendant Nielsen, only the sum of $618,300.00 has been paid, leaving a balance of $68,700.00 remaining due, owing and unpaid to Use-Plaintiff.

11. Use-Plaintiff last furnished irrigation, landscaping, and maintenance labor, materials, services, and equipment on the Project within the year immediately preceding the date this Complaint was filed.

12. A period of 90 days has now elapsed since Use-Plaintiff last provided maintenance services to Defendant Nielsen.

13. Under the payment bond executed between Defendants Nielsen and Fireman's Fund Insurance Company, Defendant Fireman's Fund Insurance Company is jointly and severally obligated to provide payment to Use-Plaintiff for work performed on the Project. Accordingly, on the failure of Defendant Nielsen to compensate Use-Plaintiff for the work performed, Defendant Fireman's Fund Insurance Company is obligated to pay Use-Plaintiff the amount set forth above.

**SECOND CAUSE OF ACTION**

**Damages For Interference, Disruption and Wage Classification in Breach of Contract**

14. Use-Plaintiff refers to the allegations contained in paragraphs 1 through 13, inclusive, above and by this reference incorporates the same herein as if set forth in full.

15. The original schedule for the Project was for field work to commence on July 28, 1997 and to be completed on January 4, 1998. However, delays and disruptions caused by other subcontractors, whose actions and inactions are attributable to Defendant Nielsen, caused the Project to be incomplete when unusually harsh winter storms struck the area and further extended the completion schedule. As a result of thereof, the Use-Plaintiff did not substantially complete the Project until August 15, 1998. The duration of the Project was thereby extended 223 days beyond its original completion date.

16. Use-Plaintiff did not contribute nor create the conditions which affected the

ANDRE, MORRIS & BUTTERY
1304 Pacific Street
San Luis Obispo, California 93406-0730
(805) 543-4171 Telephone • (805) 543-0752 Facsimile

schedule of work on the Project and its extended duration. In fact, the schedule of work was extended for significant periods because of acts of the United States, through its contracting officer on the Prime Contract. For instance, Use-Plaintiff was directed to hydroseed areas for groundcover before the work of other subcontractors was completed in these same areas. When these other subcontractors then conducted their operations such as fencing, Use-Plaintiff was required to re-hydroseed these areas.

17. Further, the Defendant Nielsen and the United States, through its inspectors on site, adopted an interpretation of the plans and specifications which resulted in unwarranted rejections of planted materials and amounted to a "zero tolerance" standard. Their interpretation of "active growth" failed to account for the season of planting, the conditions during planting and the amount of sun available. This interpretation coupled with overzealous inspections led directly to the unilateral rejection of a high percentage of trees and plants and was prevalent until more optimum planting conditions arrived with the change of seasons.

18. The winter of 1997/1998 brought heavy storms to the Central Coast of California, and in particular, the County of Santa Barbara. It was declared a State Disaster Area by California Governor Pete Wilson as a result of these unusually harsh winter storms. Use-Plaintiff repeatedly informed Defendant Nielsen of the delays and damage being caused by these storms, particularly to hydroseeded areas. Since the actions of other parties forced Use-Plaintiff to be in the midst of performing its contractual obligations when the harsh winter storms struck, Defendant Nielsen must be responsible for the increased cost of performance during the unfavorable winter season as well as all other damages resulting therefrom.

19. In addition, during the course of the Project, Defendant Nielsen compelled Use-Plaintiff to make an adjustment in the wages it was paying to its employees charged with maintenance of portions of the Project. Defendant Nielsen required this change in wage rates despite representing to Use-Plaintiff during bidding that it could use a tradesman's rate rather than an installer's rate for bidding the maintenance portion of the Project (*cutting grass and watering plants*). Use-Plaintiff was thereafter required to pay its employees at the higher rate, at an excessive cost of more than $20,000.00.

ANDRE, MORRIS & BUTTERY
1304 Pacific Street
San Luis Obispo, California 93406-0730
(805) 543-4171 Telephone • (805) 543-0752 Facsimile

ANDRE, MORRIS & BUTTERY
1304 Pacific Street
San Luis Obispo, California 93406-0730
(805) 543-4171 Telephone • (805) 543-0752 Facsimile

20. As a direct and proximate result of the actions and events described herein, Use-Plaintiff has suffered additional costs, including but not limited to the following: unabsorbed office overhead, extended general conditions, increased labor costs and consultants services. The total damage suffered by Use-Plaintiff as a result thereof amounts to $770,565.

WHEREFORE, the United States of America, for the use and benefit of Plaintiff Karleskint-Crum, Inc., prays for judgment against Defendants, and each of them, as follows:

**As to the First Cause of Action**

1. For the sum of $68,700.00 (based on the amount of bond/§ 270a(a)(2)), and such additional sums that become due up to the date of the trial, according to proof;

**As to the Second Cause of Action**

2. For the sum of $770, 565 and such additional sums that become due up to the date of the trial, according to proof;

**As to All Causes of Action**

3. For interest on said sum at the legal rate of ten per cent (10%) per annum from the date of filing complaint herein through the date of judgment;

4. For reasonable attorneys' fees in a reasonable sum, according to proof ;

5. For costs of suit incurred herein; and

6. For such other and further relief as the Court deems just and proper.

Date: August 6, 1999

ANDRE, MORRIS & BUTTERY,
A Professional Law Corporation

BY: James C. Buttery
James C. Buttery
Attorneys for Use-Plaintiff, Karleskint-Crum, Inc.

ANDRE, MORRIS & BUTTERY
1304 Pacific Street
San Luis Obispo, California 93406-0730
(805) 543-4171 Telephone • (805) 543-0752 Facsimile

**VERIFICATION**

I declare that I am the Vice-President of Karleskint-Crum, Inc. in the above-entitled action; that I have read the foregoing **COMPLAINT FOR RECOVERY ON MILLER ACT PAYMENT BOND (40 U.S.C. § 270b) AND FOR EQUITABLE RELIEF** and know its contents; and I declare that the matters stated in the foregoing document are true of my own knowledge, except as to the matters which are stated on my information or belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct to the best of my knowledge.

Executed on August 6, 1999, at San Luis Obispo, California.

Curt Boutwell

PROJECT NO: ND-960001-00
DOR NO: KCI 001
ST CODE: 02950

1 A EXHIBIT

# STANDARD CONTRACT BETWEEN GENERAL CONTRACTOR AND SUBCONTRACTOR BUILDING CONSTRUCTION

(LABOR & MATERIALS)

THIS AGREEMENT, MADE THE 2ND DAY OF APRIL, 1997 BY AND BETWEEN

KARLESKINT-CRUM, INC.
705 LAKEFIELD ROAD, UNIT H
WESTLAKE VILLAGE, CA 91361

PH#: (805) 496-0963
FX#: (805) 373-7808

HEREINAFTER CALLED "SUBCONTRACTOR"

AND

HARPER/NIELSEN-DILLINGHAM BUILDERS VENTURE, A JOINT VENTURE
2241 KETTNER BLVD, SUITE 300
SAN DIEGO, CA 92101
PH#: (619) 233-7900
FX#: (619) 233-1889

HEREINAFTER CALLED "CONTRACTOR"

**WITNESSETH** that the Subcontractor and the Contractor agree as follows:

1. **Description of Work:** The Subcontractor, under the direction of the Contractor shall provide all labor and materials, scaffolding, tools, equipment and all things necessary for the prosecution and completion of the

**TRADE:** LANDSCAPE AND IRRIGATION

**PROJECT:** REPLACE CAPEHART MFH **PHASE 3** *(143 UNITS)*
VANDENBERG AIR FORCE BASE, CA
CONTRACT #: F04684-96-C-0046

work described in "Schedule B" attached hereto and made a part hereof, and in strict accordance with the Contract Documents consisting of the Drawings, Specifications prepared by: FISHER FRIEDMAN ASSOCIATES herein called the "Designer", schedules, change orders and addenda, specifically described as follows:

| | Description | Date | No. of Pages |
|---|---|---|---|
| 1. | GENERAL DECISION NO. CA960039 BUILDING, HEAVY, AND HIGHWAY MODIFICATION NO. 4 | 6/7/96 | 18 |
| 2. | GENERAL DECISION NO. CA960047 RESIDENTIAL MODIFICATION NO. 4 | 6/7/96 | 15 |
| 3. | ASBESTOS HAZARD ASSESSMENT REPORT BY FISHER FRIEDMAN ASSOCIATES. | 11/6/96 | 43 |
| 4. | ASBESTOS CONTAINING BUILDING MATERIALS BY SVERDRUP. | 11/1/93 | 79 |
| 5. | PROJECT SPECIFICATIONS BY FISHER FRIEDMAN ASSOCIATES XUMU 96-4003 | 10/16/96 | 168 |
| 6. | MFH PHASE 3 DRAWINGS BY FISHER FRIEDMAN ASSOCIATES. | 10/16/95 | 99 |
| 7. | GEOTECHNICAL INVESTIGATION BY DAMES & MOORE. | 6/19/95 | 55 |
| 8. | AMENDMENT 001 | 7/11/96 | 49 |
| 9. | SCHEDULE "A" STIPULATIONS & PAYMENT PROCEDURES | | |
| 10. | SCHEDULE "B" SCOPE OF WORK | | |
| 11. | ATTACHED EXHIBITS "A" THRU "O" | | |

2. **Additional Information:** The Contractor shall furnish to the Subcontractor such additional information and drawings as may be prepared by the Designer to further describe the work to be performed by the Subcontractor, who shall accept same as part of this Agreement when consistent with the signed Contract Documents.
3. **Contract Documents:** If any Contract Documents provide for a method of work contrary to any laws and regulations, or codes, Subcontractor shall be required to notify the Contractor, in writing, prior to installation of the work.
4. **Price to be Paid:** The price for the work shall be

*** SEVEN HUNDRED TWENTY THOUSAND FIVE HUNDRED DOLLARS ***

**$720,500.00**

Subcontractor will invoice contractor for work performed according to Schedule A, using forms furnished by Contractor. Contractor will pay invoices on a timely basis.

A general release, labor and materials releases, and waiver of lien in form as directed by Contractor shall be executed and delivered by Subcontractor and each of its subcontractors and suppliers before any payment shall be deemed earned or payable. The acceptance by Subcontractor, its assigns or anyone acting under or through Subcontractor, of final payment designated as such by Contractor, hereunder shall be and shall operate as a general release to Contractor of all claims of Subcontractor, its assignee or anyone acting by, under or through Subcontractor, and all liability to Subcontractor for all things done and furnished in connection with work under this Contract and for any act or omission or neglect of Contractor or others affecting to or relating to or arising out of the work performed by the Subcontractor. No payment, however, final or otherwise, shall operate to release Subcontractor from any obligation under or upon this Contract including, but not limited to, any responsibility for defects in materials or workmanship.



EXHIBIT A
Page 1 of 9

**Cooperation between Parties:** ;ontractor shall cooperate with the Subcontractor for the prosecutio 'is work, and the Subcontractor shall cooperate with the Contractor and with other Subcontractors employed by the Contractor and with other Co. .ors employed by the Owner, in order to insure first class workmanship in every respect and the proper sequence of the work.

6. **Start and Finish of the Work:**

A. On or before seven (7) days before Subcontractor will be required to commence the work or a portion of the work, Contractor will deliver to Subcontractor a "Construction Sequence Schedule". The Subcontractor agrees to complete the work hereunder within the times as specifically set forth in said "Construction Sequence Schedule" and to procure and prepare his materials and manufactured products so as to be ready to begin work in accordance therewith. He agrees to perform said work in a prompt and diligent manner, commencing the several parts thereof at such times and proceeding therewith in such order as directed by the Contractor's superintendent, and agrees to finish the several parts and the whole of said work as provided herein so that, in conjunction with other trades engaged thereon, he will insure the uninterrupted progress of the project.

B. The Subcontractor at his own expense shall furnish promptly, when requested by the Contractor, any number of prints of his shop drawings, schedules, reports or any other data that may be necessary in the opinion of the Contractor for distribution among other Subcontractors and to the Contractor for prosecution or clarification of work.

EXHIBIT

1 A

7. **Extension of Time of Completion:** If the Subcontractor shall be obstructed or delayed in the prosecution or completion of the work by the neglect or default of the Contractor, the Designer, the Owner, or of any other Subcontractor employed by or dealing with the Contractor; or other contractors employed by the Owner; or by the stopping of the work by employees of the Contractor, the Subcontractor, or any other Subcontractor of the Contractor through no fault of the Subcontractor, then the time, as fixed in Article 6 for the completion of the work, shall be extended for a period necessary to make up for lost time by reason on any or all the clauses aforesaid. No such extension, however, shall be made unless a claim therefor is served in writing on the Contractor within thirty (30) days of the occurrence of such delay.

8. **Delays:**

A. In the event of any delays, entailed as a result of fault of Contractor or Owner, then Contractor shall grant Subcontractor an extension of time equal to the delay and Subcontractor shall be entitled to no other or further damages against Contractor or Owner.

B. Any delays or additional work entailed as a result of weather conditions, storms, acts of God, delays in construction, delays by governmental bodies will not entitle the Subcontractor to any extras whatsoever.

9. **Inspections and Approvals:** The work shall be subject to inspection and approved by the Designer, the Contractor, and all applicable governmental authorities. The Subcontractor shall be required to furnish, for the approval of the Designer, the Contractor and all applicable governmental authorities such samples, shop drawings and patterns, as may be required for the work, and all work hereunder shall be in accordance therewith. The Subcontractor shall provide sufficient, safe, and proper facilities during the progress of the work for its inspection by the Designer, the Contractor and all applicable governmental authorities in the field, at shops, or at any other place where materials required hereunder are in course of preparation, manufacture, treatment, or storage.

10. **Failure to Prosecute Work:** If the Subcontractor shall at any time (1) refuse or neglect to supply a sufficient number of properly skilled workman or sufficient materials of the proper quality, or (2) fail in any respect to prosecute the work with promptness or in accordance with the "Construction Sequence Schedule" referred to in Article 6 hereof, or (3) cause by any action or omission the stoppage or delay of or interference with the work of the Contractor or of any other Subcontractors, or (4) fail in the performance of any of the covenants herein contained, or (5) if the Subcontractor shall be adjudged a bankrupt or shall make a General Assignment for the benefit of his creditors, or (6) if a Receiver shall be appointed for the Subcontractor or for his assets, or (7) if the Subcontractor shall become insolvent or become a debtor in reorganization, composition, or arrangement proceedings, then, after serving a three days written notice, mailed or delivered to the last known address of the Subcontractor, of the existence of any of the foregoing causes and unless the cause specified in such notice shall not have been eliminated within such three days, the Contractor at his option may provide either himself or through others, any such labor or materials to prosecute the work and may deduct the cost thereof from any money then due or thereafter to become due to the Subcontractor under this Agreement. In any such event, after such notice and failure to eliminate such cause within the three days specified, the Contractor at his option, may terminate the employment of the Subcontractor, and may enter on the premises and take possession, for the purpose of completing the work, of all material and equipment of the Subcontractor, all of which, on the exercise of such option, the Subcontractor hereby assigns to the Contractor, and may employ any other person or persons to complete the work by whatever method the Contractor may deem expedient, and may provide the materials therefor either himself or through others. In case of such termination of the employment of the Subcontractor, the Subcontractor shall not be entitled to receive any further payment under this Agreement until the work required hereunder shall be fully completed and accepted by the Designer and the Contractor; and at such time, if the unpaid balance of the price to be paid hereunder shall exceed the expense incurred by the Contractor in completing the said work, such excess shall be paid by the Contractor to the Subcontractor; but if such expense shall exceed such unpaid balance, then the Subcontractor shall pay the difference to the Contractor.

11. **Removal of work Condemned:** The Subcontractor shall, within twenty-four (24) hours after service upon him of written notice from the Contractor to that effect, proceed with due diligence physically to remove from the site all materials condemned by the Designer or Contractor or any applicable governmental authority, whether worked or unworked, and shall take down all portions of the work which the Designer or Contractor or any applicable governmental authority has condemned as unsound or improper, or which in any way fail to conform to the Contract Documents, and shall make good all work in other trades damaged by such removal. In the event that all or any portion of the work so condemned shall be of such a nature, or the time available to complete the whole work shall be so limited, that in the judgment of the Designer or the Contractor it will not be expedient to order the same replaced or corrected, the Contractor, at his option, may deduct from the payments due or to become due to the Subcontractor an amount that shall represent the difference of the fair and reasonable value of the work so condemned and its value had it been executed in conformity with the Contract Documents.

12. **Defense of Patents:** The Subcontractor shall defend all suits or claims, for infringement by him of any patent rights that may be brought against the Contractor, the Owner or the Designer arising out of the work, and shall hold the Contractor, Owner or the Designer harmless from loss on account thereof, except that the Subcontractor shall not be responsible for such loss when a particular process or product of a particular manufacturer or manufacturers is specified.

13. **Payments of Royalties, Permits, Fees:** The Subcontractor shall pay all royalties and shall obtain and pay for all licenses and permits pertaining only to his work. The Subcontractor agrees to comply with all laws and regulations specifically applicable to the work in force at the time of signing this Agreement. In case of failure to do so, he shall make all the necessary alterations in his work to conform to same, without delay.

14. **Cutting, Fitting, and Patching:** Work of Others: The Subcontractor shall, as a part of the contract price, do all cutting, fitting, and patching of his work that may be required to make several parts come together properly, and to fit it to receive or be received by the work of other contractors, shown upon or reasonably implied by the Contract Documents. Subcontractor agrees to protect the work of others from damage as a result of his operations. Should Subcontractor cause damage to any separate subcontractor on the work, the Subcontractor agrees, upon due notice, to compensate such subcontractors to the extent of his damage.

The commencing of work by any subcontractor, following the work of another, shall constitute his acceptance of prior work, (unless prior damage is reported in writing by the Subcontractor to the Contractor); and the cost of repairing any damage to the work of others shall be paid by the subcontractor causing such damage or Subcontractor hereunder if he accepts such prior work.

If more than one subcontractor, is working simultaneously on the project and damage occurs to the work, and responsibility for such damage cannot be ascertained then all such subcontractors working at the time shall pay equally for such damage; in time, and as directed by the Contractor.

15. **Removal of Rubbish:** The Subcontractor shall gather together and dispose of the rubbish caused by his work and, on completion of his work, the Subcontractor shall remove all tools, scaffolding, equipment and surplus materials pertaining to his work.

16. **Termination:** The Contractor may terminate and cancel this Agreement at any time even though the Subcontractor may not be default and in such event shall be liable to the Subcontractor only for an amount to be determined as follows:

A. Cost of the work as certified by the Designer;

B. A sum equal to five percent (5%) of A above in lieu of all fees and profits;

C. The estimated cost for winding up the Subcontractor's operations (such as the cost of taking inventory and cancellation charges imposed upon the Subcontractor).

D. From the amount so determined shall be deducted all payments previously made and all proper charges to the Subcontractor.



**EXHIBIT A**

The Contractor may direct the Su[illegible] actor to immediately dispose of any materials, tools, supplies and e[illegible]ent for the account of the Contractor. The Subcontractor shall not dispose of said materials at the prices offered unless so directed by the Contr[illegible]. The Subcontractor shall furnish the Contractor with detailed and correct records and copies of all costs, orders, accounts, statements and contracts. During the period that such materials are on the job, Subcontractor shall keep them insured against theft and vandalism as provided for in Article 24 hereof.

17. **Guarantee:** The Subcontractor shall repair or replace, at his own cost and at the reasonable convenience of the Owner or any purchaser from the Owner, any damages or faults resulting from defective work that may occur during the period of one year (or during such other period as may be required by the Contract Documents or otherwise agreed to in writing by the Subcontractor) from the date of occupancy of the work by the purchaser from Owner to the reasonable satisfaction of the Contractor.

18. **Subletting, Transfer or Assignment of Work or Moneys Due:** The Subcontractor shall not sublet, assign, or transfer this Agreement or any part of the work included herein without the written consent of the Contractor.

The Subcontractor's claims for moneys due hereunder are nonassignable except with the written consent of the Contractor. Any assignment of moneys due hereunder made without such consent is void, and the assignee in such case shall acquire no rights against the Contractor.

19. **Liens, Third Party Claims:** If at any time there shall be filed any notice of lien or if there shall be evidence of any claim for which the Contractor or the said premises may become liable, and which is chargeable to the Subcontractor or his subcontractors, or when damage shall be caused by this Subcontractor to another Subcontractor's work then the Contractor shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient, in the opinion of the Contractor, to completely indemnify the Contractor against any such lien, or claim or damages. If there shall prove to be any lien, notice of lien or claim after all payments are made, the Subcontractor shall refund to the Contractor all moneys that the latter may be compelled to pay in discharging or disposing thereof and of any other claim made in consequence of the Subcontractor's default. The foregoing does not refer to claims by the Subcontractor against the Contractor.

20. **Changes In Work:** The Contractor may from time to time, without invalidating this Agreement, order such extras, additions, alterations, omissions, or other modifications in the work hereunder as he may deem necessary. Such changes shall be valid only on the written order of the Contractor which shall set forth the additional time, if any, to be allowed for its completion and the amount to be added to or deducted from the price or the method of its determination and payment schedule. If required by the Contractor, in fixing said amount, the Subcontractor shall submit his estimate of the value of such change and of the time required for completion.

21. **Overtime:** The Contractor may order the Subcontractor to work overtime in order to expedite the final completion of the work or any part thereof. For such overtime the Contractor shall pay only the actual excess cost of labor over the regular rates, plus the applicable cost of workman's compensation, liability insurance and payroll taxes on such actual excess labor costs, and any other costs required by the applicable labor agreements.

If, however, the Subcontractor delays the progress of the work, the Subcontractor shall, at his own expense and cost, work such overtime as may be necessary to finish the work within the time as set forth in Article 6.

22. **Indemnity Agreement:** The Subcontractor hereby assumes entire responsibility and liability for any and all damage, or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of, or occurring in connection with the execution of the work provided for in this contract; and if any person shall make a claim for any damage or injury (including death resulting therefrom) as herein above described, whether such claim may be based upon the Contractor's alleged active or passive negligence or participation in the wrong or upon any alleged breach of any statutory duty of obligation on the part of the Contractor, the Subcontractor agrees to indemnify and save harmless the Contractor, its agents, servants, and employees from and against any and all loss, expense, damage or injury that the Contractor may sustain as a result of any such claims and the Subcontractor agrees to assume, on behalf of the Contractor, the defense of any action at law or in equity, which may be brought against the Contractor upon such claim and pay on behalf of the Contractor, upon its demand, the amount of any judgment that may be entered against the Contractor in any such action.

The Subcontractor further agrees to indemnify and save harmless the Contractor against loss and expense by reason of the liability imposed by law upon the Contractor for damages because of bodily injuries, including death at any time resulting therefrom sustained by any person or persons, and injury to or destruction of property caused by accident, due to any act or omission of the subcontractor, his employees, or agents arising out of and during the prosecution of the work of the Subcontractor as contemplated under this Agreement.

23. **Liability Insurance:** Before commencing the work the Subcontractor shall procure and maintain insurance, at his own expense, until completion and final acceptance of the work, with not less than the following limits: In the minimum amount of $1,000,000.00.

A. Workman's Compensation and Employers Liability Insurance in accordance with the laws of the state in which the work is situated.

B. Comprehensive General Liability Insurance against all hazards, including Public Liability, Contractors Protective Liability, Contractors Contractual Liability and Automobile Liability (owned and non owned) for, personal injury and property damage, with limits approved in advance by Contractor. Contractor to be named as an additional insured.

C. Before commencing the work the Subcontractor shall furnish the Contractor a certificate from his insurance companies showing that the above insurance is in force, stating policy numbers, effective dates, expiration dates, and limits of liability thereunder. All policies providing the above insurance shall be endorsed to provide that the insurance company shall notify the Contractor, in writing, thirty (30) days prior to any cancellation his obligations otherwise provided for in this Agreement, including assumption of liabilities and indemnifications to the Contractor.

D. If the Subcontractor fails to procure and maintain at least the above insurance with minimum limits of liability shown, the Contractor shall have the right to procure and maintain the said insurance for and in the name of the said Subcontractor and the Subcontractor shall pay the cost thereof and shall furnish all necessary information to make effective and maintain such insurance.

24. **Fire Insurance:** Theft and Vandalism: The Owner or the Contractor will provide and pay for standard form of Fire Insurance and extended coverage with Builder's Risk Endorsement to cover the Owner, the Contractor and Subcontractors on the permanent structure including any materials and equipment on the site which are to be incorporated in the work or which will be used up in connection with the work, the value of which is included in the cost of the work. The Subcontractor shall be responsible for any coverage on his temporary materials, tools, equipment, plant, scaffolds, bracing, sheds, etc. Theft and vandalism insurance shall be the responsibility of the Subcontractor until the material is built into the work. When the material is built into the work, it shall become the Owner's responsibility.

25. **Government Taxes:** The Subcontractor, for the Contract Price herein provided for, hereby agrees to pay and hold the Contractor harmless against the payment of all contributions, taxes or premiums which may be payable under Federal, State, or local laws arising out of the performance of the work and all sales, use, or other taxes of whatever nature levied or assessed against the Owner, the Contractor, or the Subcontractor arising out of the furnishing or installing by the Subcontractor of any kind of building materials, supplies, or equipment including the payment of any interest or penalties arising out of failure of the Subcontractor to make timely payment.

26. **Claims by Either Party Against the Other:** If either the Subcontractor or Contractor believes he has a claim of any nature whatsoever against the other party, he shall give the other written notice of the amount, whenever possible, and nature of such claim within six (6) months (or such other time limit as may otherwise be expressly set forth in the Contract Documents) of the occurrence of the event upon which such claim is based. In default of such notice the claim is waived.

27. **Applicable Law:** All matters relating to the validity, performance, interpretation or construction of this Agreement or the breach thereof shall be governed by the laws of the State of California.



EXHIBIT A



EXHIBIT 1 A

E-3

IECT NO: ND-960001-00
DOR NO: KCI 001
COST CODE: 02950

1 A EXHIBIT

The work of the Subcontractor shall, among other things, include the following:
Furnish all labor, materials and equipment to complete the LANDSCAPE AND IRRIGATION
(per plans and specifications) in a timely and first class manner at the above mentioned jobsite.

## SEE SCHEDULE "B" SCOPE OF WORK

| COST CODE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 01810 | IRRIGATION | $ | 250,000.00 |
| 02950 | TREES, PLANTS, & GROUNDCOVERS | $ | 437,000.00 |
| 02950 | ADDITIVE 0002 GRASS PAVERS | $ | 13,000.00 |
| 02950 | ADDITIVE 0003 ADD BACKYARD TREES | $ | 20,500.00 |

Coordinate all work with jobsite superintendent and other related trades prior to those trades completing their work.
Each Subcontractor will be responsible for his own clean-up on a daily basis and put in the receptacle supplied by General Contractor.
All unloading, hoisting, and handling of materials required to complete the above work is part of this contract.
All warranties and guaranties normally furnished must be submitted prior to final payment.
This contract is inclusive of all applicable taxes and freight.
All punchlist items shall be completed within twenty-four hours from receipt of punchlist.
This contract shall become null and void if there are any additions, changes or corrections by the Subcontractor to the contents of said contract.
Retention of 10% of contract amount will be withheld from monthly payment.

AGREEMENT TO PERFORM.
The said parties for themselves, their successors, executors, administrators, and assigns, do hereby agree to the full performance of the covenants herein contained.

IN WITNESS WHEREOF, the parties to these presents have executed this agreement the day and year first above written.

Subcontractor's
State License No. 247631 11-30-97
EXPIRATION DATE

KARLESKINT-CRUM, INC.
SUBCONTRACTOR

Subcontractor's
City Business
License No. ______

By [signature]

Curt Boutwell, Vice-President
(type name and title)

Subcontractor's
Insurance Agent Morris & Garritano

Date ______

Subcontractor's
Federal I.D. No. 95-2479578

HARPER/NIELSEN-DILLINGHAM BUILDERS VENTURE, A (JV)
CONTRACTOR

Business
Classification Large Business
(I.e. Small Business, Large Business, Woman Owned Business, Disadvanted Business, etc.)

By ______

Ronald D. Harper, Managing Partner
(type name and title)

Date ______

IMPORTANT: ADDRESS ALL INVOICES TO CONTRACTOR SPECIFYING JOB NUMBER, COST CODE NUMBER AND SUBCONTRACTOR'S VENDOR NUMBER. USE INVOICE FORMAT SUPPLIED YOU WITH THIS CONTRACT ONLY.



EXHIBIT A

1 A EXHIBIT

SCHEDULE "A"

SPECIAL STIPULATIONS AND PAYMENT PROCEDURES

The following is made a part of subcontract agreement for project .**REPLACE CAPEHART MFH PHASE 3 (143 UNITS), VANDENBERG AFB, CA**

1. **Clean-Up:** During the course of his work, the Subcontractor shall keep the construction area and storage areas, used by him, free from accumulations of waste materials or rubbish. Upon completion of work, the Subcontractor shall leave the work premises in a clean, neat and workmanlike condition. If this is not performed to the satisfaction of the jobsite superintendent, Contractor shall give 24-hour notice to Subcontractor for proper performance, after which Contractor shall authorize another Subcontractor to complete the clean-up and backcharge Subcontractor accordingly.

**PAYMENT PROCEDURES**

1. **Change Orders:** Any work items considered beyond the scope of the subcontract agreement shall be brought to the attention of the jobsite superintendent immediately by the Subcontractor.

   THE SUBCONTRACTOR SHALL SUBMIT CONCURRENTLY A WRITTEN PRICE QUOTATION TO THE JOBSITE SUPERINTENDENT THAT IDENTIFIES THE ADDITIONAL COSTS (MATERIAL, LABOR, & MARK-UP). REIMBURSEMENT WILL NOT BE APPROVED FOR WORK PUT IN PLACE WITHOUT WRITTEN AUTHORIZATION IN THE FORM OF A FULLY EXECUTED SUBCONTRACT CHANGE ORDER FROM HARPER/NIELSEN-DILLINGHAM CONSTRUCTION - A JOINT VENTURE.

2. Certificate of Insurance: Prior to commencement of work on jobsite, Subcontractor shall provide certificates of insurance with proper limits of liability (Article 23 & 24 of subcontract agreement). Failure to do so will result in payment delay to Subcontractor.

3. Invoices: Subcontractor shall include complete and legible lien releases with all Subcontractor Billing Forms. All invoices, with lien releases, must be received no later than the 25th of each month. Invoices received after the 25th of each month could experience an addition delay in payment.

   NOTE:

   ON EVERY INVOICE, SUBCONTRACTOR SHALL ATTACH CONDITIONAL LIEN RELEASES FOR ALL APPLICABLE LABOR, MATERIAL SUPPLIERS, VENDORS, RENTAL ORGANIZATIONS, OR ANY OTHER PERSON, OR PERSONS, WHO HAVE CONTRIBUTED TO THIS PROJECT ON SUBCONTRACTOR'S BEHALF.

   JOINT CHECKS AND/OR VOUCHERS WILL BE ISSUED TO SATISFY ANY NOTICE OF CLAIM (per Article 20 of subcontract agreement).

   FINAL INVOICE MUST BE ACCOMPANIED WITH FULL UNCONDITIONAL RELEASE FOR ALL LABOR, MATERIAL SUPPLIERS, VENDORS, RENTAL ORGANIZATIONS, OR ANY OTHER PERSON, OR PERSONS, WHO HAVE CONTRIBUTED TO THIS PROJECT ON SUBCONTRACTOR'S BEHALF.

   INVOICES SUBMITTED WITHOUT LIEN RELEASES WILL BE RETURNED TO SUBCONTRACTOR. NO PAYMENTS WILL BE AUTHORIZED UNTIL THE ABOVE CONDITIONS ARE SATISFACTORILY COMPLETED.

**EXHIBIT A**

EXHIBIT 1 A

SCHEDULE "A"

PRELIMINARY NOTICE INFORMATION:

PROJECT TITLE: REPLACE CAPEHART MFH PHASE 3 (143 UNITS)
VANDENBERG AFB, CA

CONTRACT NO.: F04684-96-C-0046

PROJECT ADDRESS: 101 OCEANVIEW BLVD.,
VANDENBERG AFB, CA 93437

PROJECT OWNER: U.S. AIR FORCE
30 CONS/LGCOK
BLDG 7015, SECTION 2A
806 13TH STREET, SUITE D
VANDENBERG AFB, CA 93437-5226

PROJECT LENDER: NONE

# SUBCONTRACTOR'S BILLING FORM

SCHEDULE 'A'

EXHIBIT 1A

JOB NAME REPLACE CAPEHART MFH PHASE 3 (143 UNITS

JOB ADDR VANDENBERG AIR FORCE BASE, CA

CONTRACT NO. F04684-96-C-0046

PROJECT NO. XUMU 96-4003

HARPER JOB#: ND-960001-00

SUBCONTRACTOR:

KARLESKINT-CRUM, INC.

705 LAKEFIELD ROAD, UNIT H

WESTLAKE VILLAGE, CA 91361

PHONE #: (805) 496-0963 FAX#: (805) 373-7808

DATE

INVOICE NO.

HARPER VENDOR NO. KCI 001

P.O. #: N/A (IF APPLICABLE)

| COST CODE | SCOPE OF WORK | CONTRACT VALUE | % COMP | TOTAL COMPLETED TO DATE | TOTAL AMOUNT PREVIOUSLY BILLED | $ AMOUNT THIS PERIOD |
|---|---|---|---|---|---|---|
| BASE CONTRACT BREAKDOWN | | | | | | |
| 01810 | IRRIGATION | 250,000.00 | | | | |
| 02950 | TREES, PLANTS, etc. | 437,000.00 | | | | |
| 02950 | GRASS PAVERS | 13,000.00 | | | | |
| 02950 | BACKYARD TREES | 20,500.00 | | | | |
| CHANGE ORDER BREAKDOWN | | | | | | |
| C.O.# | | | | | | |
| C.O.# | | | | | | |
| C.O.# | | | | | | |
| C.O.# | | | | | | |
| C.O.# | | | | | | |
| C.O.# | | | | | | |
| C.O.# | | | | | | |
| | *TOTALS* | | | | | |
| | | (a) | (b) | (c) | (d) | (e) |

TOTAL REVISED CONTRACT AMOUNT $ ______ (a)

TOTAL AMOUNT EARNED ON CONTRACT TO DATE: ______ % (b) (c) $ ______

LESS PREVIOUS GROSS BILLINGS (INCLUDING RETENTION): (d) $( ______ )

TOTAL GROSS AMOUNT DUE THIS INVOICE: (e) $ ______

LESS ______% RETENTION HELD THIS INVOICE: $( ______ )

*NET AMOUNT DUE THIS INVOICE* $ ______

**EXHIBIT A**

SCHEDULE "B"
PAGE 1 OF 1

REPLACE CAPEHART MFH PHASE 3 *(143 UNITS)*
VANDENBERG AIR FORCE BASE, CA
CONTRACT # F04684-96-C-0046

EXHIBIT 1 A

**TRADE: 02950**

**TOTAL CONTRACT AMOUNT: $ 720,500.00**

**WORK INCLUDES BUT IS NOT LIMITED TO:**

| | | |
|---|---|---|
| Specification Section | 02811 | Irrigation |
| Specification Section | 02920 | Soil Preparation |
| Specification Section | 02930 | Lawns & Grasses |
| Specification Section | 02950 | Planting |
| Specification Section | 02970 | Landscape Maintenance |

**FURNISH AND INSTALL ALL OF THE FOLLOWING:**

a) Furnish and install all landscape and irrigation per plans and specifications.
b) Provide the specified maintenance including temporary irrigation and/or hand watering required to establish the hydroseeded areas that do not receive permanent irrigation (90 day maintenance period).
c) Site to be received at plus or minus one tenth of a foot. KCI shall amend the soil in place. There will not be any topsoil imported into the site.
d) Furnish and install precast pavers and lawn per Additive 0002.
e) Furnish and install two trees to each housing unit per Additive 0003.
f) Furnish and install all sleeving specified for irrigation.
g) Furnish and install all controllers, backflow preventers and related concrete pads and gravel.
h) This contract includes utilizing 16-6-8 Best Products in lieu of Gro Power Plus. If Gro Power Plus is requested by H/N-D prior to the landscape start, then an additive change order for $15,000 will be written to KCI for the increased cost.
i) The following items are excluded:
   1. Hardscape work (concrete sidewalks
   2. Fencing
   3. 110 volt electric
   4. Import and export of soil
   5. Water meters
   6. Tot-lot equipment

| Cost Code | Description | Amount |
|---|---|---|
| 01810 | Irrigation | 250,000 |
| 02950 | Trees, Plants, & Groundcover | 437,000 |
| 02950 | Additive 0002 Grass Pavers | 13,000 |
| 02950 | Additive 0003 Add Backyard Trees | 20,500 |

**$ 720,500**

** Prevailing wages shall be paid in accordance with General Decision Number CA960047 Modification Number 4 dated 6/07/96 for Residential and General Decision Number CA960039 Modification Number 4 dated 6/07/96 for Building, Heavy, Highway. (Attachment 1 and 2 of the Air Force Specifications).

** Payments may be withheld if As-Builts, Certified Payroll, and/or Insurance requirements are not up to date.

** Any deficiencies required to be corrected by Harper/Nielsen-Dillingham's Construction Quality Control Representative shall be done so at the Subcontractor's expense. This Subcontractor shall be responsible for providing their own quality control for their scope of work.

EXHIBIT A

# STATEMENT AND ACKNOWLEDGMENT

FORM APPROVED OMB NO. 9000-0014

Public reporting burden for this collection of information is estimated to average .15 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition and Regulatory Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0014), Washington, D.C. 20503.

EXHIBIT

## PART I – STATEMENT OF PRIME CONTRACTOR

| 1. CONTRACT NO. | 2. DATE SUBCONTRACT AWARDED | 3. SUBCONTRACT NUMBER |
|---|---|---|
| F04684-96-C-0046 | 4-2-97 | |

4. PRIME CONTRACTOR (Name, address and ZIP code)

HARPER/NIELSEN-DILLINGHAM BUILDERS INC.
A JOINT VENTURE
2241 KETTNER BLVD #300
SAN DIEGO, CA 92101

5. SUBCONTRACTOR (Name, address and ZIP code)

KARLESKINT-CRUM, INC.
705 LAKEFIELD ROAD, UNIT H
WESTLAKE VILLAGE, CA 91361

6. The prime contractor states that under the contract shown in Item 1, a subcontract was awarded on date shown in Item 2 by (Name of Awarding Firm) HARPER/NIELSEN-DILLINGHAM BUILDERS INC., A JOINT VENTURE

to the subcontractor identified in Item 5, for the following work:

02811 IRRIGATION
02920 SOIL PREPARATION
02930 LAWNS & GRASSES
02950 PLANTING
02970 LANDSCAPE MAINTENANCE

7. PROJECT

REPLACE CAPEHART MFH PHASE 3 (143 units)
VANDENBERG AIR FORCE BASE

8. LOCATION

VANDENBERG AIR FORCE BASE

| 9. NAME AND TITLE OF PERSON SIGNING | 10. BY (Signature) | 11. DATE SIGNED |
|---|---|---|
| JEFFREY A. HARPER, PROJECT MGR | | |

## PART II – ACKNOWLEDGMENT OF SUBCONTRACTOR

12. The subcontractor acknowledges that the following clauses of the contract shown in Item 1 are included in this subcontract:

Contract Work Hours and Safety Standards Act – Overtime Compensation – Construction
Payrolls and Basic Records
Withholding of Funds
Disputes Concerning Labor Standards
Davis-Bacon Act
Apprentices and Trainees
Compliance with Copeland Regulations
Subcontracts
Contract Termination-Debarment
Certification of Eligibility

13. NAME(S) OF ANY INTERMEDIATE SUBCONTRACTORS, IF ANY

| 14. NAME AND TITLE OF PERSON SIGNING | 15. BY (Signature) | 16. DATE SIGNED |
|---|---|---|
| Curt Boutwell, Vice-President | [signature] | 5-1-97 |

NSN 7540-01-151-4297
Previous edition is usable
EXPIRATION DATE: 3-31-92
1413-102
STANDARD FORM 1413 A (REV. 6-89)
Prescribed by GSA FAR (48 CFR) 53.228(e)
*U.S. Government Printing Office: 1990 — 278-636/20028

EXHIBIT 1A