No. 05-269C
(JUDGE FIRESTONE)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

HARPER/NIELSEN DILLINGHAM BUILDERS, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND APPENDIX

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 616-8254
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:

BRYAN O'BOYLE
Senior Trial Attorney
Air Force Legal Service Agency
Commercial Litigation Division

October 7, 2006

# TABLE OF CONTENTS


TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND APPENDIX . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II. Harper's Delay Claims Should Be Dismissed Because Harper Lacks Standing Under The Severin Doctrine . . . . . . . . . . . . . . . . . . . . . . 12

A. This Court Should Apply The <u>Severin</u> Doctrine Based Upon The Plain Language Of The Subcontract . . . . . . . . . . . . . . . . 14

B. To The Extent California Law Applies, The Plain Language Of The Subcontract Should Be Enforced And This Claim Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C. There Is No Extrinsic Support To Vary The Plain Terms Of This Subcontract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III. Harper's Claim To Recover Unabsorbed Overhead Costs For KCI Must Be Denied Because KCI Was Not On Standby For An Indefinite Duration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES


<u>Aleman Food Servs. v. United States</u>,
994 F.2d 819 (Fed. Cir. 1993) . . . . . . . . . . 14

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242 (1986) . . . . . . . . . . 10

<u>Bank of the West v. Superior Court</u>,
2 Cal. 4th 1254 (1992) . . . . . . . . . . 17

<u>C.B.C. Enters., Inc. v. United States</u>,
978 F.2d 669 (Fed. Cir. 1992) . . . . . . . . . . 25

<u>C. Sanchez & Son, Inc. v. United States</u>,
6 F.3d 1539 (Fed. Cir. 1993) . . . . . . . . . . 14

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317 (1986) . . . . . . . . . . 11

<u>Charles G. Williams Constr., Inc. v. White</u>,
271 F.3d 1055 (Fed. Cir. 2001) . . . . . . . . . . 22

<u>City of Oxnard v. United States</u>,
851 F.2d 344 (Fed. Cir. 1988) . . . . . . . . . . 12

<u>City of Tacoma v. United States</u>,
38 Fed. Cl. 582 (1997) . . . . . . . . . . 12

<u>Coast Fed. Bank v. United States</u>,
323 F.3d 1035 (Fed. Cir. 2003) . . . . . . . . . . 15

<u>Cray Research, Inc. v. United States</u>,
44 Fed. Cl. 327 (1999) . . . . . . . . . . 11

<u>Daly Constr., Inc. v. Garrett</u>,
5 F.3d 520 (Fed. Cir. 1993) . . . . . . . . . . 24

E.R. Mitchell Constr. Co. v. Danzig,
175 F.3d 1369 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Erickson Air Crane Co. v. United States,
731 F.2d 810 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.,
18 Cal. 4th 857 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Gardiner, Kamya & Assocs. v. Jackson,
467 F.3d 1348 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gresham, Smith & Partners v. United States,
24 Cl. Ct. 796, 802 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

HRE, Inc. v. United States,
142 F.3d 1274 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hansen v. Covell,
218 Cal. 622 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

Hawley v. Orange County Flood Control Dist.,
211 Cal. App. 2d 708 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19, 21

Interstate Gen'l. Gov't Contractors, Inc. v. West,
12 F.3d 1053 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

McAbee Constr., Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Melka Marine, Inc. v. United States,
187 F.3d 1370 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

Milovich v. City of Los Angeles,
42 Cal. App. 2d 364 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Mingus Constructors, Inc. v. United States,

812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

P.J. Dick, Inc. v. Secy. of Veterans Affairs,
324 F.3d 1364 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

Powerine Oil v. Superior Court,
27 Cal. 4th 377 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Severin v. United States,
99 Ct. Cl. 435 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Smelser v. United States,
53 Fed. Cl. 530 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Howard P. Foley Co., Inc.,
329 U.S. 64 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

United States v. Winstar Corp.,
518 U.S. 839 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Varilease Tech. Group, Inc. v. United States,
289 F.3d 795 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

West v. All State Boilers,
146 F.3d 1368 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Wickham Contracting Co. v. Fischer,
12 F.3d 1574 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**STATUTES**

The Tucker Act, 28 U.S.C. § 1491(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HARPER/NIELSEN-DILLINGHAM BUILDERS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-269C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND APPENDIX

Pursuant to Rule 56 of the United States Court of Federal Claims and this Court's order of August 16, 2007, defendant the United States hereby respectfully submits this motion for partial summary judgment, and requests that the Court grant summary judgment in its favor with respect to plaintiff Harper/Nielsen-Dillingham's ("Harper") delay claims and claims for unabsorbed home office overhead.[1] In support of this motion, we rely upon the complaint, Harper's request for equitable adjustment, the following brief, and the proposed findings of uncontroverted facts and appendix filed in this case.

---

[1] The Government previously advised the Court that it contemplated filing a motion for summary judgment as to the Government's liability for delays under United States v. Howard P. Foley Co., Inc., 329 U.S. 64 (1946), and its progeny. The Government has since concluded that genuine issues of material fact remain with respect to this issue, and that a motion for summary judgment is not appropriate at this time.

## STATEMENT OF THE ISSUES

1. Whether Harper's delay claims should be dismissed because Harper lacks standing to raise those claims on behalf of its subcontractor, Karleskint-Crum, Inc. ("KCI") pursuant to the Severin doctrine.

2. Whether Harper's claim for additional home office expenses allegedly incurred by KCI, and purportedly calculated pursuant to the Eichleay formula in the amount of $125,707 should be denied because KCI was not on standby and the Government did not suspend work on the project.

## STATEMENT OF THE CASE

I. Nature of the Case

Harper brings this action on behalf of its subcontractor, KCI, challenging a contracting officer's final decision regarding contract number F04684-96-C-0046 (the "contract"). The contracting officer denied Harper's "pass-through" claim in which KCI requested an equitable adjustment for alleged injuries arising from delays caused by another Government contractor and by weather conditions, as well as alleged injuries arising from wage classifications permitted by the contract.[2]

---

[2] This Court dismissed Harper's wage classification claims for lack of jurisdiction on July 18, 2006.

## II. Statement of Facts

The United States respectfully refers the Court to our proposed findings of uncontroverted fact, which are filed with this motion pursuant to Rule 56(h) of the Rules of the United States Court of Federal Claims ("RCFC"). In addition to our Rule 56(h) submission, a short summary of salient facts follows.

Harper/Nielsen-Dillingham Builders, Inc. ("Harper") was a joint venture to construct military housing that was formed by the Harper Construction Company and an entity called Nielsen-Dillingham. A96, A106. On August 27, 1996, contract number F04684-96-C-0046 (the "contract") was awarded to Harper for the demolition and removal of 143 existing housing units, including asbestos removal, underground tank ("UST") removal, and designated site work, as well as of construction of 143 housing units and associated site work for Military Family Housing Replacement - Phase III Project XUMU-96-4003 [hereinafter "Phase III" or "the project"]. A1, A564-65.[3] The contract required Harper to complete performance within 480 days from the date of receipt of the Notice to Proceed. A1. Harper received a notice to proceed on October 23, 1996. A47.

On or about October 31, 1996, Harper submitted a Contract Progress

---

[3] "A_" refers to a page in the appendix attached to Defendant's dispositive motion filed concurrently.

Schedule for the project to the Air Force. A48-50. The Contract Progress Schedule was used in billing, and matched Harper's intended schedule for project progress and completion. A99. According to this schedule, "Sitework," which included landscaping, among other activities, was to commence on or about August 1, 1997, and would continue through approximately February 1998. A49, 99. The Contract Progress Schedule reflects that Harper planned and intended for landscaping work to occur during Vandenberg Air Force Base's rainy season, which occurs in the months of December through March or April. A49-50, A108.

Rainy weather can have a destructive effect upon landscaping, destroying, for example, hydroseeding and container plants. A109. As a result, it is expected that a landscaper's bid take into account normal rainy weather in the particular area. A98. Indeed, when it prepared its bid summary in July 1996, KCI also predicted that at least a portion of its landscaping work would occur during the December through February time frame, i.e., during Southern California's rainy season. A109-110, A121.

On November 14, 1996, less than a month after it had received a Notice to Proceed on the project, A47, Harper discussed with the Air Force the possibility of deleting the removal of USTs from its contract. A139. Contract Modification P00001 deleted the removal of USTs from the Harper contract. A118-20. Jacobs

Engineering Services ("Jacobs") was awarded a contract to remove USTs and contaminated soils on Phase III in Harper's stead in December 1996. A143. As of April 1, 1997, the USTs had not been fully removed. A141. Removal was completed around April 15, 1997. A143.

On May 6, 1997, Harper signed a subcontract dated April 2, 1997 with KCI whereby KCI agreed to perform certain landscape and irrigation services. A51 et seq. The subcontract contains the following provisions:

> 7. Extension of Time of Completion: If the Subcontractor shall be obstructed or delayed in the prosecution or completion of the work by the neglect or default of the Contractor, the Designer, the Owner, or of any other Subcontractor employed by or dealing with the Contractor; or other contractors employed by the owner; or by the stopping of the work by employees of the Contractor, the Subcontractor, or any other Subcontractor of the Contractor through no fault of the Subcontractor, then the time, as fixed in Article 6 for the completion of the work, shall be extended for a period necessary to make up for lost time by reason on any or all the clauses aforesaid. No such extension, however, shall be made unless a claim therefor is served in writing on the Contractor within thirty (30) days of the occurrence of such delay.
>
> 8. Delays:
>
> A. In the event of any delays, entailed as a result of fault of Contractor or Owner, then Contractor shall grant Subcontractor an extension of time equal to the delay and Subcontractor shall be entitled to no other or further damages against Contractor or Owner.
>
> B. Any delays or additional work entailed as a result of weather conditions, storms, acts of

> God, delays in construction, delays by governmental bodies will not entitle the Subcontractor to any extras whatsoever.

A53.

These provisions are standard boilerplate in Harper Construction Company's contracts, and they are included on advice of counsel. A100. According to Jeffrey Harper, project manager for Phase III, A96-97, paragraph 8 of Harper's contract with KCI "means time, not money," A99.A., and paragraphs 7 and 8 contemplate shifting risks onto the subcontractor for delays outside the parties' control, a protection which is valuable to a prime contractor. A99.A. Indeed, Mr. Harper testified that he has "several times, on a lot of [Harper Construction Company's] jobs," and particularly "during the rainy season," invoked paragraphs 7 and 8 to communicate to a subcontractor that it was entitled to time, but no money, in connection with its delay claims. A100-01.

Curtis Boutwell, who signed the subcontract on behalf of KCI, A51, recognized that these provisions constituted an attempt by the prime contractor to shift risk to the subcontractor. A114-15. Mr. Boutwell, however, signed the subcontract as it stood, without crossing out the risk shifting provisions. A51, A53.

KCI's request for equitable adjustment and complaint in this case indicates

that, according to the original project schedule, landscaping fieldwork under KCI's subcontract was to start on or around July 28, 1997, and that KCI began its scheduled work on July 28, 1997, as planned.[4] A148. In other words, KCI began its landscaping activities 104 days after the removal of the USTs was completed on April 15, 1997. Compare A148 with A143.

The complaint filed by Harper on behalf of KCI in this lawsuit alleges that Jacobs and its subcontractor "took more time than called for to remove certain underground storage tanks ("USTs") and contaminated soils at the project site," and that, even though Jacobs Engineering completed its removal work 104 days before KCI started landscaping, Harper, KCI, and other subcontractors were forced to work out of sequence for an unspecified period of time. See Compl. ¶¶11, 15, 17. Harper alleges that "[t]he delay caused by the removal of the USTs had a domino effect by pushing the Project into the rainy season, further exacerbating damage to Harper/Nielsen and KCI." Compl. ¶19. Harper also

---

[4] For the purposes of only this motion for summary judgment, the Government accepts as true the allegations in Harper's complaint that are referenced in our motion. The Government reserves its right to contest these facts at trial, if appropriate, and contends that it is not responsible for any delays allegedly experienced by Harper or KCI. The Government notes that the first daily reports showing activity by KCI on the project appear to indicate that KCI began work on the project on August 4, 1997, and that Harper and various subcontractors were working on the project before that time. See A188-193.

alleges that the Government "delayed issuing final acceptance of the landscaping . . . in order to extend the running of the warranty period" on the landscaping, with the result that "additional damages occurred to the landscaping due to . . . severe weather [and] KCI was required to repair this damage." Compl. ¶ 25.

Harper's prayer for relief in this matter seeks, among other alleged damages, the recovery of "home office expenses incurred by KCI pursuant to the Eichlay [sic] formula in the amount of $125,707." Compl. at 8. Similarly, Harper's August 1, 2003 certified request for equitable adjustment ("REA") contains the claim that "KCI is entitled to $125,706.71 for the 223 calendar day delay period beyond the original completion date, less any overhead costs that may have been covered in other change Orders." A176. (emphasis supplied).

The contracting officer, however, never issued a written stop work order to Harper requiring it to suspend or stop its performance of the contract at issue in this case. A563. Indeed, Harper's REA does not identify any periods of time when the contracting officer purportedly directed a suspension of work, see A145-87, no witness has identified any such periods of suspension, see, e.g., A102, A106, A116, A117, and none of the Harper or KCI Daily Reports indicate a work

stoppage of greater than a few days at a time. See A188-562, 571.[5] Indeed, KCI's Daily Reports do not reveal that landscaping efforts ever came to a standstill for reasons other than weather.[6]

## SUMMARY OF ARGUMENT

The plain terms of the subcontract signed between Harper and KCI absolves Harper of financial responsibility to KCI for project delays. Pursuant to the Severin doctrine, because Harper had no liability to KCI for project delays under the terms of their subcontract, Harper cannot pass through any of KCI's delay claims to the Government, and the Government is entitled to summary judgment with respect to those claims. The risk shifting mechanism in the KCI subcontract is enforceable under the law of California, which governs the subcontract at issue, because California's Supreme Court has consistently pronounced that, if contractual language is clear and explicit, it dictates the meaning of the contract

---

[5] The most significant loss of work days occurred between January 5, 1998 and January 19, 1998, when Harper and KCI lost eleven working days due to inclement weather during Vandenberg's rainy season. A346.

[6] Although the Government is in possession of an extensive collection of Harper's daily reports, it is unclear whether the parties, either separately or together, possess a comprehensive collection of KCI's Daily Field Reports. The Government has relied upon KCI's Daily Field Reports where available. For days upon which KCI's Daily Reports were unavailable, the Government has relied upon Harper's Contractor's Daily Progress Reports to track KCI's work activities on the project.

without reference to extrinsic information as to the parties' subjective expectations. However, even if this Court were to consider evidence as to the parties' subjective expectations, the evidence of record merely underscores that the parties both understood and intended for the no damages for delay clause in KCI's subcontract to limit KCI's remedies against Harper to nothing more than an extension of time in which to complete the work, rather than to allow for the recovery of money damages.

As part of its claimed damages, KCI seeks to recover 223 days of unabsorbed home office overhead. However, the contracting office never issued a written order suspending work on the project at issue in this case, and, as revealed by Harper and KCI's daily reports, there was no constructive suspension of work on the project for the 223 days of delay that Harper is alleging. As such, the Government is entitled to summary judgment with respect to Harper's claims for unabsorbed home office overhead.

## ARGUMENT

### I. Standard Of Review

Summary judgment is appropriate where there are no genuine issues of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987);

RCFC 56(c). It is a "salutary method of disposition designed 'to secure the just, speedy, and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). As the court of appeals emphasized in Sweats Fashions: "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." Id. (emphasis omitted) (quoting Celotex Corp., 477 U.S. at 325). Thus, where the non-moving party fails to make a sufficient showing as to the existence of an essential element for which it bears the burden of proof, summary judgment is appropriate. Celotex Corp., 477 U.S. at 322-23.

Contract interpretation is a question of law that is generally resolvable by summary judgment. Smelser v. United States, 53 Fed. Cl. 530, 539 (2002) (citing Varilease Tech. Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002)). One begins by looking to the plain language of the agreement. Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991); Cray Research, Inc. v. United States, 44 Fed. Cl. 327, 329 (1999). The Court's first responsibility when construing a disputed contractual provision is to determine analytically whether

the meaning of the disputed contract provision is plain from the language or whether an ambiguity exists. McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996) ("We begin with the plain language."); accord Gresham, Smith & Partners v. United States, 24 Cl. Ct. 796, 802 (1991). When the provisions of a contract are clear, "the court may not resort to extrinsic evidence to interpret them." HRE, Inc. v. United States, 142 F.3d 1274, 1276 (Fed. Cir. 1998) (quoting McAbee Constr., 97 F.3d at 1435). Contract interpretation calls for an objective test, with the standard being what a similarly situated, reasonably prudent contractor would have understood the contract language to mean, not what the drafter or any other party subjectively intended the contract to mean. City of Tacoma v. United States, 38 Fed. Cl. 582, 588 (1997) (citing City of Oxnard v. United States, 851 F.2d 344, 347 (Fed. Cir. 1988)).

## II. Harper's Delay Claims Should Be Dismissed Because Harper Lacks Standing Under The Severin Doctrine[7]

The Tucker Act, 28 U.S.C. § 1491(a)(1), affords this Court jurisdiction where privity of contract exists between the party bringing suit and the United States. Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir.

[7] The Government also relies upon all argument and authority previously raised to the Court in its Motion To Dismiss, Or, In The Alternative, For Summary Judgment, and in its Reply to Harper's Opposition to that motion.

1984). Subcontractors are not in privity with the United States simply by virtue of having agreed to perform work for a contractor who is in privity with the United States. See E.R. Mitchell Constr. Co. v. Danzig, 175 F.3d 1369, 1370 (Fed. Cir. 1999). Rather, a prime contractor may pursue "pass-through" claims on behalf of its subcontractor, who would otherwise not be able to pursue such claims for lack of privity with the United States. Id.

In the special case where a subcontractor's injury arises from a contract between a prime contractor and the United States, the prime contractor must be liable to the subcontractor for the subcontractor's injury in order for the prime contractor to have standing to sue the Government for damages on behalf of the subcontractor. Severin v. United States, 99 Ct. Cl. 435, 442 (1943), cert. denied, 322 U.S. 733, 733 (1944). The burden is upon the Government to raise the Severin defense and to establish that the prime contractor is not liable to the subcontractor. E.R. Mitchell, 175 F.3d at 1370. In other words, if the Government demonstrates as a matter of law that the prime contractor could suffer no damage as a result of the subcontractor's alleged injury, the prime contractor cannot pursue a claim to recover for the subcontractor's damages. See id.

A. This Court Should Apply The Severin Doctrine Based Upon The Plain Language Of The Subcontract

A court interpreting a contract "begin[s] with the plain language of the contract." Gardiner, Kamya & Assocs. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006). Because "[a] contract is read in accordance with its express terms and the plain meaning thereof," C. Sanchez & Son, Inc. v. United States, 6 F.3d 1539, 1543 (Fed. Cir. 1993)), "[w]herever possible, courts should look to the plain language of the contract to resolve any questions of contract interpretation." Aleman Food Servs. v. United States, 994 F.2d 819, 822 (Fed. Cir. 1993); see also United States v. Winstar Corp., 518 U.S. 839, 911 (1996) ("Under ordinary principles of contract law, one would construe the contract in terms of the parties' intent, as revealed by language and circumstance.").

Harper does not allege any injury it has suffered as a result of the Government's actions. It alleges, at most, injuries to its subcontractor, KCI, which Harper asserts only "on behalf of KCI." See Compl. ¶¶ 18, 19, 21, 23, 24, 26, 27, 34, 37, 38. Harper does not, however, have standing to pursue these claims because it is not liable to KCI for KCI's alleged injuries. For this reason, the Government is entitled to summary judgment with respect to the delay claims that Harper has asserted in this case on behalf of KCI.

The subcontract between Harper and KCI provides that:

> A. In the event of any delays, entailed as a result of fault of [Harper] or [the United States], then [Harper] shall grant [KCI] an extension of time equal to the delay and [KCI] shall be entitled to no other or further damages against [Harper] or [the United States].
>
> B. Any delays or additional work entailed as a result of weather conditions, storms, acts of God, delays in construction, delays by governmental bodies will not entitle [KCI] to any extras whatsoever.

A53. Further, the subcontract provides only for an extension of time, without mention of any liability for damages, when KCI requests such an extension from Harper within 30 days of the delay, if due to "the neglect or default of . . . [the United States] . . . or other contractors employed by [the United States]." A53.

These provisions of Harper and KCI's subcontract establish that Harper is not liable to KCI for any monetary damages arising from delays caused by the weather or by other Government contractors. KCI's remedy in such circumstances is explicitly limited to an extension of time to complete the contract. This Court need look no further than the four corners of the subcontract in order to reach that conclusion. See, e.g., Coast Fed. Bank v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003).

B. To The Extent California Law Applies, The Plain Language Of The Subcontract Should Be Enforced And This Claim Dismissed

Based upon its reading of Hawley v. Orange County Flood Control Dist., 211 Cal. App. 2d 708 (1963), Harper will argue that, because its subcontract with KCI is governed by California law, paragraphs 7 and 8 of the KCI subcontract would be unenforceable, and that, notwithstanding their lack of ambiguity, the provisions would not absolve Harper of its liability to KCI for delays caused either by Harper or by the United States. This reliance upon Hawley is misplaced.

First, it cannot reasonably be said that Hawley is a definitive statement that no-damages-for-delay clauses are per se unenforceable under California law. Hawley is not a statement of California's highest court, but rather a decision by one of California's six appellate districts. As such, Hawley does not, and, indeed, cannot, overrule Hansen v. Covell, 218 Cal. 622 (Cal. 1933), in which the California Supreme Court determined that in a contract between two private parties which explicitly provided that, "the time during which the contractors may be delayed by the acts or neglect of the owner or his employees . . . or by the act of God . . . shall be added to the time of completion," id. at 627, "[t]he parties had a right to agree upon the exclusive remedy available to the contractors by reason of such delay." Id. at 628. The California Supreme Court enforced the unambiguous

contract provisions as written in Hansen, and concluded that the lower court "erred in awarding damages to the plaintiffs caused by the owner's delay." Id. The test under California law is, therefore, whether the parties expressed in their contact a clear and unequivocal intention, as evidenced by the language of the subcontract, to restrict the remedies of one of the parties. Cf. Milovich v. City of Los Angeles, 42 Cal. App. 2d 364, 378 (1941) (stating that "in the absence of a plain, unequivocal intention on the part of the contracting parties, as evidenced by the language of the contract," a court may not restrict the remedy of the contractor to that of obtaining an extension of time).

The California Supreme Court continues to endorse the fundamental proposition of contract interpretation that "[i]f contractual language is clear and explicit, it governs" without reference to extrinsic information. Powerine Oil Co. v. Superior Court, 37 Cal. 4th 377, 390 (2005) (quoting Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1262 (1992) and Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co., 18 Cal. 4th 857, 868 (1998)). The California Supreme Court has unreservedly applied that principle in its recent decisions, determining the parties' "objectively reasonable expectation" from nothing more than "a literal reading" of relevant contract documents. See, e.g., Powerine Oil, 27 Cal. 4th at 382.

Within this regime, Hawley has faded into obscurity in the decades since its issuance. To the extent Hawley suggests that the Court may, under peculiar circumstances, undertake a factual inquiry in the face of unambiguous contract terms in an attempt to avoid a harsh result for a contracting party, has never received the consideration, much less the endorsement, of the California Supreme Court. Thus, it is Hansen, and current California Supreme Court precedent requiring unambiguous contract terms to be enforced as written, not Hawley, that would dictate the interpretation of this subcontract in a California court. Pursuant to Hansen, a California court would find that Harper has no liability to KCI in this case by virtue of the unambiguous subcontract that both signed. Accordingly, the Severin doctrine precludes Harper from asserting KCI's delay claims in this Court, even applying California law.

Second, even if this Court were to conclude that Hawley constitutes the definitive law of California, its application does not render Harper liable for any of the delays that KCI claims. At most, Hawley, an opinion which is hardly a model of clarity, stands for the proposition that a party to a contract who has caused an unreasonable delay not within the contemplation of the parties may be precluded from enforcing a no damage for delay clause after a factual inquiry into the circumstances surrounding the delay and what was within the contemplation of the

parties. Hawley, 211 Cal. App. 2d at 716. Even if the Court were to consider a Hawley-style fact inquiry in this case, such an examination only supports the conclusion that the subcontract would be enforced as written.

### C. There Is No Extrinsic Support To Vary The Plain Terms Of This Subcontract

No documents contemporaneous with the subcontract at issue suggest that the parties intended anything other than to exonerate Harper from monetary responsibility for project delays according to the plain terms of paragraphs 7 and 8. Although KCI principal Curtis Boutwell, who signed the subcontract on behalf of KCI, A51, testified during his deposition that, because paragraphs 7 and 8 are risk shifting mechanisms from prime contractor to subcontractor, it would have made sense from a subcontractor's business viewpoint to strike them from the subcontract before signing, A114-15,[8] the face of the subcontract reveals that he did not make any attempt to do so. A51.

At the same time, contemporaneous documents and deposition testimony pertaining to these provisions unequivocally reveal that anticipated delays were in

---

[8] Mr. Boutwell has testified that the no-damages-for-delay clause in the KCI subcontract is "a boilerplate phrase that's contained in most contracts that's generally ignored because it's not enforceable." A115. This is an unreasonable expectation in light of the clear and express provisions of the agreement that he knowingly signed.

the contemplation of the parties at the time that the subcontract was signed. As both Mr. Boutwell and Jeffrey Harper agree, for example, Harper's October 1996 schedule and KCI's bid documents both reveal that landscaping work on the project was always contemplated to take place during Southern California's rainy season, when it was exposed to the attendant risk of weather damage. A99, A110, A121. Indeed, specifically commenting with respect to the intended impact of the no damages for delay provisions in paragraphs 7 and 8 of the KCI subcontract, Jeffrey Harper noted, by way of example, that he had previously invoked both provisions against subcontractors who attempted to obtain monetary compensation for weather delays. A100-01.

It is significant that the subcontract with its exculpatory clauses was finalized between April 2, 1997, the day after Harper complained of delays in UST removal, and May 6, 1997. A51, A141. The UST removal was finally accomplished on April 15, 1997. A143. The agreement between Harper and KCI was, therefore, executed during the period of time when both Harper and KCI were especially aware of the potential effect of the other contractors' work upon the work of the subcontract. Indeed, Mr. Boutwell concedes that difficulties in removing USTs on Phase III were at some point communicated to him by Harper. A113. Thus, when considering these clauses during the potential disruption of

work by the UST removal, both parties necessarily understood and endorsed the risk-shifting function of the clauses. A51, A99.A, A115.

In this context, even if a California court were to apply a Hawley-style analysis, the subcontract's exoneration of Harper would stand, and serve to bar it from asserting the pass-through claim that it has attempted to assert on behalf of KCI in this case. Accordingly, summary judgment in the Government's favor with respect to Harper's delay claims is appropriate under the Severin doctrine.

III. Harper's Claim To Recover Unabsorbed Overhead Costs For KCI Must Be Denied Because KCI Was Not On Standby For An Indefinite Duration

When contract performance is suspended, a contractor's home office expenses may accrue beyond the amount originally contemplated for the contract, such that the contractor's overhead costs are not recovered or are unabsorbed. West v. All State Boilers, 146 F.3d 1368, 1372 (Fed. Cir. 1998). The Eichleay formula estimates the home office expenses that may be unabsorbed due to a government-caused contract suspension, and is the only approved method to calculate such damages. Wickham Contracting Co. v. Fischer, 12 F.3d 1574, 1580-81 (Fed. Cir. 1994).

To recover unabsorbed overhead costs utilizing the Eichleay formula, a contractor must preliminarily demonstrate the following:

> (1) the government required the contractor to stand by during government caused delay of indefinite duration; and (2) while and because of standing by, the contractor was unable to take on other work.

Melka Marine, Inc. v. United States, 187 F.3d 1370, 1375 (Fed. Cir. 1999) (citing Interstate Gen'l. Gov't Contractors, Inc. v. West, 12 F.3d 1053, 1056 (Fed. Cir. 1993)); see also Charles G. Williams Constr., Inc. v. White, 271 F.3d 1055, 1058 (Fed. Cir. 2001). "The proper standby test focuses on the delay or suspension of contract performance for an uncertain duration, during which a contractor is required to remain ready to perform." Interstate Gen'l Contractors, 12 F.3d at 1058.

The elements for the standby test were further delineated in P.J. Dick, Inc. v. Secy. of Veterans Affairs, 324 F.3d 1364 (Fed. Cir. 2003). The Court emphasized that only when "exacting requirements" are satisfied is a contractor entitled to Eichleay damages. Id. at 1373. To determine standby, the court must first determine whether the contracting officer issued a written order, suspending all work for an uncertain duration, and require the contractor to remain ready to perform. Id. at 1371. If a stop work order was not issued, which is the case here, see A563, then the contractor must prove that it was on standby by showing that:

> (1) Government-caused delay was not only substantial but was of an indefinite duration;

> (2) During the delay the contractor was required to be ready to resume work on the contract, at full speed as well as immediately; and
>
> (3) Effective suspension of much, if not all, of the work on the contract.

Id. at 1371-72.

With respect to the requirement that the contractor "must show a suspension, whether formal or functional, of all or most of the work on the contract," id. at 1373, "[i]f work on the contract continues uninterrupted, albeit in a different order than originally planned, the contractor is not on standby." Melka Marine, 187 F.3d at 1376. In other words, the contractor is "not on standby when it was working on the contract and the government had not suspended all contract work." Id. at 1375; P.J. Dick, 324 F.3d at 1373.

Any claim by Harper that it or KCI was on standby during the contract period fails first and foremost because Harper cannot show effective suspension of much, if not all, work on the project for the 223 claimed days of delay, much less for a lesser, but substantial period of time. See P.J. Dick, 324 F.3d at 1371. The very suggestion that any period of standby existed is belied by Harper and KCI's own Daily Reports, which show no substantial suspension of work, aside from the

days of bad weather. See A188-562, 568-71.[9] Indeed, Harper's claim on KCI's behalf for the recovery of Eichleay damages is facially defective. Harper neither claims that the contracting officer issued a stop work order, nor that the alleged Government-caused delays caused Harper or KCI to remain on standby. A146-87. Rather, Harper alleges that the alleged Government-caused delays caused KCI and other subcontractors to work out of sequence, and that KCI's landscape work was purportedly pushed into the rainy season. Compl. ¶¶ 15, 19. Under these circumstances, there is no entitlement to the recovery of unabsorbed overhead costs pursuant to the Eichleay formula. Melka Marine, 187 F.3d at 1375. (The trial court did not err in denying Eichleay damages because there was no standby to the contractor when the work was re-sequenced.).

Since Harper is improperly seeking the recovery of Eichleay damages for the entire alleged 223 days of extended contract performance period and cannot prove standby, Harper cannot recover Eichleay damages for KCI. Daly Constr.,

---

[9] KCI may attempt to categorize the days upon which it was unable to work due to weather as days of suspension of contract work and that these days of suspension were somehow caused by Government actions that allegedly pushed project landscaping into the rainy season. Days of weather delay during Southern California's rainy season, i.e., between December through February, cannot reasonably be said to have been "Government-caused" within the meaning of P.J. Dick, however, because Harper had scheduled KCI from the beginning to perform landscaping work during that timeframe, as reflected on Harper's October 1996 schedule. See A48-50, A99.

Inc. v. Garrett, 5 F.3d 520, 522 (Fed. Cir. 1993) (contractor not entitled to Eichleay damages because it did not show that it was on standby during the claimed period of delay); see also C.B.C. Enters., Inc. v. United States, 978 F.2d 669, 675 (Fed. Cir. 1992) (contractor not entitled to Eichleay damages because there was no suspension of work, no idle time, and no uncertain periods of delay).

For all of these reasons, Harper's claim to recover KCI's unabsorbed overhead costs pursuant to the Eichleay formula is flawed, and the Government is entitled as a matter of law to summary judgment.

CONCLUSION

For the foregoing reasons, the United States respectfully requests that partial summary judgment be granted in its favor with respect to Harper's claims for unabsorbed home office overhead.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/A. Bondurant Eley
A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-8254
Fax: (202) 514-8624

Of Counsel:

BRYAN O'BOYLE
Senior Trial Attorney
Air Force Legal Service Agency
Commercial Litigation Division

Attorneys for Defendant

October 1, 2007

CERTIFICATE OF FILING

I hereby certify that on this 1st day of October 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND APPENDIX" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ A. Bondurant Eley

# APPENDIX

# INDEX TO DEFENDANT'S APPENDIX


| | PAGE |
|---|---|
| Solicitation, Offer and Award | A1 |
| Notice to Proceed | A47 |
| October 31, 1996 Contract Progress Schedule | A48 |
| KCI Subcontract | A51 |
| Excerpts from the Deposition of Jeffrey A. Harper | A94 |
| Excerpts from the Deposition of Ron Harper | A103 |
| Excerpts from the Deposition of Curtis Boutwell | A107 |
| Modification P00001 | A118 |
| Total Bid Summary Sheet | A121 |
| Memo to File, November 14, 1996 | A139 |
| Letter, April 1, 1997 | A141 |
| Memo to File, April 11, 1996 | A142 |
| Memorandum, June 10, 1998 | A143 |
| August 1, 2003 Request for Equitable Adjustment, without exhibits | A145 |
| Harper and KCI Daily Reports | A188 |
| Affidavit of Leonard Horniak | A563 |
| Specifications, Military Family Housing Replacement-Phase 3 | A564 |
| 1997 Federal Holidays | A566 |

1998 Federal Holidays A567

Additional Harper and KCI Daily Reports A568