No. 05-269C
(JUDGE FIRESTONE)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HARPER/NIELSEN DILLINGHAM BUILDERS, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 616-8254
Fax: (202) 514-8624

Attorneys for Defendant

Of Counsel:

BRYAN O'BOYLE
Senior Trial Attorney
Air Force Legal Service Agency
Commercial Litigation Division

October 1, 2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HARPER/NIELSEN-DILLINGHAM BUILDERS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-269C (Judge Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

1. On August 27, 1996, contract number F04684-96-C-0046 (the "contract") was awarded to Harper/Nielsen-Dillingham Builders, Inc. ("Harper"). A1-2.[1] The contract required Harper to complete performance within 480 days from the date of receipt of the Notice to Proceed. A1.

2. Harper was a joint venture between two companies, one of which was Harper Construction Company and the other of which was Nielsen-Dillingham. A96, A104.

3. Contract number F04684-96-C-0046 consisted of demolition and removal of 143 existing housing units, including asbestos removal, underground

[1] "A_" refers to a page in the appendix attached to Defendant's dispositive motion filed concurrently.

tank removal, and designated site work, as well as of construction of 143 housing units and associated site work for Military Family Housing Replacement - Phase III Project XUMU-96-4003 [hereinafter "Phase III" or "the project"]. A564-65.

No Damages For Delay

4. Harper received a Notice to Proceed on October 23, 1996. A47.

5. On or about October 31, 1996, Harper submitted a Contract Progress Schedule for the project to the Air Force. A48-50.

6. According to Jeffrey Harper, the Senior Vice President at Harper Construction acting in the role of project manager, A96-97, the schedule was "the Air Force['s] billing method that kind of matches [Harper's] intended schedule" and was submitted by Harper to the Air Force. A99.

7. Mr. Harper explained that, according to the October 31, 1996 schedule, "Sitework," which included landscaping, among other activities, was to commence on or about August 1997. A49, A99.

8. Mr. Harper testified that he is familiar with the kind of weather that Vandenberg Air Force Base experiences, and that Vandenberg Air Force Base experiences a rainy season in the months of "December through March." A98.

9. According to Curtis Boutwell, General Manager of KCI from January 1994 through 2002 or 2003, A108, the area immediately around Vandenberg Air

Force Base experiences a rainy season from "[g]enerally December at the early window through, say, March, April, possibly, late window." A109.

10. According to Mr. Harper, Harper's October 31, 1996 schedule, which "shows landscaping approximately beginning in August and finishing in February" contemplates landscaping work's taking place during Vandenberg's rainy season. A49-50, A99.

11. Rainy weather can have a destructive effect on landscaping. A109. Specifically, as Curtis Boutwell testified, "[d]epending on the extent of the rainy weather, it could actually destroy completely what's in the ground . . . . Severe weather could destroy hydroseed that's been hydroseeded on the ground. It can also destroy container plaints that would be planted in the ground." A109.

12. Asked whether when he expects, when he receives bids from landscapers, that their bid will take the risk of rain into account, Mr. Harper responded that "[a] certain portion is usually expected for normal rainy weather in that area." A98.

13. KCI's total bid summary sheet, prepared on or about July 1996, A109, A121, indicates: "Our work will go in 3 increments: Jan/Feb '97, May/June '97, Oct/Nov '97." A121. If KCI's work proceeded in January and February 1997, that work would have taken place during Vandenberg's rainy season. A110.

14. On November 14, 1996, less than a month after it had received a Notice to Proceed on the project, A47, Harper discussed with the Air Force the possibility of deleting the removal of USTs from its contract. A139. At some point, Harper also communicated to KCI that there was difficulty with removing USTs from the site. A113.

15. Contract Modification P00001 deleted the removal of USTs from the Harper contract. A118-20.

16. In December 1996 Jacobs Engineering Services was awarded Contract Number F41624-94-D-8115, Delivery Order No. 27, to remove underground storage tanks and contaminated soil at the Phase III project. A143.

17. As of April 1, 1997, the USTs had not been fully removed. A141.

18. Underground storage tank removal was completed around April 15, 1997. A143.

19. On May 6, 1997, Harper signed a subcontract dated April 2, 1997, with Karleskint-Crum, Inc. ("KCI"). A51 et seq.

20. The subcontract includes the following provisions:

> 7. Extension of Time of Completion: If the Subcontractor shall be obstructed or delayed in the prosecution or completion of the work by the neglect or default of the Contractor, the Designer, the Owner, or of any other Subcontractor

employed by or dealing with the Contractor; or other contractors employed by the owner; or by the stopping of the work by employees of the Contractor, the Subcontractor, or any other Subcontractor of the Contractor through no fault of the Subcontractor, then the time, as fixed in Article 6 for the completion of the work, shall be extended for a period necessary to make up for lost time by reason on any or all the clauses aforesaid. No such extension, however, shall be made unless a claim therefor is served in writing on the Contractor within thirty (30) days of the occurrence of such delay.

8. Delays:

A. In the event of any delays, entailed as a result of fault of Contractor or Owner, then Contractor shall grant Subcontractor an extension of time equal to the delay and Subcontractor shall be entitled to no other or further damages against Contractor or Owner.

B. Any delays or additional work entailed as a result of weather conditions, storms, acts of God, delays in construction, delays by governmental bodies will not entitle the Subcontractor to any extras whatsoever.

A53.

21. According to Jeffrey Harper, paragraphs 7 and 8 are part of Harper's standard boilerplate contracts. A100. According to Mr. Harper, paragraph 8 of the subcontract "means time, not money," A99.A.

22. Asked whether it was fair to say that paragraphs 7 and 8 contemplate

shifting risks onto the subcontractor, Mr. Harper responded: "Yes, in my opinion." A99.A. Asked whether that consideration is something that would be valuable to a prime contractor, Mr. Harper responded: "Well, I believe so, yes." A99.A.

23. Asked whether there was a business reason that Harper/Nielsen-Dillingham chose to include paragraphs 7 and 8 in its subcontract with KCI, Jeffrey Harper explained, "[i]t's in there, we are told, to protect us as a contractor, and that's the subcontract that we send out." A100. When asked what the paragraphs were to protect Harper from, Mr. Harper stated as follows: "Let me see what 7 and 8 said again . . . Well, 7 says extension of time. So they are trying to put some time limits on it. And 8 being the fact of–I mean acts of God would be–that would come to light, so we wouldn't be, I believe, responsible for things that might be out of everyone's control." A100. Asked whether his use of the term "responsible" meant "responsible for money damages," Mr. Harper responded, "Monetarily, yeah." A100.

24. The following exchange occurred during Mr. Harper's deposition:

> Q. Has Harper ever been presented with a claim for damage from a subcontractor and responded relying on paragraph 8, you are entitled to more time, but no money?
>
> * * *
>
> A. There has been no written claim before, but certainly in the act of conducting business, verbal.

Q. That has occurred?
A. Yes.
Q. On how many occasions . . . has that occurred?

* * *

A. Well, you get complaints all the time. People say, 'Oh, gee. It rained.' You know, 'Oh, well,' we say, 'it rained, let's get out there and get back at it.' So during the rainy season, it happens several times, I imagine, on a lot of our jobs.

Q. And your response is, you get time but no money from Harper?

A. Typically, yes.

A100-01.

25. KCI General Manager Curtis Boutwell, when asked for his understanding "as a practical matter of what paragraph 8-A was intended to accomplish," A114-15, responded: "Practically speaking, I believe it's really a clause to attempt to risk shift by the general contractor." A115. Asked whether he viewed paragraph 8 as an attempt by the prime contractor to give time, but no money, Mr. Boutwell stated that "it's a boilerplate phrase that's contained in most contracts that's generally ignored because it's not enforceable." A115. However, when asked whether from a business point of view, it might be a good idea to strike out clauses 7 and 8 from a subcontract, Mr. Boutwell stated, "Yeah. As a practical matter, I–I think they shouldn't be in any contract." A115.

Unabsorbed Home Office Overhead Claims

26. KCI's request for equitable adjustment states that "[a]ccording to the original project schedule, landscaping fieldwork under KCI's subcontract was to start on or around July 28, 1997 . . . . KCI began its scheduled work on July 28, 1997." A148.

27. Harper's Request for Equitable Adjustment contains the claim that "KCI is entitled to $125,706.51 for the 223 calendar day delay period beyond the original completion date, less any overhead costs that may have been covered in other change Orders." A176.

28. The contracting officer never issued a written stop work order to Harper requiring it to suspend or stop its performance of the contract. A563.

29. Harper's Request for Equitable Adjustment does not identify any periods of time during which the contracting officer purportedly directed a suspension of the work. A145-87.

28. No witness has identified any periods during which the contracting officer purportedly directed any suspension of the work. E.g., A102, A106, A116, A117.

29. Harper's Contractor's Daily Progress Reports indicate work activities on the project by Harper and a variety of subcontractors between Monday, July 28,

1997 and Friday, August 1, 1997. A188-92.

30. KCI's Daily Field reports indicate work activities on the project by KCI employees from Monday, August 4, 1997 through Friday, August 8, 1997, from Monday, August 11, 1997 through Friday, August 15, 1997, and Monday, August 18, 1997 through Tuesday, August 19, 1997. A193-204.

31. Harper's Contractor's Daily Progress Report for Wednesday, August 20, 1997, indicates work activities on the project by KCI employees occurring on that date. A205.

32. KCI's Daily Field reports indicate work activities on the project by KCI employees on Thursday, August 21, 1997 and Friday, August 22, 1997. A206-07.

33. KCI's Daily Field Reports indicate work activities on the project by KCI employees from Monday, August 25, 1997 through Friday, August 29, 1997. A 208-12.

34. Monday, September 1, 1997 was Labor Day. A566.

35. KCI's Daily Field Reports indicate work activities on the project by KCI employees from Tuesday, September 2, 1997 through Friday, September 5, 1997, from Monday, September 8, 1997 through Friday, September 12, 1997, from Monday, September 15, 1997 through Friday, September 19, 1997, and from

Monday, September 22, 1997 through Thursday, September 25, 1997. A213-31.

36. Harper's Contractor's Daily Progress Reports indicate work activities on the project by KCI employees on Friday, September 26, 1997, and then from Monday, September 29, 1997 through Friday, October 3, 1997. A233-236, 238. A KCI Subcontractor Daily Time Sheet dated October 2, 1997, also shows hours worked by KCI employees on the project on that date. A237.

37. Harper's Contractor's Daily Progress Reports indicate work activities on the project by KCI employees on Monday, October 6, 1997 and Tuesday, October 7, 1997. A239-40.

38. KCI's Daily Field Reports indicate work activities on the project by KCI employees from Wednesday, October 8, 1997 through Sunday, October 12, 1997, from Monday, October 13, 1997 through Sunday, October 19, 1997, from Monday, October 20, 1997 through Saturday, October 25, 1997, from Monday, October 27, 1997 through Friday, October 31, 1997, and from Monday, November 3, 1997 through Friday, November 7, 1997. A243-92.

39. Harper's Contractor's Daily Progress Reports indicate work activities on the project by a KCI employee from Monday, November 10, 1997 through Friday, November 14, 1997. A293-302.

40. Tuesday, November 11, 1997 was Veterans Day. A566.

41. KCI Daily Fields Reports indicate work activities by KCI employees on the project from Monday, November 17, 1997 through Saturday, November 22, 1997, and from Monday, November 24, 1997 through Tuesday, November 25, 1997. A303-10.

42. Harper's Contractor's Daily Progress Report for Wednesday, November 26, 1997 indicates no work activities by KCI employees on that date, with the notation that "[n]o work occured at site due to wet and muddy conditions." A311-12.

43. Harper's Quality Control Report for Friday, November 28, 1997 states that "[n]o daily was done yesterday [Thursday, November 27, 1997] as it was Thanksgiving and no work was done on site." A313.

44. The Harper's Contractor's Daily Progress Report for Friday, November 28, 1997 indicates no work activities by KCI employee on the project and bears the notation "No work on site today due to Thanksgiving Holiday." A314.

45. The Harper's Contractor's Daily Progress Report for Monday, December 1, 1997 indicates no work on the project by KCI employees on that date, but also bears the statement: "Report #267 shows KCI as having 13 journeymen for 384 hours. The correct number of hours and journeymen for KCI

is 13 journeymen with 100 hours. We have subtracted 284 hours from this reports (sic) total hours to compensate for the error." Other notations by the Air Force indicate "Contractor cont. (sic) to install irrigation laterals @ greenbelt by tot lots." A316-17.

46. KCI's Daily Field Reports indicate work activity on the project by KCI employees from Tuesday, December 2, 1997 through Thursday, December 4, 1997. A318-20.

47. Harper's Contractor's Daily Progress Report indicates no work activity on the project by KCI employees on Friday, December 5, 1997 and bears the notation "Rain today . . . Job site was vacant due to rain. No landscaping crews observed on site today." A321-22.

48. Harper's Contractor's Daily Progress Report indicates no work activity on the project by KCI employees on Monday, December 8, 1997 and bears the notation "No crews observed working today on site due to rain." A323-24.

49. Harper's Contractor's Daily Progress Report indicates no work activity on the project by KCI employees on Tuesday, December 9, 1997 and bears the notation "Although the day was sunny and clear during the morning there was no activity observed at the site . . . . Site was wet & muddy." A325-26.

50. KCI's Daily Field Reports indicate work activities on the project by

KCI employees from Wednesday, December 10, 1997 through Saturday, December 13, 1997. A327-31.

51. Harper's Contractor's Daily Progress Report for Monday, December 15, 1997 indicates no work activity on the project by KCI employees. A332.

52. KCI's Daily Field Reports indicate work activities on the project by KCI employees from Tuesday, December 16, 1997 through Wednesday, December 17, 1997. A333-34.

53. Harper's Contractor's Daily Progress Report for Thursday, December 18, 1997 indicates no work activity by KCI employees for that date, and bears the notation "Heavy rains today. No work force observed today on site . . . ." A335-36.

54. Harper's Contractor's Daily Progress Report for Friday, December 19, 1997 indicates "(1) Cont. Installing irrigation lines/piping along main green belt. (2) Cont. planting trees and shrubs along main green belt. (3) Cont. landscape maintenance . . . ." A337-38.

55. Harper's Contractor's Daily Progress Reports indicate work activities on the project by KCI employees from Monday, December 22, 1997 through Wednesday, December 24, 1997. A339-41.

56. December 25, 1997 was Christmas Day. A566.

57. Harper's Contractor's Daily Progress Reports indicate work activities on the project by KCI employees from Monday, December 29, 1997 through Wednesday, December 31, 1997. A342-345. The Daily Progress Report for December 31, 1997 bears the notation "[L]andscape crew was observed planting at green-belt (sic) area . . . ." A345.

58. Thursday, January 1, 1998 was New Year's Day. A567.

59. Harper's Quality Control Report dated "1/5/98-1/19/98" states that "[d]ue to weather, no work has been done since 12/31 on this project." A346.

60. KCI's Daily Field Report for Tuesday, January 20, 1998 indicates work activities on the project by KCI employees on that date. A348.

61. Harper's Contractor's Daily Progress Reports indicate work activities on the project by KCI employees from Wednesday, January 21, 1998 through Friday, January 23, 1998, and from Monday, January 26, 1998 through Thursday, January 29, 1998. A349-55.

62. Harper's Contractor Quality Control Report dated "1/30/98- 2/6/98" states that "[d]ue to weather, no work was done from 1/30-2/6 on this project." A356-57.

63. The Harper's Contactor's Daily Progress Report for Monday, February 9, 1998 indicates no work activity on the project by KCI employees on

that date and bears the notation that "[n]o work crews observed today due to wet site conditions." A358-59.

64. KCI's Daily Field Reports indicate work activity on the project by KCI employees from Tuesday, February 10, 1998 through Friday, February 13, 1998. A360-65.

65. Monday, February 16, 1998 was Washington's Birthday. A567.

66. Harper's Contractor Progress Report for Tuesday, February 17, 1998 indicates no work activity on the project by KCI employees. A366.

67. The Harper's Contractor Quality Control Report dated "2/18-2/191998" (sic) states that "[d]ue to rainfall, there was no work performed on site from 2/18-2/19." A367.

68. The KCI Daily Field Report for Friday, February 20, 1998 indicates work activity on the project by KCI employees on that date. A370.

69. The Harper's Contractor Quality Control Report dated "2/23-2/24/98" states that "[d]ue to the rainfall, there was no work performed on site from 2/23-2/24." A371.

70. KCI's Daily Field Reports indicate work activities on the project by KCI employees on Wednesday, February 25, 1998 through Friday, February 27, 1998, and from Monday, March 2, 1998 through Wednesday, March 4, 1998.

A373-79.

71. Harper's Contractor's Daily Progress Report for Thursday, March 5, 1998 indicates work activity on the project by KCI employees on that date. A568.

72. Harper's Contractor's Daily Progress Report for Friday, March 6, 1998 indicates no work activity on the project by KCI employees on that date. A380-81.

73. KCI's Daily Field Reports indicate work activity on the project by KCI employees from Monday, March 9, 1998 through Friday, March 13, 1998, and from Monday, March 16, 1998 through Thursday, March 19, 1998. A383-94.

74. Harper's Contractor's Daily Progress Report for Friday, March 20, 1998 indicates no work on the project by KCI employees and bears the notation that "[r]ain deterred landscaping work crews." A395-96.

75. KCI's Daily Field Reports indicate work activities on the project by KCI employees on Monday, March 23, 1998, Tuesday, March 24, 1998, and Thursday, March 26, 1998. A397-98, 401.

76. Harper's Contractor's Daily Progress Report for Wednesday, March 25, 1998 indicates no work activity on the project by KCI employees and bears the notation that "[r]ain in the morning deterred landscape work crews." A399-400.

77. Harper's Contractor's Daily Progress Report for Friday, March 27,

1998 indicates no work activity on the project by KCI employees and bears the notation that "(1) Although rain occurred today, this was not enough to cause a soggy site as indicated by Contractor. (2) No work crews observed on site today." A402-03.

78. KCI's Daily Field Reports indicate work activity on the project by KCI employees from Monday, March 30, 1998 through Thursday, April 2, 1998. A404-09.

79. Harper's Contractor's Daily Progress Report for Friday, April 3, 1998 indicates no work activity on the project by KCI employees on that date and bears the notation "no work crews on site today due to rains." A410-11.

80. KCI's Daily Field Reports indicate work activities on the project by KCI employees from Monday, April 6, 1998 through Thursday, April 9, 1998. A412-17.

81. Harper's Contractor's Daily Progress Report for Friday, April 10, 1998 indicates no work activity on the project by KCI employees on that date and bears the notation that "[s]ite conditions are soggy and wet." A418-19.

82. KCI's Daily Field Reports indicate work activity on the project from Monday, April 13, 1998 through Thursday, April 16, 1998. A421-27.

83. Harper's Contractor's Daily Progress Report for Friday, April 17,

1998 indicates no work activity on the project by KCI employees. A428.

84. KCI's Daily Field Reports indicate work activity on the project by KCI employees from Monday, April 20, 1998 through Wednesday, April 22, 1998. A431-33.

85. The Harper's Contractor's Daily Progress Reports for Thursday, April 23, 1998 and for Friday, April 24, 1998 indicate that "general landscape" was performed by KCI on both days, but report no hours of activity for KCI employees on the project. A434-37.

86. KCI's Daily Field Reports indicate work activity on the project by KCI employees from Monday, April 27, 1998 through Thursday, April 30, 1998. A439-42.

87. Harper's Contractor's Daily Progress Report for Friday, May 1, 1998 indicates that KCI performed "general landscape" on that date, but records no hours of activity for KCI personnel. A443-44.

88. KCI's Daily Field Reports indicate work activity on the project by KCI employees on Monday, May 4, 1998, and from Wednesday, May 6, 1998 through Friday, May 8, 1998. A446, A450-52.

89. Harper's Contractor's Daily Progress Report for Tuesday, May 5, 1998 indicates that KCI performed "general landscape" on that date, but records

no hours of activity for KCI personnel and bears the notation that "[n]o crews were observed on-site today." A447-48.

90. KCI Daily Reports indicate work activity on the project by KCI employees on Monday, May 11, 1998, and from Wednesday, May 13, 1998 through Friday, May 15, 1998. A453, A456-58.

91. Harper's Contractor's Daily Progress Report for Tuesday, May 12, 1998 indicates no work activity on the project by KCI employees, and bears the notation "Rain all day." A454-55.

92. KCI Daily Reports indicate work activity on the project by KCI employees from Monday, May 18, 1998 through Thursday, May 21, 1998. A459-62.

93. The Harper's Contractor's Daily Progress Reports for Friday, May 22, 1998 and Saturday, May 23, 1998 indicate work activity on the project by KCI employees. A569-70.

94. Monday, May 25, 1998 was Memorial Day. A567.

95. KCI's Daily Field Reports indicate work activity on the project by KCI employees from Tuesday, May 26, 1998 through Friday, May 29, 1998, from Monday, June 1, 1998 through Friday, June 5, 1998, and from Monday, June 8, 1998 through Thursday, June 11, 1998. A463-75.

96. The Harper's Contractor's Daily Progress Reports for Friday, June 12, 1998 and for Saturday, June 13, 1998, indicate work activity on the project by KCI employees on both of those dates. A476-77.

97. KCI's Daily Field Report for Monday, June 15, 1998 indicates work activity on the project by KCI employees on that date. A478.

98. Harper's Contractor's Daily Progress Reports indicate work activity on the project by KCI employees from Tuesday, June 16, 1998 through Saturday, June 20, 1998, and on Monday, June 22, 1998, Tuesday, June 23, 1998, and Thursday, June 25, 1998. A479-85, A488.

99. The Harper's Contractor's Daily Progress Reports for Wednesday, June 24, 1998, Friday, June 26, 1998, and Monday, June 29, 1998 all indicate that "general landscape" was performed by KCI on both days, but report no hours of activity for KCI employees on the project. A486-87, A89-92.

100. Harper's Contractor's Daily Progress Reports indicate work activity on the project by KCI employees from Tuesday, June 30, 1998 through Thursday, July 2, 1998. A493-95.

101. Independence Day was celebrated on Friday, July 3, 1998. A496-97, A567.

102. KCI's Daily Field Reports indicate work activity on the project by

KCI employees from Monday, July 6, 1998 through Thursday, July 9, 1998. A498-502.

103. Harper's Contractor's Daily Progress Report for Friday, July 10, 1998 indicates that KCI performed "general landscape" on that date, and notes that the "[l]andscape crew (2 workers) cont. planting . . . No manpower is indicated on Contractor's report." A503-04.

104. Harper's Contractor's Daily Progress Report for Monday, July 13, 1998 indicates no work activity on the project by KCI employees on that date. A505-06.

105. KCI's Daily Field Reports indicate work activity on the project by KCI employees between Tuesday, July 14, 1998 and Friday, July 17, 1998, and from Monday, July 20, 1998 through Thursday, July 23, 1998. A507-14.

106. The Harper's Contractor's Daily Progress Reports for Friday, July 24, 1998 and Monday, July 27, 1998 indicate that "general landscape" was performed by KCI on both days, but report no hours of activity for KCI employees on the project. A515-16, A571-72.

107. KCI Daily Field Reports indicate work activity on the project by KCI employees from Tuesday, July 28, 1998 through Friday, July 31, 1998, and from Monday, August 3, 1998 through Tuesday, August 4, 1998. A517-22.

108. Harper's Contractor's Daily Progress Reports indicate that "general landscape" was performed by KCI on the project from Wednesday, August 5, 1998 through Friday, August 7, 1998, and from Monday, August 10, 1998 through Thursday, August 13, 1998, but reports no hours of activity for KCI employees on those dates. A523-36.

109. KCI Daily Field Reports indicate work activity performed on the project from Friday, August 14, 1998 through Saturday, August 15, 1998, and from Monday, August 17, 1998 through Thursday, August 20, 1998. A537-42.

110. The Harper's Contractor's Daily Progress Report for Friday, August 21, 1998 indicates that KCI performed "general landscape" on that date, but reports no hours of activity for KCI employees on those dates. A543-44.

111. KCI's Daily Field Reports indicate work activity on the project by KCI employees from Monday, August 24, 1998, Wednesday, August 26, 1998, and Thursday, August 27, 1998. A545, A547-48.

112. Harper's Contractor's Daily Progress Report for Tuesday, August 25, 1998 indicates work activity on the project by KCI employees on that date. A546.

113. Harper's Contractor's Daily Progress Report for Friday, August 28, 1998 indicates that KCI performed "general landscape" on that date, but reports no

work hours for KCI employees on that date, and specifically bears a notation disputing that KCI personnel were on the site. A549-50.

114. The KCI Daily Field Report for Monday, August 31, 1998 indicates work activity on the project by KCI employees on that date. A551.

115. Monday, September 1, 1998 was Labor Day. A567.

116. Harper's Contractor's Daily Progress Report for September 12, 1997 indicates work activity on the project by KCI employees on that date. A552.

117. KCI's Daily Field Reports indicate work activity on the project by KCI employees on Monday, September 14, 1998 through Wednesday, September 26, 1998, and on Friday, September 18, 1998. A553-55, A557.

118. Harper's Contractor's Daily Progress Report for Thursday, September 17, 1998 indicates work activities on the project by KCI employees on that date. A556.

119. KCI Daily Field Reports indicate work activity on the project by KCI employees from Monday, September 21, 1998 through Friday, September 25, 1998. A558-62.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/A. Bondurant Eley
A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-8254
Fax: (202) 514-8624

Of Counsel:

BRYAN O'BOYLE
Senior Trial Attorney
Air Force Legal Service Agency
Commercial Litigation Division

Attorneys for Defendant

October 1, 2007

CERTIFICATE OF FILING

I hereby certify that on this 1st day of October, 2007, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ A. Bondurant Eley