# In the United States Court of Federal Claims

**No. 05-269C**
**(Filed: April 29, 2008)**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| **HARPER/NIELSEN-DILLINGHAM, BUILDERS, INC.,** | * | |
| | * | **Summary Judgment; Severin Doctrine; "no damages for delay" Clause; California Public Contract Code § 7102; California Government Code § 4401.** |
| **Plaintiff,** | * | |
| **v.** | * | |
| **THE UNITED STATES,** | * | |
| **Defendant.** | * | |
| * * * * * * * * * * * * * * * * * * * | * | |

*Richard W. Miller,* Kansas City, MO, for plaintiff.

*Anna Bondurant Eley,* U.S. Department of Justice, Washington, DC, with whom were *Jeffrey S. Bucholtz, Acting Assistant Attorney General* and *Director Jeanne E. Davidson,* for defendant.

**O P I N I O N**

**FIRESTONE**, Judge.

Pending before the court is the motion of the United States ("government" or "defendant") for partial summary judgment. The plaintiff, Harper/Nielsen Dillingham Builders, Inc. ("Harper" or "plaintiff"), brought this action on behalf of its subcontractor, Karleskint-Crum, Inc. ("KCI" or "subcontractor"), to recover from the government

$770,565.00 in excess costs that KCI allegedly incurred due to various delays caused by the government and because of the wage classifications established by the contract. In a prior opinion, this court dismissed the plaintiff's wage-related claims for lack of jurisdiction but found disputed issues of fact precluding summary judgment on the delay-related claims. Following discovery, the government again moved for summary judgment on the plaintiff's delay claims and in the alternative on the plaintiff's claims for unabsorbed home office overhead.[1]

The government contends that it is entitled to summary judgment with respect to the plaintiff's delay claims because, pursuant to the Severin doctrine, Harper had no potential liability to KCI for project delays under the "no damage for delay" clause in their subcontract, and therefore Harper cannot "pass through" KCI's delay claims to the government.[2] The plaintiff counters that, under California law, the "no damage for delay"

[1]The complaint also seeks recovery of expenses allegedly incurred when the government extended the one-year warranty period which began after completion of the project. See Compl. ¶¶ 23-27. The government does not seek summary judgment on this "extended maintenance period" claim, and therefore it is the only claim which survives this court's grant of summary judgment, discussed below.

For purposes of this opinion, the "delay-related" damage claims (also called "delay claims") refer to those claims associated with underground storage tank ("UST") removal, including the "weather-related delays" which the plaintiff alleges stemmed from a "domino effect" caused by the UST removal. See Compl. ¶ 19. The home office overhead costs are a subset of the delay-related claims, as discussed below.

[2]Under the Severin doctrine, a prime contractor may not sue the government for contract damages incurred by a subcontractor unless the prime contractor remains potentially liable to the subcontractor for those same damages. See Severin v. United States, 99 Ct. Cl. 435, 443 (1943), cert. denied, 322 U.S. 733 (1944).

clause does not, as a matter of law, completely immunize Harper from potential liability to KCI, and therefore the Severin doctrine does not bar its delay claims.

For the reasons that follow, the court finds that the plaintiff has failed to present sufficient evidence to support a finding that Harper is potentially liable to KCI, and therefore the plaintiff's delay-related claims are barred by the Severin doctrine.

## BACKGROUND

The background facts of this case were set forth in detail in this court's prior decision, Harper/Nielsen-Dillingham Builders, Inc. v. United States, No. 05-269, slip op. (Fed. Cl. July 18, 2006) ("Harper I"). The specific facts relevant to this decision, taken from the plaintiff's complaint and from additional exhibits filed by both parties with their respective briefs, are set forth below.

### A. Contract

On August 27, 1996, the United States Air Force awarded contract number F04684-96-C-0046 ("the contract") to Harper with an initial contract value of $17,724,714.00. The contract required complete performance within 480 days from receipt of the Notice to Proceed, which Harper received on October 23, 1996. Def.'s Summ. J. Mot. App. 1, 47. The contract called for the demolition and removal of 143 existing housing units, including asbestos removal, underground storage tank ("UST") removal, and designated site work, and construction of 143 housing units and associated site work.

**B. Subcontract**

On May 6, 1997, Harper signed a subcontract with KCI which had been awarded on April 2, 1997 ("the subcontract").[3] Compl. Ex. 1. Under the subcontract, KCI agreed to perform certain landscape and irrigation services for the total subcontract amount of $720,500.00, id., beginning on July 28, 2007 and running through January 4, 2008. Compl. Ex. 2 at 3. The subcontract between Harper and KCI contains the following clause, commonly known as a "no damage for delay" clause:

> A. In the event of any delays, entailed as a result of fault of Contractor [Harper] or Owner [the United States], then Contractor [Harper] shall grant Subcontractor [KCI] an extension of time equal to the delay and Subcontractor [KCI] shall be entitled to no other or further damages against Contractor [Harper] or Owner [the United States].
>
> B. Any delays or additional work entailed as a result of weather conditions, storms, acts of God, delays in construction, delays by governmental bodies will not entitle Subcontractor [KCI] to any extras whatsoever.

Compl. Ex. 1A at 2 ¶ 8. In addition, the subcontract contained the following provision: "All matters relating to the validity, performance, interpretation or construction of this Agreement or the breach thereof shall be governed by the laws of the State of California." Id. at 3 ¶ 27.

Jeffrey Harper ("Mr. Harper"), the project manager for Harper who negotiated the subcontract with KCI, testified in a deposition on June 21, 2007 that, in his opinion, the

[3] KCI signed the subcontract on May 1, 1997. Def.'s Summ. J. Mot. App. 112.

"no damage for delay" clause of the subcontract "means time, not money." Def.'s Summ. J. Mot. App. 97, 99.A. Mr. Harper also testified that the clause is part of the standard subcontract used by Harper and that it is "in there, as we are told [by counsel], to protect us as a contractor . . . so we wouldn't be, I believe, responsible for things that might be out of everyone's control . . . monetarily." Id. at App. 100. He testified that, "on a lot of our jobs," Harper has been verbally presented with damage claims from subcontractors to which Harper has responded by relying on the "no damage for delay" language, saying "you get time but no money from Harper." Id. at App. 100-01.

Curtis Boutwell ("Mr. Boutwell"), the general manager for KCI who signed the subcontract on behalf of KCI, Def.'s Summ. J. Mot. App. 51, testified in a deposition on June 19, 2007 that the "no damage for delay" clause is "a boilerplate phrase that's contained in most contracts that's generally ignored because it's not enforceable," and that it is "a clause to attempt to risk shift by the general contractor . . . to the subcontractor." Id. at App. 115.

**C. Alleged Delays**

Harper's progress in completing the project was delayed. According to Harper, the contractor Jacob's Engineering ("Jacobs") and its subcontractor VPS, Inc., working "for and under the control of" the government, "took more time than called for to remove [USTs] and contaminated soils at the Project site. The removal of the USTs and contaminated soil was originally to have been completed prior to January 16, 1997[, but]

was not actually completed until April 15, 1997," Compl. ¶ 11; see also Def.'s Summ. J. Mot. App. 143. Nonetheless, the UST removal was completed prior to the signing of the subcontract between Harper and KCI, which took place in May 1997.

More than three months after Jacobs completed its delayed UST removal work, KCI began its landscaping activities as originally scheduled under the subcontract, on July 28, 1997, but KCI did not substantially complete the project until August 15, 1998, 223 days later than the originally scheduled completion date of January 4, 1998. Def.'s Summ. J. Mot. App. 148. Harper alleges that as a result of the delays caused by the government and contractors under the government's control, Harper and KCI had to perform the work that had been provided in the project specifications "out of sequence." Id. at ¶ 13-15. In addition, Harper alleges that "[t]he delay caused by the removal of the USTs had a domino effect by pushing the Project into the rainy season" of late 1997 and early 1998, during which time "record-breaking rains" occurred in the area. Id. at ¶ 19-20. The plaintiff also alleges that "[t]he Air Force delayed issuing final acceptance of the landscaping on the housing units in order to extend the running of the [one-year] warranty period," and "[d]uring the delay period, additional damage occurred to the landscaping due to severe weather[, which] KCI was required to repair." Compl. ¶¶ 24-27.

Accompanying the pending motion, the government submitted a letter from Mr. Harper to Contract Administrator Lenny Horniak, dated April 1, 1997, the day before Harper awarded the subcontract to KCI, indicating that Mr. Harper was aware of the delays related to Jacobs' UST removal. Def.'s Summ. J. Mot. App. 141. As for KCI, Mr.

Boutwell confirmed in his deposition that while he anticipated that the work would "go in three increments, January/February [19]97, May/June [19]97, October/November [19]97," id. at App. 109-10, he understood that because the subcontract was not awarded until April 1997, KCI "knew [it was]n't starting landscaping in January of [19]97." Id. at App. 113.

In his deposition, Mr. Boutwell testified as follows in response to questioning:

> Q: Did there come a time when you became aware that there was any difficulty with removing underground storage tanks on [the project]?
>
> A: Yes.
>
> Q: During what time frame did you become aware of that?
>
> A: I don't remember the specific date. I know it was communicated to us by [Harper].
>
> Q: Do you think it was before the subcontract was awarded to you or after?
>
> A: I couldn't say. I'd have to look at some documents, and I'm not even sure what those would be, but . . .
>
> Q: Did you ever make a determination that the delay in removing underground storage tanks might impact your ability to landscape this . . . project?
>
> A: . . . I believe that at some point in time – and I'm not sure of the time period – that . . . we determined that that underground storage tank removal process could and would have an effect on the landscaping.

Def.'s Summ. J. Mot. App. 112-13.

**D. Miller Act Litigation**

In 1999, after the KCI subcontract was completed, KCI filed a complaint under the Miller Act, 40 U.S.C. §§ 3131-3134 (2000 & Supp. 2002), in the United States District

Court for the Central District of California, Western Division. KCI Compl. KCI sought the following damages against Harper: $68,700.00 for the balance of the subcontract that remained unpaid; and $770,565.00 for increased costs of performance to KCI due to (1) KCI being required to pay certain employees at a higher rate, and (2) delays "caused by other subcontractors whose actions and inactions are attributable to Defendant [Harper], [which] caused the Project to be incomplete when unusually harsh winter storms struck the area and further extended the completion schedule." KCI Compl. ¶ 15.

**E. Settlement Agreement**

On December 17, 1999, Harper and KCI entered into a "Settlement Agreement and Mutual Release" ("the Settlement Agreement") stipulating that KCI would dismiss its Miller Act lawsuit with prejudice. Def.'s Mot. to Dismiss App. 72-73. The Settlement Agreement further states:

> It is understood and agreed by the Parties that [Harper's] payment of $84,360.59 settles all claims KCI has on the Project, except a claim for equitable adjustment for which [Harper] shall have no liability except to cooperate in submittal as set forth in the letter agreement between the parties dated December 18, 1999 ["the December letter agreement"],[4] a copy of which is attached hereto.

Def.'s Mot. to Dismiss App. 72-73.

Two documents, both entitled "Conditional Waiver and Release Upon Final Payment (Miller Act)," were attached to the Settlement Agreement. Def.'s Mot. to

[4]The letter attached to the agreement was dated December 16, 1999 and signed by Harper's representative on December 17, 1999 and by KCI's representative on December 20, 1999. Def.'s Mot. to Dismiss App. 76-78.

Dismiss App. 74-75. Both documents contain the following provision:

> This release covers the final payment to [KCI] for all labor, services, equipment or materials furnished to the job, except for a request for equitable adjustment to be presented to the U.S. Air Force for which [Harper] has no responsibility except to furnish documents and reasonably cooperate with [KCI] in processing its request as set forth in the [December] letter agreement between [Harper] and [KCI] . . . .

Id. The December letter agreement, in turn, states:

> It is the goal of the parties to . . . allow [KCI] to pursue a Request for Equitable Adjustment against the Air Force . . . . It is the understanding of the parties as follows: . . . [Harper] will cooperate in the release of information by the Air Force regarding the Project . . . . [Harper] will supply copies of documents . . . us[ing] its best effort. Based on the additional information to be provided by [Harper] and the Air Force, KCI will either amend its Request for Equitable Adjustment or abandon it. If KCI elects to file an amended Request for Equitable Adjustment, then [Harper] will cooperate in this effort and shall certify the same if it can concur in the basis therefore[5].

Def.'s Mot. to Dismiss App. 77.

**F. Claims Presentation and Prosecution Agreement**

The Air Force contracting officer received Harper's claim on behalf of KCI on August 5, 2003, and denied the claim on March 4, 2004. Compl. Ex. 2. After the claim was denied, KCI and Harper entered into a "Claims Presentation and Prosecution Agreement" ("the Claims Agreement") in late February 2005. Pl.'s Opp. to Mot. for Summ. J. App. 22-25. The Claims Agreement states:

> The parties acknowledge that KCI has submitted its claim to [Harper] and that [Harper] remains obligated to KCI for KCI's claim to the extent of, and only to the extent, that any recovery is realized from the USA. KCI hereby releases

[5]So in original.

> [Harper] from any and all claims arising out of the Project, but specifically does not release [Harper] from liability for the Claim in the event recovery is realized, and [Harper] acknowledges liability to KCI for KCI's Claim to the extent any sums are recovered from the USA.

Id. at 24 ¶ 10. The Claims Agreement further states that it "supersedes and replaces any prior oral or written understandings of the parties with respect to the subject matter hereof and is the entire agreement between them." Id. at 25 ¶ 16.

## G. Present Litigation

### 1. Motion to Dismiss and July 18, 2006 Opinion

Harper filed a complaint in the present litigation on behalf of KCI on March 1, 2005. On January 4, 2006, the government filed a motion to dismiss or, in the alternative, for summary judgment, arguing that the plaintiff's claims regarding wage classifications were barred for lack of jurisdiction and that the plaintiff's delay claims are barred by the Severin doctrine because Harper has no potential liability to KCI for those claims. In an opinion dated July 18, 2006, this court dismissed the plaintiff's wage-related claims for lack of jurisdiction but held that disputed issues of fact existed with respect to Harper's liability to KCI which precluded a finding of summary judgment on the government's Severin argument with regard to the delay claims.[6] Harper I, No. 05-269, slip op. at 2. Specifically, this court found that "it is not clear from the present record whether KCI

[6] In its earlier motion, the government also argued, in the alternative, that portions of Harper's delay claims were barred by the doctrine of accord and satisfaction. With regard to that argument, this court found in its July 18, 2006 opinion that "there are disputed issues of fact which preclude summary judgment." Harper I, No. 05-269, slip op. at 2. However, the government's current motion does not reprise its accord and satisfaction argument.

knew of the delays in the project prior to entering into the project, whether Harper contributed to the delay, or whether the delay was unreasonable." Id. at 20. Thus, this court stated that it would "need to resolve the[se] factual questions . . . before it can make a final ruling on Harper's complete immunity from liability to KCI." Id. at 20.

In addition, this court found in Harper I that "the scope of the settlement agreement as to Harper's liability [was] ambiguous," because the "fact that Harper agreed to assist KCI in its pass-through claim against the government indicates that Harper had some liability to KCI," id. at 23, and because, "[f]rom the record before the court, it is unclear whether, at the time they entered into the settlement agreement, KCI and Harper had contemplated entering into the subsequent Claims Presentation and Prosecution Agreement to further clarify their responsibilities in the event the claim [submitted to the government] was denied." Id. at 24. As a result, this court found that the record then before it gave rise to "disputed issues of fact regarding the parties' true intent in entering into their various agreements," which precluded a finding of summary judgment on the "existence of an iron-clad release" at that time. Id.

**2. The Pending Motion for Summary Judgment**

After additional discovery to resolve those questions, on October 1, 2007, the government again moved for summary judgment with respect to the delay claims, on the grounds that the plaintiff has again failed to provide any evidence that the "no damage for delay" clause in the subcontract between Harper and KCI does not completely exonerate

Harper against liability to KCI for delay-related damages and that therefore the plaintiff's delay claims are barred by the Severin doctrine. Specifically, the government argues that the language of the "no damage for delay" clause is clear and explicit and that therefore, under California law, the court may not refer to extrinsic information as to the parties' expectations regarding Harper's liability to KCI for the delay claims. The government further argues that even if such extrinsic information may be considered, the plaintiff has presented no evidence to suggest that the clause was not intended to be enforceable in this case; instead, the government argues, the record shows that the delays were within the contemplation of the parties at the time they entered into the subcontract and that the plaintiff has set forth no facts to warrant an exception to the enforceability of the clause.

The plaintiff counters that the government has not met its burden to show an iron-bound release completely exonerating Harper from all potential liability to KCI as required by the Severin doctrine. Specifically, the plaintiff argues that because California law either precludes or at least strongly disfavors enforcement of "no damage for delay" clauses, requiring a factual inquiry (outside the bounds of a summary judgment motion) into the surrounding circumstances to determine the parties' intent, Harper remains potentially liable to KCI for delay damages in spite of the express language to the contrary in the subcontract.

Oral argument on the pending motion was heard on April 10, 2008.

## DISCUSSION

### I. Standard of Review

According to Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC"), summary judgment is appropriate "if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Contract interpretation is a question of law that is generally resolvable by summary judgment. Varilease Tech. Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002).

In order to prevail on a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of evidence to support an essential element of the non-movant's claim. Riley & Ephriam Constr. Co., Inc. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986)); George Hyman Constr. Co. v. United States, 30 Fed. Cl. 170, 173 (1993) (same standard applies to summary judgment on the Severin issue), aff'd 39 F.3d 1197 (Fed. Cir. 1994) (table). Once the moving party has satisfied its initial burden, the burden shifts to the opposing party to establish a genuine issue of material fact, "that is, evidence such that a reasonable [trier of fact] could return a verdict for the nonmoving party" with regard to that element of the claim. Anderson, 477 U.S. at 248, quoted in Long Island

Sav. Bank v. United States, 503 F.3d 1234, 1243-44 (Fed. Cir. 2007).

In meeting its burden, the non-movant "cannot rest on mere allegations, but must present actual evidence." Long Island Sav., 503 F.3d at 1244. RCFC 56(e) provides,

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

(emphasis added); see also Anderson, 477 U.S. at 248-49. Thus, the initial burden is on the government as the moving party in this case, but if that burden is met, the plaintiff, in turn, must present sufficient specific factual evidence to survive summary judgment.

## II. The Plaintiff Has Not Set Forth Specific Facts Sufficient to Overcome the Government's Evidence of Harper's Lack of Potential Liability to KCI, and Therefore the Delay-Related Claims Are Barred by the Severin Doctrine.

This case presents an unusual set of circumstances requiring application of a complicated array of interrelated factual burdens and standards of liability. In particular, to resolve the pending motion, the court must apply the burdens of proof associated with summary judgment to an assertion of the Severin doctrine, which in turn carries its own burden of proof, as a defense to liability by the government. In addition, in contrast to the typical Severin case, this case involves a "no damage for delay" clause, the enforceability of which must be determined under California law, in a subcontract between two private parties. Finally, because the government has put Harper's potential liability to KCI into doubt with specific factual evidence, Harper is in the difficult position of having to

present evidence showing its own potential liability to KCI in order to withstand the government's Severin defense. The various factual burdens and standards of liability at issue are set forth in more detail below.

**A. The Severin Doctrine at the Summary Judgment Stage**

As noted above, Harper, the prime contractor in this case, seeks an equitable adjustment on behalf of its subcontractor, KCI, for delays that Harper claims were caused by the government and other contractors under the government's control. As a general rule, "under ordinary government prime contracts, subcontractors do not have standing to sue the government under the Tucker Act, 28 U.S.C. § 1491, in the event of an alleged government breach or to enforce a claim for equitable adjustment under the Contract Disputes Act of 1978." Erickson Air Crane Co. v. United States, 731 F.2d 810, 813 (Fed. Cir. 1984); see also E.R. Mitchell Constr. Co. v. Danzig, 175 F.3d 1369, 1370 (Fed. Cir. 1999). This is because the federal government must waive its sovereign immunity to suit under the Tucker Act in order for this court to assume jurisdiction over contract claims, and "[t]he government consents to be sued only by those with whom it has privity of contract, which it does not have with subcontractors." Erickson, 731 F.2d at 813; see also Hyman, 30 Fed. Cl. at 173.

However, under the so-called "Severin doctrine," a prime contractor may "sue the government on behalf of its subcontractor, in the nature of a pass-through suit, for costs incurred by the subcontractor . . . [i]f the prime contractor proves its liability to the

subcontractor for the damages sustained by the latter, . . . a showing [which] overcomes the objection to the lack of privity between the government and the subcontractor." E.R. Mitchell, 175 F.3d at 1370; see also W.G. Yates & Sons Constr. Co. v. Caldera, 192 F.3d 987, 991 (Fed. Cir. 1999). In determining whether a prime contractor is liable to the subcontractor for purposes of the Severin doctrine, "damages are not limited to payments actually made to subcontractors but can include potential liability." C&H Commercial Contractors, Inc. v. United States, 35 Fed. Cl. 246, 257 (1996) (emphasis added) (citing Severin, 99 Ct. Cl. at 435). Thus, "a suit of this nature may be maintained only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future."[7] Hyman, 30 Fed. Cl. at 174 (emphasis added).

In raising this Severin/sovereign immunity defense, the government bears the burden "to prove that the prime contractor is not responsible for the costs incurred by the subcontractor that are at issue in the pass-through suit," E.R. Mitchell, 175 F.3d at 1370 (emphasis in original) (citing Hyman, 30 Fed. Cl. at 177), by "establishing that the prime

---

[7]The Federal Circuit has further explained that the prime contractor must be at least conditionally liable to the subcontractor for the claim. Conditional liability arises where the prime contractor is liable to the subcontractor only to the extent that the prime contractor recovers from the government – in other words, "only as and when" the prime contractor receives payment from the government. W.G. Yates, 192 F.3d at 990 ("[T]his specific type of conditional liability . . . in which the prime contractor remains conditionally liable to the subcontractor 'only as and when the former receives payment for [damages] from the Government . . . do[es] not preclude suit by the prime contractor [on] behalf of its subcontractor.'" (quoting J.L. Simmons Co. v. United States, 304 F.2d 886, 889 (Ct. Cl. 1962))).

contractor has been completely exonerated against claims brought by the subcontractor." Perry-McCall Constr., Inc. v. United States, 46 Fed. Cl. 664, 671 (2000) (emphasis added) (citing W.G. Yates, 192 F.3d at 991; J.L. Simmons, 304 F.2d at 888). To meet its burden, the government must present "an iron-bound release or contract provision immunizing the prime contractor completely from any liability to the sub." E.R. Mitchell, 175 F.3d at 1371 (emphasis added) (quoting Cross Constr. Co. v. United States, 225 Ct. Cl. 616, 618 (1980)).

As the Federal Circuit has explained,

> when the government shoulders its burden of proof under the Severin doctrine, it enjoys immunity, as a matter of law, from the pass-through suit for want of privity in the circumstances. But when the government either fails to raise its Severin/sovereign immunity defense at trial, or raises it and fails to prove it, then the claims of the subcontractor are treated as if they are the claims of the prime contractor, and any further worry about the absence of subcontractor privity with the government is extinguished.

Id. In other words, because the government carries the burden to prove its Severin defense, if the government fails to prove the absence of any potential liability, the matter is resolved in favor of the plaintiff and no further burden is placed on the plaintiff regarding the Severin issue.[8]

However, for purposes of summary judgment, if the government does meet its Severin burden of showing the absence of evidence of any potential liability of the prime

[8]Of course, the government may make subsequent attempts to meet its own burden under Severin, as it has done here in its multiple dispositive motions.

to the subcontractor, the plaintiff can only overcome that showing by pointing to specific evidence of its own potential liability to the subcontractor. See Anderson, 477 U.S. at 428-29; Hyman, 30 Fed. Cl. at 173. Thus, the plaintiff does bear a burden to present evidence of its potential liability in a situation where, as here, the government has put forth specific evidence to show that the plaintiff's potential liability has been extinguished.[9] This burden on the plaintiff is especially important at the summary judgment stage, where a determination against the plaintiff on the Severin issue will bar the case from proceeding any further.

Here, the government has moved for summary judgment on the issue of its Severin defense, arguing that Harper lacks the requisite potential liability to KCI for damages arising out of its delay-related claims. As noted above, under the Severin doctrine, the government carries the burden of proving the absence of Harper's potential liability by presenting "an iron-bound release or contract provision immunizing the prime contractor completely from any liability to the sub." E.R. Mitchell, 175 F.3d at 1371. However, in order to survive summary judgment, once the government has met its Severin burden, the plaintiff must put forth specific evidence sufficient to convince a reasonable trier of fact that it could overcome the Severin defense if the evidence presented is later proved. Hyman, 30 Fed. Cl. at 173, cited in E.R. Mitchell, 175 F.3d at 1371; see also RCFC 56(e).

---

[9]The court notes that, because of the emphasis of Severin on potential liability, the plaintiff does not have the burden of proving that the prime contractor would be adjudged liable to the subcontractor in order to overcome the Severin defense.

**B. The Government Met Its Severin Burden to Demonstrate the Absence of Evidence of Harper's Potential Liability to KCI, in the Form of the Iron-Bound "No Damage for Delay" Clause in the Subcontract.**

Now that the record with regard to Harper's potential liability to KCI for damages, particularly with regard to the formation of the subcontract, has been more fully developed by discovery following the government's motion to dismiss, the court finds that the government has met its burden under Severin to demonstrate the absence of evidence of any potential liability. The court finds that the unambiguous "no damage for delay" clause in the subcontract is enforceable, as a matter of law, as an "iron-bound" bar against liability for delay-related damages under California law, which does not allow exceptions to such clauses except as provided in California Public Contract Code ("Cal. Pub. Cont. Code") § 7102 (West 2004). Cal. Pub. Cont. Code § 7102, in turn, does not apply to subcontracts between private parties under a contract involving the United States, such as the one at issue in this case.

In addition, the court finds that even assuming, arguendo, that exceptions to enforceability of the "no damage for delay" clause could be found under California law, the government has pointed to specific evidence to show that the subcontract in this case would not qualify for such an exception. In particular, the government has identified evidence that the delays complained of in this case occurred prior to the subcontract award and were therefore within the contemplation of the parties at the time they entered into the subcontract. Despite having had an opportunity for discovery on precisely this

subject, the plaintiff has failed to put forth any factual support casting doubt on the existence or clarity of the iron-bound "no damage for delay" provision in the subcontract, and therefore summary judgment in favor of the government on the Severin issue is now appropriate.[10]

**1. Under California Law, "No Damage for Delay" Clauses Are Enforceable to Bar Recovery of Damages Outside of the Cal. Pub. Cont. Code § 7102 Context, So the Subcontract Immunizes Harper from Any Liability to KCI for Delay-Related Damages.**

The government asserts that under the subcontract between Harper and KCI, Harper was never liable to KCI for any delays, relying on the express language of the "no damage for delay" clause in the subcontract between KCI and Harper, which limited

---

[10]In Harper I, this court found that the facts surrounding the "no damage for delay" clause in the subcontract were unclear and therefore the interpretation of the Settlement Agreement and the Claims Agreement, to the extent that they shed light on the question of Harper's potential liability to KCI for damages, were at issue. However, in its pending motion for summary judgment, the government argues that the intervening discovery has yielded no facts to support Harper's potential liability to KCI under the subcontract and the "no damage for delay" clause therein. Therefore, the government contends that, from the signing of the subcontract forward, Harper was completely exonerated of all liability to KCI for damages for delay, and liability could not be revived by the Settlement Agreement nor by the subsequent Claims Agreement. Hyman, 30 Fed. Cl. at 177-78 ("[W]hen the subcontract contains a clause completely exonerating a prime contractor from liability to its subcontractor for the damage complained of, suit cannot be maintained by the prime contractor against the Government," (quoting J.L. Simmons, 304 F.2d at 888-89), and the parties may not "subsequently . . . 'revive' (or . . . create a new) liability by mutual agreement").

As discussed below, now that the facts surrounding the "no damage for delay" clause in the subcontract have been further developed, the court finds that the government is correct that the clause completely immunized Harper from liability to KCI for delay damages from the signing of the subcontract forward. As a result, neither the Settlement Agreement nor the Claims Agreement may be considered, because each would be an impermissible attempt to "subsequently revive liability by mutual agreement." Hyman, 30 Fed. Cl. at 177.

KCI's remedy for delays to time extensions instead of monetary damages. The government argues that the unambiguous plain language of the "no damage for delay" clause clearly precludes any liability of Harper to KCI for any delays, citing Federal Circuit and California Supreme Court precedent to the effect that "[w]herever possible, courts should look to the plain language of the contract to resolve any questions of contract interpretation." Aleman Food Servs. v. United States, 994 F.2d 819, 822 (Fed. Cir. 1993); see also, e.g., Coast Fed. Bank v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) ("Where . . . the provisions of the Agreement are phrased in clear and unambiguous language, they must be given their plain and ordinary meaning, and we may not resort to extrinsic evidence to interpret them."); Powerine Oil Co. v. Superior Court, 37 Cal. 4th 377, 390 (Cal. 2005) ("If contractual language is clear and explicit, it governs." (internal quotation omitted)).

With regard to "no damage for delay" clauses in particular, the government argues that under California law, such clauses are enforceable in contracts between two private parties under a federal contract, such as the subcontract in this case. The government notes that the California Supreme Court has held that, in a contract between two private parties containing a clause providing for extensions of time as a remedy for delays caused by "acts or neglect of the owner or his employees . . . or by the act of God," "[t]he parties had a right to agree upon the exclusive remedy available to the contractors by reason of such delay." Hansen v. Covell, 218 Cal. 622, 627-28 (1933) (concluding that the lower

court "erred in awarding damages to the plaintiffs caused by the owner's delay").

Moreover, the government argues that outside of the context of Cal. Pub. Cont. Code § 7102, which applies to "construction contracts of public agencies and subcontracts thereunder," neither the California legislature nor the California Supreme Court has set forth any exceptions to enforceability of express "no damage for delay" clauses in agreements between private parties.[11] Because the United States is not a "public agency" as defined in California Government Code ("Cal. Govt. Code") § 4401 (West 1995), the government contends, Cal. Pub. Cont. Code § 7102 does not apply to the subcontract at issue in this case.[12]

In addition, the government claims that Hawley v. Orange County Flood Control, 211 Cal. App. 2d 708, 713 (Cal. 4th Dist. Ct. App. 1963), on which the plaintiff relies heavily for the proposition that delay damage clauses are enforced sparingly if at all in California, is not controlling by virtue of the fact that it was decided by one of

[11] Cal. Pub. Cont. Code § 7102 provides, in relevant part:

> Contract provisions in construction contracts of public agencies and subcontracts thereunder which limit the contractee's liability to an extension of time for delay for which the contractee is responsible and which delay is unreasonable under the circumstances involved, and not within the contemplation of the parties, shall not be construed to preclude the recovery of damages by the contractor or subcontractor.

(emphasis added).

[12] Cal. Govt. Code § 4401 provides that "'[p]ublic agency' . . . includes the State, its various commissions, boards and departments and any county, city, district or state agency authorized to enter into contracts for public work."

California's appellate district courts rather than the California Supreme Court and it has "faded into obscurity in the decades since its issuance."[13] Def.'s Summ. J. Mot. at 17-18. In the alternative, the government argues that even if Hawley is good law in California, it does not make "no damage for delay" clauses per se unenforceable. Instead, the government contends that Hawley stands at most for the proposition that, in the limited circumstances in which a party to a contract has caused an unreasonable delay that was not within the contemplation of the parties, that party may be precluded from enforcing a "no damage for delay" clause after a factual inquiry, in order to avoid a harsh result. See Hawley, 211 Cal. App. 2d at 715-17. In light of that standard, the government argues that Harper has failed to set forth specific facts to counter the government's evidence that the delays complained of in this case were within the contemplation of the parties at the time they entered into the subcontract.

The plaintiff, on the other hand, argues that under California law, the "no damage for delay" clause in the subcontract in this case would be unenforceable. The plaintiff

---

[13] Hawley involved a "no damage for delay" specification in a contract between a public agency and a private contractor. 211 Cal. App. 2d at 712. The court surveyed the treatment of such clauses in California and other states, as well as in federal cases, finding the following factors to be significant in determining whether the clauses should be enforced: 1) whether the delay was within the contemplation of the parties; 2) whether the delay was caused by the contractee (possibly amounting to active interference or breach of contract); and 3) whether the delay was unreasonable. Id. at 715-17. The Hawley court held that "[t]he question of whether or not the delay damage clause was intended by the parties to prevent recovery . . . [is] a factual question requiring the weighing of all facts presented," and reversed the judgment of nonsuit by the trial judge, who had found that the clear language of the delay damage clause precluded him from "weighing and considering all the factors" listed above. Id. at 717.

argues that in California, these clauses are not only disfavored but, under Cal. Pub. Cont. Code" § 7102, are not enforceable at all in public contracts, including those involving the United States.[14] As noted above, Harper relies heavily on Hawley, 211 Cal. App. 2d at 708, for the proposition that California courts go to great lengths to avoid application of "no damage for delay" clauses. As such, Harper contends that, as a matter of law, it could have been liable to KCI, despite the unambiguous "no damage for delay" clause in their subcontract. In addition, Harper argues that the parties to the subcontract did not intend to be bound by the "no damage for delay" clause therein, citing statements from officers of Harper and KCI to the effect that "it was understood at all times that KCI's Request for Equitable Adjustment would be submitted . . . by Harper as a 'pass-through' claim," and that "whether [the delay damage provisions in the subcontract] were enforceable under California law was never determined." Pl.'s Opp. to Mot. for Summ. J. App. 2 (Aff. of Jeffrey A. Harper); see also id. at App. 28 (Aff. of Curtis Boutwell); Def.'s Summ. J. Mot. App. 115 (Dep. of Curtis Boutwell).

The court agrees with the government that, outside of the context of contracts with state and local agencies under Cal. Pub. Cont. Code § 7102, California law does not provide exceptions to the enforceability of clear and explicit "no damage for delay"

[14]The plaintiff apparently holds this view notwithstanding the lack of any reference to the United States in the definition of "public agency" in Cal. Govt. Code § 4401, noted above. See Pl.'s Opp. to Mot. for Summ. J. at 8 ("Section 7102 applies to the Harper/KCI Subcontract since it arises out of a public project . . .").

clauses in contracts between private parties, including, as here, in subcontracts under contracts involving the United States. Courts in other states have recognized a number of exceptions to enforceability of "no damage for delay" clauses, such as in the event of fraud, misrepresentation, bad faith, active interference, and/or other material breach of contract, as well as for unreasonable delay and/or non-contemplation by the parties. See 5 Bruner & O'Connor Constr. Law §§ 15:75-80. However, in California, the only exception to enforceability of such clauses has been codified at Cal. Pub. Cont. Code § 7102.[15] Cal. Pub. Cont. Code § 7102 does not apply to the subcontract in this case because the federal government is clearly not a "public agency" as defined in Cal. Govt. Code § 4401. Moreover, the California Supreme Court last addressed the issue of enforceability of "no damage for delay" clauses in construction contracts between two private parties in 1933, when it reversed an award of damages on the grounds that "[t]he parties had a right to agree upon the exclusive remedy available to the contractors by

[15]Though Cal. Pub. Cont. Code § 7102 was enacted in 1984, more than twenty years after Hawley was issued in 1965, it incorporated several of the factors mentioned in Hawley (whether the contractee was responsible for the delay, whether the delay was unreasonable under the circumstances, and whether the delay was within the contemplation of the parties) into the Code. See Hawley, 211 Cal. App. 2d at 715-17. Moreover, like the public improvement project for the flood control district at issue in Hawley, see id., Cal. Pub. Cont. Code § 7102 applies to construction contracts involving state and local agencies. Thus, the court finds that Hawley has been superseded by Cal. Pub. Cont. Code § 7102. See generally 5 Bruner & O'Connor Constr. Law § 15:75 ("Given the common law's traditional aversion to harsh forfeiture provisions in contracts, courts have carved out significant exceptions to their enforceability, and some state legislatures have gone farther to enact statutes that limit severely or bar entirely the enforceability of 'no damage for delay' clauses." (footnotes omitted) (citing, inter alia, Cal. Pub. Cont. Code § 7102)).

reason of . . . delay." Hansen, 218 Cal. at 627-28. Thus, the court finds that under California law, the express and unambiguous "no damage for delay" clause in the subcontract in this case provides an iron-bound bar against any potential liability on the part of Harper to KCI for all of its delay-related damages.[16]

**2. Even Assuming, Arguendo, that California Law Might Allow Exceptions to Enforceability of the Delay Damage Clause Here, the Government Has Demonstrated that the Delays Complained of in This Case Were Within the Contemplation of the Parties.**

Even assuming, arguendo, that California law allowed for exceptions to the enforcement of "no damage for delay" clauses outside of the state and local "public agency" context of Cal. Pub. Cont. Code § 7102, somehow extending to subcontracts between private parties under a federal contract, the court finds that the government has successfully demonstrated a lack of evidence to indicate that the subcontract clause in this case would qualify for such an exception. In particular, the government points to evidence that the delays complained of in this case, arising from the UST removal by Jacobs, occurred before KCI entered into its subcontract with Harper, and therefore the later start date had to be within the contemplation of the parties. In such circumstances,

[16]Contrary to the plaintiff's contention, the statements of Mr. Harper and Mr. Boutwell regarding the parties' intent with regard to enforcement of the "no damage for delay" clause are not relevant here. Both the Federal Circuit and the California Supreme Court have repeatedly held that "[w]here, as here, the provisions of the Agreement are phrased in clear and unambiguous language, they must be given their plain and ordinary meaning, and we may not resort to extrinsic evidence to interpret them." E.g., Coast Fed. Bank, 323 F.3d at 1038 (quoting McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996)); Powerine Oil, 37 Cal. 4th at 390 ("If contractual language is clear and explicit, it governs." (internal quotations omitted)).

the government contends that application of any exception in California law would be precluded.[17] See Cal. Pub. Cont. Code § 7102; Hawley, 211 Cal. App. 2d at 714-16.

Specifically, the government presented evidence that Harper understood that KCI would be starting after the UST-related delays before it entered into the KCI subcontract, as shown by a letter from Mr. Harper complaining of the delays related to Jacobs' UST removal, dated April 1, 1997, the day before Harper awarded the subcontract to KCI. Def.'s Summ. J. Mot. App. 141. Moreover, the government showed that the subcontract was signed by both parties by May 6, 1997, three weeks after the UST removal was completed – in spite of the delays – on April 15, 1997. Id. at App. 51, 143.

As to whether KCI knew of the UST-related delays, the government presented evidence that the problem was communicated to KCI's Mr. Boutwell at some point by Harper, and while Mr. Boutwell did not state that he was told about the UST removal problems before signing the subcontract with Harper, he also gave no indication that he

[17] By its terms, Cal. Pub. Cont. Code § 7102 bars enforcement of "no damage for delay" clauses only when all three of the following conditions are met: 1) the contractee is responsible for the delay; 2) the delay is unreasonable under the circumstances involved; "and" 3) the delay is not within the contemplation of the parties. Therefore, if, as here, any of those three criteria is not met, the exception does not apply. See generally Shank/Balfour Beatty v. Metro. Water Dist. of S. Cal., 2007 WL 2052133 (Cal. 2d Dist. Ct. App. 2007, Not Reported in Cal. App. 2d) (noting that, as initially introduced, Cal. Pub. Cont. Code § 7102 would have applied to all delays "which are the responsibility of the public entity," but that it was modified to its present form in response to concerns that "public entities should not be required to pay damages for anticipated delays," (emphasis in original), and stating that "[t]he bill was therefore modified to apply only in cases of delays caused by the contracting public entity when the delay was unreasonable and not anticipated by the parties." (emphasis added) (citing Cal. Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1837 (1983-1984 Reg. Sess.) as amended Jan. 13, 1984)).

learned about the delays only after entering into the subcontract. Id. at App. 113 (Mr. Boutwell's deposition testimony that he "couldn't say" whether the UST removal delays were communicated to him by Harper before or after KCI was awarded the subcontract). Most importantly, however, KCI knew upon entering the subcontract in May 1997 that it was scheduled to start work (and, in fact, it did start work) on July 28, 1997, id. at App. 148, 150, and if it had been concerned that this start date could mean it would face difficult weather or other problems, KCI could have negotiated different terms to protect its interests. However, KCI did not do so.

Thus, the government has pointed to specific evidence to show that the delays complained of in this case were within the contemplation of the parties at the time they entered into the subcontract. As a result, even assuming, arguendo, that California law might somehow extend the exception contemplated in Cal. Pub. Cont. Code § 7102 to the subcontract between private parties under a federal contract in this case, this showing by the government closes the door on any potential liability of Harper to KCI for delay damages, thereby satisfying the government's Severin burden, unless the plaintiff can point to specific facts which put the government's evidence in doubt. See Anderson, 477 U.S. at 248, quoted in Long Island Sav., 503 F.3d at 1243-44; see also RCFC 56(e).

Here, Harper has not met its burden. The court finds that, despite an opportunity for discovery on precisely this subject, Harper has failed to produce any facts to counter the evidence presented by the government of the express and unambiguous "no damage

for delay" clause in the subcontract, nor has it produced any evidence that, even if California law allowed for exceptions to the enforcement of delay damage clauses outside of the Cal. Pub. Cont. Code § 7102 context, the circumstances in this case would allow for an exception.

In light of the government's specific evidence regarding what the parties knew or had occasion to know about the UST-related delays, it is not enough for the plaintiff to rely on the possible existence of exceptions to enforcement of "no damage for delay" clauses in California law generally. Instead, to keep its potential for liability to KCI afloat in the face of the government's evidence, Harper had to submit specific evidence that, if accepted, placed the existence or clarity of the "no damage for delay" clause cited by the government into doubt, or alternatively showed that the delays complained of were not within the contemplation of the parties.[18]

Although the plaintiff's complaint states that "KCI was not aware of the delay in the removal of the USTs at the time it entered into its Subcontract with Harper/Nielsen,

---

[18]In its prior opinion, this court found that "the government's contention that Harper was obligated to not only identify that there are defenses to the 'no damages for delay' clause, but was also obligated to establish that KCI could defeat those defenses to avoid summary judgment goes too far." Harper I, No. 05-269, slip op. at 20. However, the record has been more fully developed since Harper I, and the government now raises specific factual allegations that foreclose the possibility of any exceptions (or "defenses," in the language of Harper I) to the "no damage for delay" clause in this case. As a result, the court finds that the plaintiff must now counter that evidence with specific evidence of its own and may no longer rest on the theoretical, legal possibility of exceptions to enforceability of such clauses in general. Cf. id. ("[I]t is not clear from the present record whether KCI knew of the delays in the project prior to entering into the project, whether Harper contributed to the delay, or whether the delay was unreasonable.").

nor was KCI aware of the delay when it began working on the project," Compl. ¶ 12, the plaintiff did not introduce any evidence to support this allegation. In its response to the government's summary judgment motion, no affirmative denial of KCI's pre-subcontract knowledge of the delays by Mr. Boutwell or any other KCI employee is cited. See, e.g., Pl.'s Opp. to Mot. for Summ. J. at 2-9, App. 27-29 (Aff. of Curtis Boutwell).

Rule 56(e) of the RCFC provides that,

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In other words, when the moving party has met its initial burden under Rule 56, the nonmoving party must "meet proof with proof," see, e.g., Hopkins v. Arkansas, 2007 WL 2996842, *2 (E.D. Ark. 2007), and mere "[a]ttorney argument asserting a genuine issue of material fact is insufficient to oppose successfully a motion for summary judgment." Delmarva Power & Light Co. v. United States, 79 Fed. Cl. 205, 217 (2007) (citing Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.3d 831, 836 (Fed. Cir. 1984)); Ferring B.V. v. Barr Labs., 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment."). Here, the unsupported allegations in the complaint and the attorney argument in the plaintiff's opposition brief are insufficient to overcome the evidence put forth by the government that the delays complained of were within the contemplation of the parties when they entered into the subcontract.

Thus, the government established that the subcontract in this case contained an unambiguous "no damage for delay" clause completely immunizing Harper from liability for delay damages to KCI and established that KCI would not be entitled to any exception under California law, even if one could be found to apply, because the delay complained of, which occurred prior to contracting, was not outside the contemplation of the parties. The plaintiff has not presented sufficient evidence to challenge these conclusions, despite an opportunity for discovery for that purpose. The plaintiff has not raised any disputed issues of material fact casting doubt on KCI's "complete exoneration" of Harper from liability for damages for delay under the terms of their subcontract. Accordingly, summary judgment in favor of the government on the Severin issue is now appropriate.[19]

---

[19]In its summary judgment motion, the government also argues that the plaintiff's claims for unabsorbed home office overhead costs must be denied because KCI was not on standby for an indefinite duration, thereby precluding an award of Eichleay damages. See P.J. Dick Inc. v. Principi, 324 F.3d 1364, 1371-72 (Fed. Cir. 2003). The Eichleay formula estimates the cost of unabsorbed home office overhead that may be reimbursed as a result of government-caused delay, and it is "the only means approved" for calculating recovery for such costs. Melka Marine, Inc. v. United States, 187 F.3d 1370, 1374-75 (Fed. Cir. 1999) (citing E.R. Mitchell, 175 F.3d at 1372); see also Wickham Contracting Co. v. Fischer, 12 F.3d 1574, 1580-81 (Fed. Cir. 1994). The plaintiff counters that the facts relied upon by the government for this argument have been denied by the plaintiff and that it was only by virtue of the delay caused by the government that KCI's work continued into a period during which it experienced weather-related delays.

Because the court finds, as discussed above, that the plaintiff has failed to meet its summary judgment burden with regard to the Severin doctrine, thereby barring all of its delay-related claims, there is no need to separately consider the government's argument seeking to dismiss the unabsorbed home office overhead claims, which stem from the same allegations of government-caused delay.

However, even if the court were to reach the Eichleay issue, the government is correct that the plaintiff has not produced sufficient evidence to make the required showing that KCI was on standby for any substantial period of time. See P.J. Dick, 324 F.3d at 1371-72. Instead, the plaintiff has merely stated, without any evidentiary support, that the Defendant's Proposed Findings of Uncontroverted Facts ("DPFUF") related to the Eichleay issue "are not

## CONCLUSION

In light of the foregoing, the court **GRANTS** the defendant's motion for partial summary judgment with regard to the plaintiff's delay-related claims. The parties shall submit a joint status report on or before **May 27, 2008**, proposing a schedule for resolving the remaining "extended maintenance period" claim. Upon receipt of the status report, the court will schedule a status conference to discuss the next steps in the litigation.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

uncontroverted and are denied." Pl.'s Opp. to Mot. for Summ. J. at 9. The plaintiff repeatedly "admit[s]" that the DPFUF reflect what Harper's "Contractor's Daily Progress Reports" (submitted by the government) state, but it nonetheless "denies" the evidence in those reports "since there is no substantiating back-up." Pl.'s Resp. to DPFUF at 17-43. However, the plaintiff presents no "substantiating back-up" of its own to demonstrate that it was, in fact, on standby status for a substantial period of time. Id. Because such a showing is a requirement for recovery of Eichleay damages, P.J. Dick, 324 F.3d at 1371-72, the plaintiff's repeated assertion that "[i]t was only the action of the Government that threw the Plaintiff into working in this time frame that caused the damages," Pl.'s Opp. to Mot. for Summ. J. at 10; see also Pl.'s Resp. to DPFUF at 13-43, is not sufficient to constitute a genuine issue of material fact with regard to KCI's claims for unabsorbed home office overhead.