**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| HARPER/NIELSEN-DILLINGHAM BUILDERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-269 |
| | ) | |
| v. | ) | (Firestone) |
| | ) | |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR CONTINUANCE

Defendant hereby respectfully submits this response to plaintiff Harper/Nielsen-Dillingham Builders, Inc.'s ("Harper") motion for a continuance of the trial date in this matter. For the reasons set forth in detail below, defendant opposes a continuance in this matter.

This matter has been pending since March 1, 2005, with discovery having been complete since September 27, 2007. On April 28, 2008, this Court granted the Government's motion for summary judgment with respect to Harper's claims for alleged project delays associated with the removal of underground storage tanks and weather upon the basis of the Severin doctrine and an unambiguous "no damages for delay" clause contained in the subcontracting agreement between Harper and its landscaper, Karleskint-Crum, Inc. ("KCI"). The Court's grant of summary judgment did not implicate Harper's separate claim for "extended maintenance," which, in relevant part, consists of allegations that the Government unreasonably refused to accept certain project landscaping, and thus caused KCI to expend additional time and labor on the project. Compl. § C, ¶¶ 23-27. Pursuant to Rule 54(b) of the Rules of the Court of Federal Claims, this Court decoupled Harper's extended maintenance claim from the dismissed delay claims so that trial in this matter might be set without further delay, and with no prejudice to Harper's right to seek Federal Circuit review of the dismissal of its unrelated delay claims.

In compliance with the requirements of Rule 13 of Appendix A of the Rules of the Court of Federal Claims, the Government has supplied plaintiff's counsel with an exhibit and witness list, as well as a copy of all exhibits that the defendant intends to use at trial. See Exhibit A. The Government is fully prepared to proceed with pre-trial briefing and other submissions, and will be ready to proceed to trial according to the schedule established by this Court. Government counsel was surprised to learn in the late afternoon of August 15, upon contacting Harper's counsel for a Rule 13(c) conference, not only that Harper was unprepared to proceed and would not be providing any Appendix A materials, but that Harper had already informally sought a continuance from the Court by letter of August 11.[1] For the reasons set forth in detail below, no continuance of the trial date is warranted.

Harper makes clear in its motion that it does not want to proceed to trial because the "major damages" in its case have been dismissed, and because it "is confident that [the dismissal of its delay claims by] this Court will be overturned by the Court of Appeals . . . ." Pl.'s Mot. at 1. Neither of these complaints, however, excuses Harper from having to comply with its obligations pursuant to Appendix A, much less do they justify the continuance of the trial of a matter that has been pending since early 2005.

Harper purports to marshal the consideration of "judicial economy," the possibility of "decisions which are contradictory," and "a great deal of extra time and duplicative efforts . . . ." in support of its motion for continuance, and complains–without the benefit of even a single concrete example–that "there are many documents and witnesses that either would not be needed

[1] Defendant strongly objects to the plaintiff's counsel's use of informal communications with the Court to "seek[] a ruling" on any issue in this case. See Pl.'s Mot. at 1-2.

in the trial that is presently scheduled or would only be needed because of the Court's ruling . . . ." See id. Harper neglects to acknowledge, of course, that, if its extended maintenance claim is inextricably intertwined with its delay claims, the proper disposition of this matter does not lie in a continuance, but rather in a grant of summary judgment in the Government's favor upon Severin grounds. We presume, however, that the Court correctly determined when it set a trial date in this matter that Harper has an extended maintenance claim that is segregable from the other project delays of which it complains. As such, there is no risk of the Court or the parties encountering any of the ills that Harper attempts to invoke in its motion.

There will be none of the inefficiency alleged by Harper because the parameters of the remaining claim now pending before this Court are defined by the specifications of Harper's contract with the Government. Under the specification section entitled "LANDSCAPE MAINTENANCE," Harper was required to "[p]rovide continuous Landscape Maintenance, complete as specified during progress of the work, after installation, and for a period of . . . 90 days . . . after Preliminary Acceptance." Exhibit B, 02970 § 1.1.A. During this maintenance period, Harper was required to provide a range of services that included watering, weed control, pruning, staking, mowing, fertilization, pest control, and reseeding. See id. 02970 §§ 3.2-3.8. At the end of the maintenance period, Harper was to seek Final Acceptance through an inspection by the Government's landscape architect. Id. 02970, § 3.9.A. The contract provided, as a condition for the acceptance of work, that "[e]ach plant shall be alive and thriving, showing signs of growth and no signs of stress, disease, or any other weaknesses." Id. 02970, § 3.9.C. If this condition was not met, Harper was required to replace the plants at no cost to the Government, id. 2970, § 3.9.B.2, C.2, and to "[c]ontinue maintenance of all landscaped areas

until such time as all corrective measures ha[d] been completed and accepted." Id. 2970, § 3.9.B.4. At Final Acceptance, however, responsibility for maintenance, and all risk of loss, transferred from Harper to the Government. Id. 2970, § 3.9.D.

The maintenance period was followed by a warranty period, whose terms are set forth both in the "LAWNS AND GRASSES" and "PLANTING" specifications. See id. 2930, § 1.8; 2950, § 1.7. During the warranty period, Harper ceased to provide maintenance services, but warranted that certain installed items would "be in a healthy and flourishing condition of active growth" for periods ranging from six months to two years. Id. 2930, § 1.8.A, 02950, § 1.7.A. It was not until the warranty period that Harper ceased to be held responsible for acts of God, including weather, and other things that could cause damage to landscaping. Compare, e.g., id. 2950, § 1.7.G ("Contractor shall not be held responsible for failures due to neglect by the Government, vandalism, or Acts of God during Warranty Period.") with generally id. 2970, § 3.2.A (requiring contractor during maintenance period to "[p]rotect all new planting areas from damage of all kinds from beginning of work until sufficiently established or until Final Acceptance") (emphasis supplied).

Although Harper erroneously conflates the maintenance period with the warranty period,[2]

---

[2] For example, although Section C of Harper's complaint is entitled "EXTENDED MAINTENANCE," and, indeed, opens with allegations concerning the landscape maintenance period, see Compl. ¶ 23, it then (1) discusses the warranty period on "all housing units," making no mention of either the landscape maintenance or the landscape warranty periods, id. ¶ 24; and (2) states that "the Air Force delayed issuing [F]inal [A]cceptance," a term used only in specification section 02970 entitled "LANDSCAPE MAINTENANCE," with the motive for doing so allegedly being "to extend the running of the warranty period. Id. ¶ 25. Harper then concludes that the landscaper "was required to expend additional time and labor maintaining the landscaping during this extended warranty period." Id. ¶ 27 (emphasis supplied). This is an allegation that makes no sense, given that no maintenance services were required of Harper after Final Acceptance and during the warranty period. Compare Exhibit B, 2930, § 1.8 ("Warranty"

its core remaining contention is unequivocally that the Air Force intentionally deferred issuing a Final Acceptance. See Compl. ¶¶ 23-24; REA at 19-21, Exhibit C. This contention is easily evaluated without reference to the delay claims upon which this Court has already granted summary judgment. For example, evidence that suggests that Harper's maintenance period or warranty period, and the inspections associated with each, began later than planned as a result of purported delays associated with underground tank removal and weather conditions, see Compl. ¶ 24, has no bearing upon the question of whether the Government exercised good faith in evaluating the landscaping during the inspections that it performed, or upon whether the contract specifications for evaluating the landscaping were somehow defective ab initio. Even excluding exhibits bearing upon these questions, defendant's exhibit list relative to the extended maintenance period alone encompassed ninety-two exhibits. See Exhibit A.

It also bears noting that, to the extent that plaintiff has contended that it was required to repair damage incurred during either the maintenance or warranty period as a result of severe weather, see Compl. ¶ 26, these matters fit comfortably within the scope of the upcoming trial. Specifically, the plaintiff could recover damages associated with repairing weather damage if it could meet its burden of proving that the repair occurred during a time period that would have comprised part of the warranty period (when Harper was absolved of responsibility for risk of

---

for "Lawns and Grasses") and id. 2950 § 1.7 ("Warranty" for "Planting"), with generally id. 2970 ("Landscape Maintenance"). Similarly, Harper's REA purports to discuss the maintenance period, but, in connection with its claims that "[t]he Air Force inspectors evaluated completion based on unreasonable standards and defective specifications for accepting plants and trees," it cites the warranty period, rather than the maintenance period, standard for acceptance (i.e., "healthy and in flourishing condition of active growth," rather than "alive and thriving, showing signs of growth and no signs of stress, disease, or any other weaknesses"). The REA concludes with the contention that "[t]his rejection process remained consistent throughout the maintenance period . . . ." REA at 19-20, Exhibit C (emphasis supplied).

loss associated with weather damage) but for the Government's unreasonable refusal to conclude the maintenance period by accepting the landscaping as installed. Thus, there is no need for plaintiff to resort to references to purported delays associated with underground tank removal or weather that pre-dated the maintenance period to prove its case.

Neither Harper's distress at the Court's rulings, its lack of confidence in its damages case, nor its hope that the Federal Circuit will somehow intervene in 2009 or later to increase its potential recovery are valid reasons to defer the trial of the well-defined, remaining issues in this case. The events in question occurred in 1997 and 1998, and Harper's complaint has now been pending since 2005. If Harper cannot prove its damages now, there is even less of a chance that it will be able to do so a year or more in the future, given the reality that witness memory deteriorates with time. This matter should be resolved without further delay, upon the schedule that this Court established in its June 4 order .

In light of the foregoing considerations, the Government requests that plaintiff's motion for a continuance be denied, that plaintiff be compelled both to comply with its Appendix A obligations without delay, and to timely file its pre-trial memorandum and related materials on the date that they are due, August 29, 2008.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ A. Bondurant Eley
A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
202-616-8254
202-514-8624

Attorneys for Defendant

August 25, 2008

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August 2008, a copy of the foregoing : "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR CONTINUANCE " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

A. Bondurant Eley