# EXHIBIT C

MILLER LAW FIRM
A PROFESSIONAL CORPORATION
4310 MADISON AVENUE
KANSAS CITY, MISSOURI 64111
TELEFAX (816) 561-6361
(816) 531-0755

MICHAEL T METCALF

DEFENDANT'S EXHIBIT 9

August 1, 2003

*VIA FEDERAL EXPRESS*
C.H. Painter
Contracting Officer
30 CONS/LGCCB
Bldg – 7015, Section 2A
806 13 St., Suite 2
Vandenberg AFB, California 93437-5226

Re: KCI/Vandenberg
Project No.: XUMU 96-4003
Our File No. 1645.02

Dear Mr. Painter:

Please find enclosed the claim of Harper/Nielsen – Dillingham Builders Venture and Karleskint-Crum, Inc. on the replaced Capehart MFH Phase III, Vandenberg Air Force Base, California Project, Contract No. FO4684-96-C-0046. This claim is being submitted in accordance with 41 U.S.C. § 605(c). Thank you for your prompt attention to this matter.

Please send the undersigned a letter of confirmation upon receipt of this claim.

Very truly yours,

MILLER LAW FIRM, P.C.

Michael T. Metcalf

Michael T. Metcalf

MTM/rh
Enclosures
painter.drv.07.29.doc

PX 1

to be made by your office regarding compensation allowed for delays and damages due to extreme weather conditions.

(Exhibit "34")

However, despite this recommendation, a final determination was not provided. Furthermore, all previous requests for equitable relief have been inexplicably denied.

**C. KCI Was Required To Maintain Landscaping Beyond A Reasonable Period Of Time.**

As described in detail above, KCI was originally contracted to provide 90 days maintenance beginning on or about October of 1997 through January of 1998. (See Exhibit "12"). Even though Harper/Nielson turned over all units built in Phase III at 30 days after hydroseeding had been completed, the final inspections and eventual acceptance by the Air Force of the landscaping on the individual housing units did not begin until January of 1998 and was not finalized until dates between March 23, 1998 through May 20, 1998. (Exhibit "14") In this regard, the Air Force was deliberately dilatory in its manner of acceptance of the landscaping on the project. The dilemma of the Air Force at the end of the project was that, although Phase III had been completed and the homes were ready for occupancy, new personnel had not yet arrived to occupy the houses. (Exhibit "35"). This dilemma required KCI to continue to maintain landscaping at the empty homes, where under normal circumstances new occupants would have been able to provide those services, such as mowing, trimming, and watering. The evidence of the unreasonable demands of the Air Force upon KCI prior to acceptance of the work illustrates that the delays in acceptance of Phase III were caused by the Air Force and were not the fault of Harper/Nielson or KCI. These delays and unreasonable demands asserted by the Air Force for acceptance of the project constituted additional terms to the contract for which KCI was not compensated.

The Air Force inspectors evaluated completion based on unreasonable standards and defective landscaping specifications for accepting plants and trees. These standards did not incorporate any reasonable interpretation for tolerance, with reference to average health, of the same species. Specifically, the warranties called for throughout the applicable specifications consistently require plants and / or trees to be "healthy and in flourishing condition of active growth." Yet, the Government imposed unilateral, defective and unreasonable specifications in that it required (1) that living organisms grow during the winter season and harsh conditions at a vigorous rate that is equivalent to that of a vigorous rate during a different season and more optimum conditions; (2) that plants on the east, south, west, and north sides of a building grow at the same rate; and (3) that plants planted in different months be identical in size. As a result of these defective specifications, the Government unilaterally rejected a high percentage of the trees and plants. This rejection process remained consistent through out the maintenance period even though the significant amount of plants and trees that KCI installed met or exceeded the objective requirements set for in the contract of "active growth," and vigor with the consideration that they were planted during such adverse weather conditions.

Additionally, as with any living item, identical plants are have some variance in initial growth levels. Plants are expected to have some reasonable variance, and if this variance is not included in the inspector's definition, acceptable trees will end up being rejected due to incorrect and unreasonable inspection. Nonetheless, the Government's acceptance standards did not allow for any variance resulting in rejection of a significant amount of trees and plants on this basis as well.

Finally, KCI was required to replace and restart maintenance on plants and trees that were damaged as a result of the severe weather conditions that prevailed through the spring.

This requirement is in direct contradiction with the applicable project specifications which state "Contractor shall not be held responsible for failure due to neglect by the Government, vandalism, and acts of God, during the Warranty Period." (Exhibit "1") As a result, KCI was able to complete its duties under the contract on the individual homes until August 1998, and in the common areas until November of 1998.

**D The Wage Classification Change Asserted by the Air Force, Increased Wage Rates, and Constituted Change in the Terms of the Contract After Acceptance.**

The Government's unilateral decision, long after KCI's contract was awarded and work had commenced, to require KCI to re-classify KCI's "Tradesman" workers as "Landscape Laborer" imposed a defective specification by the Government and caused significant additional expense for KCI. KCI's Subcontract's work description included work that should be performed by a worker classified as a "Tradesman". Further, KCI had in fact used the "Tradesman" classification for the very same work in Phase II.

To receive an adjustment based upon defective specification, a contractor must show that the specification was defective and that the defect caused the contractor to incur additional costs. *Appeal of McElroy Machine & Manufacturing Company, Inc.* 99-1 BCA (CCH) P30, 185. In this case, the specification at issue was the wage classification for certain KCI's workers. Only a portion of the work described in the Subcontract required the skill and knowledge of a "Landscape and Irrigation Laborer" or a "Landscape Laborer" classified worker, as those classification are described in the General Prevailing Wage Determination ("GPWD"). "Landscape Maintenance" work as defined in the contract did not impose such a requirement.

Despite the distinction between these areas of work, the Government nonetheless ordered KCI to re-classify its labor, even for maintenance work, to be paid as a "Landscape Laborer." This re-classification meant that for those workers who had been paid the lower "Tradesman"